---

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Eastern _____ District of _ Virginia _____
                                              (State)

Case number (*If known*): _____ Chapter __11__

☐ Check if this is an
  amended filing

---

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

1. **Debtor's name**                    Gymboree Group, Inc.

2. **All other names debtor used          Giraffe New OPCO, Inc.
   in the last 8 years**

   Include any assumed names,
   trade names, and *doing business
   as* names

3. **Debtor's federal Employer          8  2  _  2  7  7  6  5  8  7
   Identification Number** (EIN)

4. **Debtor's address**

   **Principal place of business**

   71          Stevenson Street
   Number      Street

   Suite 2200

   San Francisco          CA      94105
   City                   State   ZIP Code

   San Francisco, CA
   County

   **Mailing address, if different from principal place of business**

   Number      Street

   P.O. Box

   City          State    ZIP Code

   **Location of principal assets, if different from principal place of business**

   Number      Street

   City          State    ZIP Code

5. **Debtor's website** (URL)          http://www.gymboree.com

6. **Type of debtor**

   ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
   ☐ Partnership (excluding  LLP)
   ☐ Other. Specify: _____

| Debtor | Gymboree Group, Inc. | Case number (if known) |
|---|---|---|
| | Name | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .

<u>4</u>  <u>4</u>  <u>8</u>  <u>1</u>

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check all that apply:*

    ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 (amount subject to adjustment on 4/01/19 and every 3 years after that).

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
                               MM / DD / YYYY

        District _____ When _____ Case number _____
                               MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☑ Yes. Debtor  See Rider 1 _____ Relationship  Affiliate _____

      District  Eastern District of Virginia _____ When _____
                                           MM / DD / YYYY

      Case number, if known _____

| Debtor | Gymboree Group, Inc . | Case number *(if known)* |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

| Number | Street |
|---|---|

_____

| City | State | ZIP Code |
|---|---|---|

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☑ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☑ $100,000,001-$500 million | ☐ More than $50 billion |

---

Debtor    Gymboree Group, Inc.

Name

Case number *(if known)*

---

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million

- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☑ $50,000,001-$100 million
- ☐ $100,000,001-$500 million

- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

---

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

- ■ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

- ■ I have been authorized to file this petition on behalf of the debtor.

- ■ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___1/16/19___

MM / DD / YYYY

✖ /s/ Jon W. Kimmins

Signature of authorized representative of debtor

Jon W. Kimmins

Printed name

Title   Authorized Signatory

---

**18. Signature of attorney**

✖ /s/ Michael A. Condyles

Signature of attorney for debtor

Date   ___1/16/19___

MM / DD / YYYY

Michael A. Condyles

Printed name

Kutak Rock LLP

Firm name

901          East Byrd Street, Suite 1000

Number      Street

Richmond                                    VA          23219-4071

City                                        State       ZIP Code

804-343-5227                                michael.condyles@kutakrock.com

Contact phone                               Email address

27807                                       VA

Bar number                                  State

---

<div style="background:black;color:white">

**Fill in this information to identify the case:**

</div>

United States Bankruptcy Court for the:

_____Eastern District of Virginia_____
(State)

Case number
(*if known*):

_____          Chapter __11__          ☐ Check if this is an
amended filing

### Rider 1
### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the affiliated entities listed below, including the debtor in this chapter 11 case (collectively, the "Debtors"), filed a petition in the United States Bankruptcy Court for the Eastern District of Virginia (this "Court") for relief under chapter 11 of title 11 of the United States Code.  The Debtors will move for joint administration of their cases under the case number assigned to the chapter 11 case of Gymboree Group, Inc.[1]

- Gymboree Distribution, Inc.
- Gymboree Group, Inc.
- Gymboree Holding Corporation
- Gymboree Intermediate Corporation
- Gymboree Island, LLC (Puerto Rico)
- Gymboree Manufacturing, Inc.
- Gymboree Operations, Inc.
- Gymboree Retail Stores, LLC
- Gymboree Wholesale, Inc.
- Gym-Card, LLC
- Gym-Mark, Inc.

---

[1] On June 12, 2017, certain of the Debtors' predecessors in interest commenced chapter 11 cases before this Court (the "Prior Cases"), which were jointly administered under the caption In re The Gymboree Corp., No. 17-32986 (KLP).  On September 7, 2017, a plan of reorganization was confirmed in the Prior Cases, and such plan went effective on September 29, 2017.  On January 19, 2018, all of the Prior Cases, other than the case of The Gymboree Corp., were closed.

Fill in this information to identify the case:

Debtor Name <u>Gymboree Group, Inc., *et al.*</u>

United States Bankruptcy Court for the: <u>Eastern District of Virginia</u>
<u>(Richmond Division)</u>

Case number (if known): _____

❑ Check if this is an amended filing

# Official Form 204
## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders    12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
|---|---|---|---|---|---|---|---|
| 1 | HANSOLL TEXTILE LTD. DAVID PARK HANSOLL TEXTILE BLDG. 268 SONGPA-DAERO SONGPA-GU SEOUL KOREA | HANSOLL TEXTILE LTD. DAVID PARK PHONE: 822-3287-8084 FAX: EMAIL: davidpark@hansoll.com | TRADE PAYABLE | | | | $12,094,790 |
| 2 | TIP TOP FASHIONS LTD MR. TOFAZAL AL INDUSTRIAL PLOTE NO-1(5THFLOOR), BL DHAKA BANGLADESH | TIP TOP FASHIONS LTD MR. TOFAZAL AL PHONE: 8809666778800 FAX: EMAIL: ali_t@standard-group.com | TRADE PAYABLE | | | | $9,705,592 |

Debtor    <u>Gymboree Group, Inc., *et al.*</u>                                    Case number (if known) _____
                Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 3 | PAN PACIFIC CO LTD. SIMON CHONG 12, DIGITAL-RO 31-GIL GURO-DONG 197-21 GURO-GU SEOUL, 08380 KOREA | PAN PACIFIC CO LTD. SIMON CHONG PHONE: 82-2-3494-9135 FAX: EMAIL: simonchong@pti-pacific.com | TRADE PAYABLE | | | | $7,128,557 |
| 4 | MAWNA FASHIONS LTD ABDUL KADER ANU BGMEA COMPLEX (12TH FLOOR) 23/1 DHAKA, 1215 BANGLADESH | MAWNA FASHIONS LTD ABDUL KADER ANU PHONE: 880-2-7790060-67 FAX: EMAIL: anu@dbl-group.com | TRADE PAYABLE | | | | $5,578,573 |
| 5 | CONCEPT KNITTING LIMITED AHMED ARIF BILLAH HOUSE# B-105 (1ST FLOOR), ROAD # 8 NEW DOHS, MOHAKHALI DHAKA, 1206 BANGLADESH | CONCEPT KNITTING LIMITED AHMED ARIF BILLAH PHONE: 8809814730 FAX: EMAIL: arif@mascoknit.com | TRADE PAYABLE | | | | $5,285,564 |
| 6 | ROYAL CLASSIC MILLS (P) LTD MR. GOPAL 31, MANGALAM ROAD PULIYAMARA THOTTAM, KATAPALAYAM, TIRUPPUR TAMIL NADU, 641604 INDIA | ROYAL CLASSIC MILLS (P) LTD MR. GOPAL PHONE: 91-421-3011300 FAX: EMAIL: gopal@rcg.in | TRADE PAYABLE | | | | $4,698,146 |
| 7 | SHARTEX INTERNATIONAL TRADING HARRY MENG HELENA YAO 10F BLOCK A 688 DALIAN ROAD SHANGHAI, 200082 CHINA | SHARTEX INTERNATIONAL TRADING HARRY MENG HELENA YAO PHONE: 8809666778800 FAX: EMAIL: menghua@shartex.net helena_yao@shartex.net | TRADE PAYABLE | | | | $4,454,648 |

Debtor      Gymboree Group, Inc., *et al.*_____      Case number (if known) _____
            Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 8 | LIM LINE APPAREL CO. LTD. MR.SONGCHAI SANKINGTHONG MR. PAIBOON PURITEERANGKUL 844/60 CHAROEN KRUNG ROAD SOI WAT CHAN NAI BANG KHO LAEM BANGKOK, 10120 THAILAND | LIM LINE APPAREL CO. LTD. MR.SONGCHAI SANKINGTHONG MR. PAIBOON PURITEERANGKUL PHONE: (66) 02 289 4688 FAX: EMAIL: song@limline.co.th paiboonp@limline.co.th | TRADE PAYABLE | | | | $4,196,095 |
| 9 | TONGXIANG COLAX INDUSTRIAL JASON YU FIONA LIU ZHEJIANG ZHEJIANG PROVINCE JIAXING CITY CHINA | TONGXIANG COLAX INDUSTRIAL JASON YU FIONA LIU PHONE: 0573-88922968 FAX: EMAIL: jasonyu@colax.cn fionaliu@colax.cn | TRADE PAYABLE | | | | $4,129,538 |
| 10 | EASTMAN EXPORTS GLOBAL CLTHG MR. CHANDRANAN 5/59, 1ST STREET, SRI LAKSHMI NAGAR PITCHAMPALAYAM PUDUR, TIRUPPUR TAMIL NADU, 641603 INDIA | EASTMAN EXPORTS GLOBAL CLTHG MR. CHANDRANAN PHONE: 91-421-4301234 FAX: EMAIL: nc@eastmanexports.com | TRADE PAYABLE | | | | $3,965,829 |
| 11 | SUNTEX GARMENTS LTD SUN ZHEN GRACE YAN A-308 DALANG WOOLEN TRADE CTR DONGGUAN CHINA | SUNTEX GARMENTS LTD SUN ZHEN GRACE YAN PHONE: 86-25-84677942 FAX: EMAIL: zhunsun@njsuntex.com graceyan@njsuntex.com | TRADE PAYABLE | | | | $3,926,128 |
| 12 | PT. MONDRIAN GUNAWAN SUTANTO JL. KH. HASYIM ASARI BY PASS NO.171 SROGO, MOJAYAN, KLATEN TENGAH, KABUPATEN KLATEN JAWA TENGAH, 57416 INDONESIA | PT. MONDRIAN GUNAWAN SUTANTO PHONE: +62 272 323181 FAX: EMAIL: gunawan@mondrian.co.id | TRADE PAYABLE | | | | $3,890,112 |

Official Form 204          **Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims**

Debtor     Gymboree Group, Inc., *et al.*
Name                                    Case number (if known) _____

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 13 | WEIHAI REAP INTERNATIONAL TRADING CO., LTD ALAN YANG DAISY SUN 16F, JIAHE INTERNATIONAL MANSION NO. 55, SOUTH HAIBIN ROAD WEIHAI, SHANDONG, 264200 CHINA | WEIHAI REAP INTERNATIONAL TRADING CO., LTD ALAN YANG DAISY SUN PHONE: 86-631-5961737 FAX: EMAIL: alan_yang@whreap.com daisy_sun@whreap.com | TRADE PAYABLE | | | | $3,754,344 |
| 14 | PAO YUAN GARMENTS CORP. HENRY HO NICKY T. 2F,3, LANE 616 CHUNG SHAN RD., SEC. 2, CHUNGHO CITY NEW TAIPEI CITY TAIWAN | PAO YUAN GARMENTS CORP. HENRY HO NICKY T. PHONE: 886-2-22259090 FAX: EMAIL: Henry@py.com.tw nicky_t@py.com.tw | TRADE PAYABLE | | | | $3,703,117 |
| 15 | PT. BINA BUSANA INTERNUSA TOTO SUBIANTO JL. INSPEKSI CAKUNG DRAIN KM.2 SEMPER TIMUR CAKUNG CILINCING NORTH JAKARTA, 14260 INDONESIA | PT. BINA BUSANA INTERNUSA TOTO SUBIANTO PHONE: 62-21-44833077 FAX: EMAIL: toto.subianto@bbigarment.co.id | TRADE PAYABLE | | | | $3,369,774 |
| 16 | PANWIN DESIGNS LIMITED MOHAMMAD MOHSEN CS-576, BANIARCHALA, PANTAX MORE P.O- BHABANIPUR, P.S- GAZIPUR SADAR SAFARI PARK RD 1740 BANGLADESH | PANWIN DESIGNS LIMITED MOHAMMAD MOHSEN PHONE: + 88 01713450819 FAX: EMAIL: mohsen@panwin.org | TRADE PAYABLE | | | | $3,241,312 |
| 17 | KG FASHION CO., LTD. JAMES JUNG 39-8, SAMSEONG-DONG GANGNAM-GU SEOUL KOREA | KG FASHION CO., LTD. JAMES JUNG PHONE: (82)-2-546-2536 FAX: EMAIL: jamesjung@kgfashion.com | TRADE PAYABLE | | | | $3,208,388 |

Debtor  Gymboree Group, Inc., *et al.*_____  Case number (if known) _____
     Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim — If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 18 | GENERAL LION FOOTWEAR INTL LTD EDDIE LAU MINSA TANG PAT KAN 1 EXPO DRIVE WANCHAI HONG KONG | GENERAL LION FOOTWEAR INTL LTD EDDIE LAU MINSA TANG PAT KAN PHONE: 852 -2173 1103 FAX: EMAIL: eddielau@glfhk.com.hk minsa@glfhk.com.hk pat@glfhk.com.hk | TRADE PAYABLE | | | | $3,092,991 |
| 19 | LI & FUNG ROBERT SCHMIDT DAVID FISHER MARC COMPAGNON LIFUNG TOWER 11TH FLOOR 888 CHEUNG SHA WAN ROAD KOWLOON HONG KONG | LI & FUNG ROBERT SCHMIDT DAVID FISHER MARC COMPAGNON PHONE: 212-715-9527 FAX: 212-715-8000 EMAIL: RSchmidt@KRAMERLEVIN.com DFisher@KRAMERLEVIN.com marccompagnon@lifung.com | EXPENSE | | | | $3,065,070 |
| 20 | AFA SOURCING LIMITED MICHAEL RM 3116-18 31/F 1 HUNG TO RD KWUN TONG HONG KONG | AFA SOURCING LIMITED MICHAEL PHONE: 852-39065777 FAX: EMAIL: michael.kule@afasourcing.com | TRADE PAYABLE | | | | $3,000,644 |
| 21 | SIMON PROPERTY GROUP PERVIS BEARDEN, JAMIE CHRISTMAN 225 WEST WASHINGTON STREET INDIANAPOLIS, IA 46204 | SIMON PROPERTY GROUP PERVIS BEARDEN, JAMIE CHRISTMAN PHONE: 317-263-7608 317-989-8988 FAX: EMAIL: pbearden@simon.com jchristman@simon.com | RENT | | | | $2,632,171 |
| 22 | JUBILEE TEX MR. BALU RADAKRISHNAN NAGAR, KUMARSWAMI NAGAR PICHAM PALAYAM PUTHUR, TIRUPPUR TAMIL NADU, 641603 INDIA | JUBILEE TEX MR. BALU PHONE: +91 421 2471720 FAX: EMAIL: balu@jubileetex.net | TRADE PAYABLE | | | | $2,625,142 |

Debtor    Gymboree Group, Inc., *et al.*_____    Case number (if known) _____
    Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 23 | NEXT COLLECTIONS LTD MR. AZAD MOUZA - DIYA KHALI 1323-1325 BERON SAVAR DHAKA BANGLADESH | NEXT COLLECTIONS LTD MR. AZAD PHONE: 880-02-9897848 FAX: EMAIL: azad@hameemgroup.com | TRADE PAYABLE | | | | $2,583,902 |
| 24 | BUNZL PLC PAUL LUXEM 7351 BOONE AVE N BROOKLYN PARK, MN 55428-1007 | BUNZL PLC PAUL LUXEM PHONE: 614-670-1816 FAX: EMAIL: pluxem@ddsjit.com | EXPENSE | | | | $2,182,350 |
| 25 | XIAMEN WELLEAST CO., LTD ALEX CHAI NANCH ZENG ALISON CHAI 29/F, LIXIN SQUARE NO.90, HUBIN SOUTH ROAD SIMING ROAD, XIAMEN FUJIAN, 361003 CHINA | XIAMEN WELLEAST CO., LTD ALEX CHAI NANCH ZENG ALISON CHAI PHONE: 86-13532830918 FAX: EMAIL: alex@welleast.com.cn nancy@welleast.com.cn alison@welleast.com.cn | TRADE PAYABLE | | | | $2,163,866 |
| 26 | ZHANGJIAGANG DONGDU TEXTILE GE HUI HUA MAO XIN HONG 398 CHANG'AN ROAD YANGSHE TOWN ZHANGJIAGANG, 215600 CHINA | ZHANGJIAGANG DONGDU TEXTILE GE HUI HUA MAO XIN HONG PHONE: 0512-58224515 FAX: EMAIL: ghh@ddtextile.com mxh@ddtextile.com | TRADE PAYABLE | | | | $2,108,357 |
| 27 | YUMARK ENTERPRISES CORP. ALLEN FU FANNY CHENG SEC2 TUNGHWA S RD, 14F NO 67. TA AN CHU TAIWAN | YUMARK ENTERPRISES CORP. ALLEN FU FANNY CHENG PHONE: 886 2 27003435 FAX: EMAIL: Allen@yumark.com.tw fanny@yumark.com.tw | TRADE PAYABLE | | | | $2,053,052 |

Debtor      <u>Gymboree Group, Inc., *et al.*</u>                              Case number (if known) _____
            Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 28 | GREAT LAKES WOODWORKING CO, INC BILL WALSH, BRENDA TONMBLIN 11345 MOUND ROAD DETROIT, MI 48212 | GREAT LAKES WOODWORKING CO, INC BILL WALSH, BRENDA TONMBLIN PHONE: FAX: 313-892-8503 EMAIL: bwalsh@glwdetroit.com btonmblin@glwdetroit.com | EXPENSE | | | | $1,728,759 |
| 29 | PRO-HOT ENTERPRISE CO., LTD. ECHO LIAO 4TH FLOOR, NO. 12, LANE 181, SECTION 2 JUI ZONG ROAD, NEI HU DISTRICT TAIPEI, 11494 TAIWAN | PRO-HOT ENTERPRISE CO., LTD. ECHO LIAO PHONE: 886-2-2799-5848 FAX: EMAIL: Echo@prohot-tp.com | TRADE PAYABLE | | | | $1,687,169 |
| 30 | GLORY INDUSTRIES LTD MS. TAJRINA MANNAN 12 SENANG CRESCENT SINGAPORE, 416586 SINGAPORE | GLORY INDUSTRIES LTD MS. TAJRINA MANNAN PHONE: 88-01966673294 FAX: 64420442 EMAIL: tajrinamannan@gmail.com | TRADE PAYABLE | | | | $1,548,073 |
| 31 | PT. DAN LIRIS AMUMPUNI KELURAHAN BANARAN KECAMATAN GROGOL KABUPATEN SUKOHARJO, CENTRAL JAVA 57193 INDONESIA | PT. DAN LIRIS AMUMPUNI PHONE: 62 271 714 400 ext 237 FAX: EMAIL: amumpuni@danliris.com | TRADE PAYABLE | | | | $1,505,904 |
| 32 | TEXTILES CAMONES S.A. CARLOS CAMONES PERÚ, AV STA JOSEFINA PUENTE PIEDRA PERU | TEXTILES CAMONES S.A. CARLOS CAMONES PHONE: (511) 411-2970 EXT. 502 FAX: 511 5480005 EMAIL: CCGV@TEXTILESCAMONES.COM | TRADE PAYABLE | | | | $1,473,067 |

Debtor  Gymboree Group, Inc., *et al.* _____  Case number (if known) _____
          Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 33 | TOOKU TRADING CORPORATION LTD GREG UNIT 1305 13 F PROSPERITY PLACE 6 SHING YIP STREET KWUN TONG HONG KONG | TOOKU TRADING CORPORATION LTD GREG PHONE: 13515253361 FAX: EMAIL: greggruber@jdunited.com | TRADE PAYABLE | | | | $1,389,603 |
| 34 | QINGDAO YIJIA INTER-COM CO.LTD MIKE TIAN STEVEN REN ROOM 829 830 BUILDING A NO 6 HONGKONG MIDDLE ROAD SHINAN QINGDAO CN HONG KONG | QINGDAO YIJIA INTER-COM CO.LTD MIKE TIAN STEVEN REN PHONE: 13356855685 FAX: EMAIL: mike@tang-buy.com steven@tang-buy.com | TRADE PAYABLE | | | | $1,297,520 |
| 35 | WING FORWARD CO., LTD SAM HUI UNIT 8B, 4/F. HILDER CENTRE, 2 SUNG PING ST. HUNGHOM HONG KONG | WING FORWARD CO., LTD SAM HUI PHONE: 852-27660398 FAX: EMAIL: kshui@earylfashion.com | TRADE PAYABLE | | | | $1,233,527 |
| 36 | GLIDER CO. LTD. KATHLEEN WANG WYNE SUN 10643 4F., NO.222, SEC.2, JINSHAN S. RD. TAIPEI TAIWAN (R.O.C.) | GLIDER CO. LTD. KATHLEEN WANG WYNE SUN PHONE: 886-2-2321-1885 FAX: EMAIL: Kathleen.wang@glider.com.tw Ahwen.sun@gymail.com | TRADE PAYABLE | | | | $1,218,187 |
| 37 | NAM PO FOOTWEAR LTD. KAREN 4/F, GEMMY LTD. BLDG. 12 HUNG TO RD KWUN TONG, KOWLOON HONG KONG | NAM PO FOOTWEAR LTD. KAREN PHONE: 2389--0581 FAX: 86 757-8666 5468 EMAIL: karenmiao@nanbao1992.com | TRADE PAYABLE | | | | $1,195,541 |

Debtor    Gymboree Group, Inc., *et al.*                                          Case number (if known) _____
        Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 38 | TOP RISE INDUSTRIAL CO. LTD. KATHERINE LAI VIRGINIA CHOY B 9/F, HOP HING, INDUSTRIAL BUILDING 704 CASTLE PEAK KOWLOON HONG KONG | TOP RISE INDUSTRIAL CO. LTD. KATHERINE LAI VIRGINIA CHOY PHONE: 852-27447910 FAX: EMAIL: Katherine@toprise-gmt-fty.com virginia@toprise-gmt-fty.com | TRADE PAYABLE | | | | $1,139,654 |
| 39 | WINGA GARMENT FACTORY RAYMOOD CHEUNG JOJO CHOU UNIT 23-28A, PROFIT INDUSTRIAL BUILDING, 11/F., 1-15 KWAI FUNG CRESCENT KWAI CHUNG, NEW TERRITORIES HONG KONG | WINGA GARMENT FACTORY RAYMOOD CHEUNG JOJO CHOU PHONE: (852) 2421-2127 FAX: 852-2489-1108 EMAIL: raymond.cheung@winga.com.hk jojo.chow@winga.com.hk | TRADE PAYABLE | | | | $1,093,653 |
| 40 | J.K. KNIT COMPOSITE LTD MD. TANVIR GREEN ORLANDO (3RD & 4TH FLOOR) KA-42/4, PRAGATI SARANI BARIDHARA, DHAKA 1229 BANGLADESH | J.K. KNIT COMPOSITE LTD MD. TANVIR PHONE: 88-02-7745500 FAX: 8419476 EMAIL: tanvir@jkgroupbd.com | TRADE PAYABLE | | | | $1,053,853 |
| 41 | SPRINGFIELD GARMENT CO. LTD. MRS.LEKPHONG CHULPHONGSATHORN MS.SOMRAK PIRAPLADISAI 33 SOI 33/1 PETCHKASEM ROAD BANG WA, PHASI CHAROEN BANGKOK, 10160 THAILAND | SPRINGFIELD GARMENT CO. LTD. MRS.LEKPHONG CHULPHONGSATHORN MS.SOMRAK PIRAPLADISAI PHONE: 662-8688145-7 FAX: EMAIL: lekphong@springfieldgarment.com somrak@springfieldgarment.com | TRADE PAYABLE | | | | $1,049,699 |
| 42 | TA TRADING CO., LTD BYUNG-GIL KO 2F, 277-25, SUNGSU 2GA 3 DONG SUNG DONG-GU, SEOUL KOREA | TA TRADING CO., LTD BYUNG-GIL KO PHONE: 82-2-6910-7709 FAX: 82 2 3436 7801 EMAIL: bgko1@ta-trading.co.kr | TRADE PAYABLE | | | | $992,969 |

Debtor   Gymboree Group, Inc., *et al.*
 Name

Case number (if known) _____

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 43 | BROOKFIELD PROPERTY PARTNERS TORY BENSON, JERRY MATTIOLI 250 VESEY STREET 15TH FLOOR NEW YORK, NY 10281 | BROOKFIELD PROPERTY PARTNERS TORY BENSON, JERRY MATTIOLI PHONE: 312-960-5000 312-960-5220 FAX: 212-417-7214 EMAIL: tory.benson@brookfieldpropertiesretail.com jerry.mattioli@brookfieldpropertiesretail.com | RENT | | | | $977,843 |
| 44 | COGNIZANT TECHNOLOGY SOLUTIONS ROOPESH CUPPALA 500 FRANK W. BURR BOULEVARD TEANECK, NJ 07666 | COGNIZANT TECHNOLOGY SOLUTIONS ROOPESH CUPPALA PHONE: 925-967-6168 FAX: 201-801-0243 EMAIL: roopesh_cuppala@gymboree.com | EXPENSE | | | | $917,005 |
| 45 | TDX TECH KELLY BENNEWITZ 5735 OLD SHAKOPEE ROAD W SUITE 100 BLOOMINGTON, MN 55437 | TDX TECH KELLY BENNEWITZ PHONE: 952-936-9280 FAX: EMAIL: kbennewitz@tdxtech.com | EXPENSE | | | | $864,757 |
| 46 | EASTMAN EXPORTS GLOBAL CLTHG MR. CHANDRANAN 5/591, SRI LAKSHMI NAGAR PITCHAMPALAYAM PUDUR TIRUPUR, TAMILNADU 641 603 INDIA | EASTMAN EXPORTS GLOBAL CLTHG MR. CHANDRANAN PHONE: 91-421-4301234 FAX: 91-421-4301205 EMAIL: nc@eastmanexports.com | TRADE PAYABLE | | | | $749,699 |
| 47 | BIGGER TEXTILE HOLDINGS LTD. IVAN WONG RM D 6/F GEMSTAR TWR 23 MAN LOK ST HUNG HOM HONG KONG | BIGGER TEXTILE HOLDINGS LTD. IVAN WONG PHONE: 852 -2335 6568 FAX: EMAIL: ivan@bigger.com.hk | TRADE PAYABLE | | | | $739,181 |

Debtor    <u>Gymboree Group, Inc., *et al.*</u>    Case number (if known) _____
          Name

| | Name of creditor and complete mailing address, including zipcode | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If the claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 48 | PT. SANSAN SAUDARATEX JAYA BUDI DANUBRATA JALAN CIBALIGO NO.33 CIBEUREUM, CIMAHI SEL KOTA CIMAHI, JAWA BARAT 40522 INDONESIA | PT. SANSAN SAUDARATEX JAYA BUDI DANUBRATA PHONE: +62 22 6033-788 FAX: 62-22-6035004-6074802 EMAIL: budi@ptsansan.co.id | TRADE PAYABLE | | | | $732,779 |
| 49 | MERIT TAT INTERNATIONAL LTD. ROBERT LOK RM G H 5/F TUNG KIN FTY BLDG 200 - 202 TSAT TSE MUI RD NORTH POINT HONG KONG | MERIT TAT INTERNATIONAL LTD. ROBERT LOK PHONE: 852-25633398 FAX: 852-28055071 EMAIL: | TRADE PAYABLE | | | | $724,930 |
| 50 | VIJAY GARMENTS LIMITED MR.SHARAN REDDY PLOT # D3(2) MEPZ (SPECIAL ECONOMIC ZONE) TAMBARAM, TAMIL NADU INDIA | VIJAY GARMENTS LIMITED MR.SHARAN REDDY PHONE: 98842 57691 FAX: EMAIL: sharanredy@vijaygroup.org | TRADE PAYABLE | | | | $712,213 |

**Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GYMBOREE GROUP, INC., | ) | Case No. 19- _____ (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## LIST OF EQUITY SECURITY HOLDERS

| Equity Holders (Type of Holding) | Address of Equity Holder | Class / Kind of Interest | Percentage of Equity Held |
|---|---|---|---|
| Gymboree Intermediate Corp. | 71 Stevenson Street, Suite 2200 San Francisco, California 94105 | Common Stock | 100% |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GYMBOREE GROUP, INC., | ) | Case No. 19- _____ (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Gymboree Intermediate Corp. | 100% |

---

**Fill in this information to identify the case and this filing:**

Debtor Name  Gymboree Group, Inc.

United States Bankruptcy Court for the:  Eastern _____  District of  Virginia
(State)

Case number (*If known*): _____

---

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐  *Schedule H: Codebtors* (Official Form 206H)

☐  *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐  Amended *Schedule* _____

☑  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☑  Other document that requires a declaration  List of Equity Security Holders and Corporate Ownership Statement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    1/16/19                    ✘ /s/ Jon W. Kimmins
                MM / DD / YYYY                Signature of individual signing on behalf of debtor

                                             Jon W. Kimmins
                                             Printed name

                                             Authorized Signatory
                                             Position or relationship to debtor

Official Form 202                **Declaration Under Penalty of Perjury for Non-Individual Debtors**

# GYMBOREE GROUP, INC.

# ACTION BY UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS

January 15, 2019

The undersigned, being the members of the Board of Directors (the "Board") of Gymboree Group Inc., a Delaware corporation (the "Company"), acting by written consent without a meeting pursuant to Section 141(f) of the Delaware General Corporation Law (as amended from time to time) and the Bylaws of the Company (as amended from time to time), do hereby adopt and approve, effective as of the date first set forth above, the following resolutions (the "Resolutions"), which shall have the same force and effect for all purposes as if such action had been taken and adopted at a formal meeting:

**WHEREAS**, the Board has reviewed the materials presented by management and the financial, legal, and other advisors of the Company and has held numerous discussions regarding such materials and the liabilities, obligations, and liquidity situation (including current and future liquidity needs) of the Company, the strategic alternatives available to the Company, and the impact of the foregoing on the businesses and operations of the Company;

**WHEREAS**, the Board has had the opportunity to consult with management and the financial, legal, and other advisors of the Company and fully consider each of the strategic alternatives available to the Company;

**WHEREAS**, the Board has reviewed and considered the advice and recommendations of the management of the Company and the Company's financial, legal, and other advisors as to the relative risks and benefits of filing for relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, the Company is the sole member of each of Gymboree Retail Stores, LLC, a California limited liability company ("Gymboree Retail"), and Gymboree Island, LLC, a limited liability company organized under the laws of the Commonwealth of Puerto Rico ("Gymboree Island");

**WHEREAS**, the Board has reviewed the materials presented by management and the financial, legal, and other advisors of each of Gymboree Retail and Gymboree Island and has held numerous discussions regarding such materials and the liabilities, obligations, and liquidity situation (including current and future liquidity needs) of each of Gymboree Retail and Gymboree Island, the strategic alternatives available to each of Gymboree Retail and Gymboree Island, and the impact of the foregoing on the businesses and operations of each of Gymboree Retail and Gymboree Island;

**WHEREAS**, the Board has had the opportunity to consult with management and the financial, legal, and other advisors of each of Gymboree Retail and Gymboree Island and has fully considered each of the strategic alternatives available to each of Gymboree Retail and Gymboree Island;

**WHEREAS**, the Board has reviewed and considered the advice and recommendations of the management of each of Gymboree Retail and Gymboree Island and their respective financial, legal, and other advisors as to the relative risks and benefits of filing for relief under the provisions of chapter 11 of the Bankruptcy Code;

**WHEREAS**, the Board has been presented with and reviewed the Asset Purchase Agreement (the "Asset Purchase Agreement"), substantially on the terms presented to the Board, to be entered into by and among (i) the Company and its subsidiaries signatory thereto (collectively, the "Seller"), and (ii) Special Situations Investing Group, Inc., a Delaware corporation ("Buyer"), pursuant to which, among other things, the Seller will sell, assign, and transfer to Buyer, and Buyer will acquire, assume, and accept the transfer from Seller of, certain contracts, lease agreements, intellectual property, and e-commerce assets and liabilities (as more particularly described therein) on the terms and subject to the conditions set forth therein (collectively, the "Sale");

**WHEREAS**, in furtherance of the transactions contemplated by the Asset Purchase Agreement, the Board has determined that it is necessary and advisable for the Seller to execute certain other documents, agreements, instruments, and certificates as may be contemplated or required by the Asset Purchase Agreement (collectively, and including the Asset Purchase Agreement and all schedules, exhibits, annexes, and attachments thereto, the "Transaction Documents");

**WHEREAS**, in the best judgment of the Board, the Board has determined that it is desirable and in the best interests of the Seller and its creditors, equityholders, employees, and other parties-in-interest, to enter into the Asset Purchase Agreement and the other Transaction Documents and to execute, deliver, and consummate the transactions contemplated thereby, including the Sale;

**WHEREAS**, the Board has been presented with and reviewed the Agency Agreement (the "Agency Agreement"), substantially on the terms presented to the Board, to be entered into by and among the Company, for itself and on behalf of Gymboree, Inc., a corporation formed by the laws of New Brunswick, Canada ("Gymboree Canada"), each as a debtor in possession, and Great American Group, LLC, Tiger Capital Group, LLC, Gordon Brothers Retail Partners, LLC, and Hilco Merchant Resources, LLC (collectively, the "Agent"), pursuant to which, among other things, the Agent will act as the Company's exclusive agent for the limited purposes of selling merchandise from each of the Company's and Gymboree Canada's retail store locations and disposing of merchandise owned by each of the Company and Gymboree Canada (as more particularly described therein) on the terms and subject to the conditions set forth therein (collectively, the "Liquidation");

**WHEREAS**, in furtherance of the transactions contemplated by the Agency Agreement, the Board has determined that it is necessary and advisable for the Company to execute certain other documents, agreements, instruments, and certificates as may be contemplated or required by the Agency Agreement (collectively, and including the Agency Agreement and all schedules, exhibits, annexes, and attachments thereto, the "Agency Transaction Documents"); and

2

**WHEREAS**, in the best judgment of the Board, the Board has determined that it is desirable and in the best interests of the Company and its creditors, equityholders, employees, and other parties-in-interest, to enter into the Agency Agreement and the other Agency Transaction Documents and to execute, deliver, and consummate the transactions contemplated thereby, including the Liquidation.

**NOW**, **THEREFORE**, **BE IT**:

## Approval of Filing of Bankruptcy Petition

**RESOLVED**, that, in the best judgment of the Board, it is desirable and in the best interests of the Company and its creditors, equityholders, employees, and other parties-in-interest, that the Company file, or cause to be filed, a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code (the case so commenced, the "Chapter 11 Case");

**RESOLVED**, that Shaz Kahng, President and Chief Executive Officer of the Company, Jon Kimmins, Chief Financial Officer and Treasurer of the Company, Kimberly Holtz MacMillan, Vice President, General Counsel, and Secretary of the Company, and any other officer of the Company specifically designated by the foregoing officers (each, an "Authorized Officer" and collectively, the "Authorized Officers") be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to (i) execute and file, or cause to be executed and filed, with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") at such time as any Authorized Officer executing the same shall determine, all petitions, schedules, lists, motions, applications, pleadings, and other necessary papers or documents, including any amendments thereto; and (ii) take any and all actions, and perform any and all further deeds, that they deem necessary, advisable, or appropriate to obtain relief under the provisions of chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 Case, with a view to the successful prosecution of such Chapter 11 Case;

**RESOLVED**, that the Authorized Officers of the Company be, and each of them hereby is, authorized, empowered, and directed to adopt and execute, in the name and on behalf of the Company (i) as the sole member of Gymboree Retail, the Written Consent of the Sole Member of Gymboree Retail, substantially in the form of Exhibit A attached hereto, and (ii) as the sole member of Gymboree Island, the Written Consent of the Sole Member of Gymboree Island, substantially in the form of Exhibit B attached hereto;

## Retention of Advisors

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the law firm of Milbank, Tweed, Hadley & McCloy LLP ("Milbank") as general bankruptcy counsel to represent, assist, and advise the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations, including filing any pleadings, in connection with the Chapter 11 Case; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon filing of the Chapter

11 Case, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Milbank;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Kutak Rock LLP ("Kutak") as local counsel to represent and advise the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance its rights and obligations in connection with the Chapter 11 Case; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Cases, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Kutak;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ (i) Stifel, Nicolaus & Company, Incorporated ("Stifel") as investment banker and financial advisor and (ii) Berkeley Research Group, LLC ("BRG") as financial advisor, each to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Case; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be executed and filed appropriate applications with the Bankruptcy Court for authority to retain each of the services of Stifel and BRG;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Prime Clerk LLC ("Prime Clerk") as claims, balloting, and noticing agent to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Cases, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Prime Clerk;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Hilco Real Estate, LLC ("Hilco") as real estate consultant to represent and assist the Company in carrying out its duties under the Bankruptcy Code; and, in connection therewith, the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be filed appropriate applications with the Bankruptcy Court for authority to retain the services of Hilco;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to employ any other professionals, including, without limitation, attorneys, financial advisors, investment bankers, accountants, tax advisors, and claims agents, as

they deem necessary, advisable, or appropriate, in their sole discretion, to assist the Company in carrying out its duties under the Bankruptcy Code; and, in connection therewith, the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be filed appropriate applications with the Bankruptcy Court for authority to retain the services of any other professionals as they shall, in their business judgment, deem necessary, advisable, or appropriate;

## Approval of Asset Purchase Agreement

**RESOLVED**, that (i) the Sale, (ii) the form, terms, and provisions of the Asset Purchase Agreement and each of the other Transaction Documents, with such modifications to the Transaction Documents as the Authorized Officers shall approve (including, without limitation, any additions, deletions, or changes to the Asset Purchase Agreement or any additions, deletions, or changes to any schedules, exhibits, annexes, and attachments thereto), and (iii) the execution, delivery, and performance of the transactions contemplated by the Asset Purchase Agreement and each of the other Transaction Documents, in each case, are hereby authorized, approved, ratified, and confirmed in all respects;

**RESOLVED**, that the Authorized Officers are hereby authorized, empowered, and directed, in the name and on behalf of the Seller, to execute, deliver, and perform each of the Transaction Documents and the transactions contemplated thereby, and any and all such other documents, agreements and instruments as may be deemed necessary or advisable in order to carry out the purpose and intent of the foregoing Resolutions, in each case, with such Authorized Officer's execution or action to be conclusive evidence of the exercise by such Authorized Officer of the discretionary authority herein conferred;

## Approval of Agency Agreement

**RESOLVED**, that (i) the Liquidation, (ii) the form, terms, and provisions of the Agency Agreement and each of the other Agency Transaction Documents, with such modifications to the Agency Transaction Documents as the Authorized Officers shall approve (including, without limitation, any additions, deletions, or changes to the Agency Agreement or any additions, deletions, or changes to any schedules, exhibits, annexes, and attachments thereto) and (iii) the execution, delivery and performance of the transactions contemplated by the Agency Agreement and each of the other Agency Transaction Documents, in each case, are hereby authorized, approved, ratified, and confirmed in all respects;

**RESOLVED**, that the Authorized Officers are hereby authorized, empowered, and directed, in the name and on behalf of the Company, to execute, deliver, and perform each of the Agency Transaction Documents and the transactions contemplated thereby, and any and all such other documents, agreements and instruments as may be deemed necessary or advisable in order to carry out the purpose and intent of the foregoing Resolutions, in each case, with such Authorized Officer's execution or action to be conclusive evidence of the exercise by such Authorized Officer of the discretionary authority herein conferred;

## Debtor-In-Possession Term Loan Agreement

**WHEREAS**, the Company (the "Lead Borrower"), the other Borrowers party thereto from time to time, Gymboree Intermediate Corporation, a Delaware corporation ("Intermediate"), the other Guarantors party thereto from time to time, each a debtor and debtor-in-possession (together with Intermediate, the "Guarantors") in cases pending under Chapter 11 of the Bankruptcy Code, the Lenders and Special Situations Investing Group, Inc., as administrative agent (in such capacity, including any successor thereof, the "Administrative Agent") and as collateral agent (in such capacity, including any successor thereof, the "Collateral Agent", and together with the Administrative Agent, the "DIP Term Loan Agent") for the Lenders, propose to enter into that certain Debtor-in-Possession Term Loan Agreement (the "DIP Term Loan Agreement"), dated as of the date hereof;

**WHEREAS**, the obligation of the Lenders to make each Loan to the Borrower under the DIP Term Loan Agreement is subject to the Company having satisfied certain conditions described in the DIP Term Loan Agreement;

**WHEREAS**, the Company will receive benefits from the receipt of the Loans made by the Lenders under the DIP Term Loan Agreement; and

**WHEREAS**, it is in the best interests of the Company to enter into the DIP Term Loan Agreement and each agreement, document, instrument, certificate, recording and filing relating thereto.

**RESOLVED**, that the form, terms and provisions of the DIP Term Loan Agreement and each of the other Loan Documents (as defined below), and the Company's incurrence and performance of its obligations under the DIP Term Loan Agreement (including, without limitation, the "Obligations", as defined therein) and each of the other Loan Documents (as defined below), including any borrowings of Loans in such amounts as may be available to it from time to time thereunder and the consummation of the transactions contemplated thereby, be, and hereby are, in all respects, authorized and approved; and further resolved, that the Company's Authorized Officers, acting alone or with one or more Authorized Officers be, and hereby is, authorized and empowered to execute and deliver, and to cause the Company to incur and perform its obligations under, the DIP Term Loan Agreement and each of the instruments and documents listed below and all other agreements, documents and instruments contemplated by any of the foregoing or requested by the DIP Term Loan Agent in connection with any of the foregoing (together with the DIP Term Loan Agreement, the "Loan Documents"), and each of the documents and instruments contemplated thereby, in the name and on behalf of the Company under its seal or otherwise, substantially in the forms presented to the Board, with such changes therein and modifications and amendments thereto as any Authorized Officer may in his or her sole discretion approve, which approval shall be conclusively evidenced by his or her execution thereof:

(a)     the Fee Letter;

(b)     the Security Agreement;

(c)     the Orders;

(d)     any intercreditor agreement;

(e)    UCC financing statements, fixture filings, and other instruments as may be reasonably requested by the DIP Term Loan Agent or as may be necessary or appropriate to create, preserve and perfect the security interests purported to be created by the Collateral Documents;

(f)    such other security agreements, pledge agreements, deeds of trust, mortgages, notices, financing statements, tax affidavits, reaffirmation agreements, and other instruments as the DIP Term Loan Agent may reasonably request or as may be necessary or appropriate to create, preserve and perfect the Liens purported to be required pursuant to the Loan Documents to be created in the Collateral as collateral security for the payment of obligations, advances, debts or liabilities related to the Company's obligations;

(g)    such agreements with third parties (including, without limitation, bank agency agreements, motor vehicle perfection agreements, lockbox agreements, blocked account agreements, control agreements, credit card notices, customs broker agreements, landlord agreements and warehouse letters) relating to the Collateral;

(h)    the Loan Documents (as defined in the DIP Term Loan Agreement);

(i)    the Collateral Documents (as defined in the DIP Term Loan Agreement); and

(j)    such other documents, agreements, instruments, certificates, notices, assignments and documents as may be reasonably requested by the DIP Term Loan Agent or required by the DIP Term Loan Agreement, the Collateral Documents or any other Loan Documents;

**RESOLVED**, that the Company will receive value and obtain benefits from the incurrence of the Loans and the other obligations under the DIP Term Loan Agreement and the Loan Documents which are necessary and convenient to the conduct, promotion and attainment of the business of the Company;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered, in the name and on behalf of the Company, to grant a security interest and lien in all of the Company's assets pursuant to the terms of the Loan Documents, including, without limitation, a pledge of all of the equity interests now owned or hereafter acquired by the Company and all personal and real property of the Company now owned or hereafter acquired by the Company, in each case, to the DIP Term Loan Agent, and the DIP Term Loan Agent is authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral without the signature of the Company in such form and in such offices as the DIP Term Loan Agent or any Authorized Officer determines appropriate or necessary to perfect the perfection of the security interests of the DIP Term Loan Agent under the DIP Term Loan Agreement and the other Loan Documents. Without limiting the generality of the foregoing, the DIP Term Loan Agent is expressly authorized to use a collateral description that encompasses "all assets" or "all personal property" of the Company, wheresoever located, whether now owned and existing or hereafter acquired, together with all proceeds thereof or any similar all assets description in any such financing statements or other filing or recording documents or instruments;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered, in the name and on behalf of the Company, to take all such further actions including, without limitation, to pay all fees and expenses in accordance with the terms of the Loan Documents, to arrange for and enter into supplemental agreements, amendments, instruments, certificates or documents relating to the transactions contemplated by the DIP Term Loan Agreement or any of the other Loan Documents and to execute and deliver all such supplemental agreements, amendments, instruments, certificates or documents in the name and on behalf of the Company, which shall in their sole judgment be necessary, proper or advisable in order to perform the Company's obligations under or in connection with the DIP Term Loan Agreement or any of the other Loan Documents and the transactions contemplated therein, and which necessity or advisability shall be conclusively evidenced by such Authorized Officer's execution thereof, to carry out fully the intent of the foregoing resolutions;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered to execute and deliver any amendments, amendment and restatements, supplements, modifications, renewals, extensions, replacements, consolidations, substitutions and extensions of the DIP Term Loan Agreement and any of the Loan Documents which shall in their sole judgment be necessary, proper or advisable;

**RESOLVED**, that all acts and actions taken by the Authorized Officers prior to the date hereof with respect to the transactions contemplated by the DIP Term Loan Agreement and any of the other Loan Documents be, and hereby are, in all respects confirmed, approved and ratified;

**RESOLVED**, that the capitalized terms used in the resolutions under the caption "**Debtor-In-Possession Term Loan Agreement**" and not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Term Loan Agreement;

**RESOLVED**, that all acts and actions taken by the Authorized Officers prior to the date hereof with respect to the transactions contemplated by the DIP Term Loan Agreement and any other instruments, agreements or documents related thereto entered into prior to, on or after the date hereof, be, and hereby are, in all respects confirmed, approved and ratified;

**Further Authorizations**

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to prosecute the Chapter 11 Case in a manner that in their business judgment is likely to maximize the recovery for stakeholders in the Company and minimize the obligations incurred by the Company;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to negotiate for and obtain postpetition financing according to terms to be negotiated by management of the Company, including under debtor-in-possession credit facilities, and to execute and deliver agreements regarding the use of cash collateral or other similar arrangements, including, without limitation, to enter into any guarantees and to pledge and grant liens on its assets as may be contemplated by or required under the terms of such postpetition financing or cash collateral agreements or other similar arrangements; and, in connection therewith, the Authorized Officers be, and each of them

hereby is, authorized, empowered, and directed to execute appropriate loan agreements, guarantees, cash collateral agreements, and related ancillary documents;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company (i) to file a chapter 11 plan or plans and attendant disclosure statements, and to prosecute and obtain confirmation of such plan or plans in the Chapter 11 Case, and/or (ii) to sell some or substantially all of the assets of the Company;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates, or other documents, and to take such other action, as in the business judgment of such Authorized Officers shall be or becomes necessary, advisable, or appropriate, to effectuate a successful reorganization of the Company, including a sale of some or substantially all of the Company's assets; to effectuate a restructuring of debt, other obligations, organizational form and structure, and ownership of the Company; and to carry out and put into effect the purposes of the foregoing Resolutions and the transactions contemplated by these Resolutions;

**RESOLVED**, that in addition to the specific authorizations hereto conferred upon the Authorized Officers or their designees, each of them hereby is authorized, directed, and empowered, in the name of, and on behalf of, the Company, to take or cause to be taken any and all such further actions, to execute and deliver any and all such agreements, certificates, instruments, and other documents, and to pay all expenses, including filing fees, in each case as such Authorized Officer or Authorized Officers shall determine in his, her, or their business judgment to be necessary, advisable, or appropriate to fully carry out the intent and accomplish the purposes of the Resolutions adopted herein, or to fully accomplish any and all actions taken in connection with the Chapter 11 Case;

**RESOLVED**, that Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to amend, supplement, or otherwise modify, from time to time, the terms of any documents, certificates, instruments, agreements, or other writings referred to in the foregoing Resolutions;

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before these Resolutions were adopted, are hereby in all respects approved, confirmed, and ratified; and

**RESOLVED**, that this Unanimous Written Consent of the Board of Directors of the Company may be executed in any number of counterparts, including by facsimile or electronic transmission, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument and shall be filed with the minutes of the proceedings of the Board.

[*Remainder of Page Intentionally Left Blank*]

**IN WITNESS WHEREOF**, the undersigned have duly executed this Unanimous Written Consent of the Board of Directors of the Company as of the date first set forth above.

By: _____

Name: Kimberly Holtz MacMillan

Title:   Director

By: _____

Name: Shaz Kahng

Title:   Director

**IN WITNESS WHEREOF**, the undersigned have duly executed this Unanimous Written Consent of the Board of Directors of the Company as of the date first set forth above.

By: _____
Name: Kimberly Holtz MacMillan
Title:    Director


By: _____
Name: Shaz Kahng
Title:    Director

## Exhibit A

**Written Consent of the Sole Member of Gymboree Retail Stores, LLC**
(*See attached.*)

## GYMBOREE RETAIL STORES, LLC

## WRITTEN CONSENT OF THE SOLE MEMBER

January 15, 2019

In accordance with Section 17704.07 of the California Revised Uniform Limited Liability Company Act, as may be amended from time to time, and Section 12 of the Limited Liability Company Agreement of Gymboree Retail Stores, LLC (f/k/a Gymboree Retail Stores, Inc.), a California limited liability company (the "Company"), the undersigned, being the sole member of the Company (the "Member"), hereby consents to, adopts, and approves the following resolutions and each and every action effected thereby, effective as of the date first written above:

WHEREAS, the Member has reviewed the materials presented by management and the financial, legal, and other advisors of the Company and has held numerous discussions regarding such materials and the liabilities, obligations, and liquidity situation (including current and future liquidity needs) of the Company, the strategic alternatives available to the Company, and the impact of the foregoing on the businesses and operations of the Company;

WHEREAS, the Member has had the opportunity to consult with management and the financial, legal, and other advisors of the Company and fully consider each of the strategic alternatives available to the Company;

WHEREAS, the Member has reviewed and considered the advice and recommendations of the management of the Company and the Company's financial, legal, and other advisors as to the relative risks and benefits of filing for relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

WHEREAS, the Member has been presented with and reviewed the Asset Purchase Agreement (the "Asset Purchase Agreement"), substantially on the terms presented to the Member, to be entered into by and among (i) Gymboree Group, Inc., a Delaware corporation ("Gymboree Group"), and the Gymboree Group subsidiaries, including the Company, signatory thereto (collectively, the "Seller"), and (ii) Special Situations Investing Group, Inc., a Delaware corporation ("Buyer"), pursuant to which, among other things, the Seller will sell, assign, and transfer to Buyer, and Buyer will acquire, assume, and accept the transfer from Seller of, certain contracts, lease agreements, intellectual property, and e-commerce assets and liabilities (as more particularly described therein) on the terms and subject to the conditions set forth therein (collectively, the "Sale");

WHEREAS, in furtherance of the transactions contemplated by the Asset Purchase Agreement, the Member has determined that it is necessary and advisable for the Seller to execute certain other documents, agreements, instruments, and certificates as may be contemplated or required by the Asset Purchase Agreement (collectively, and including the Asset Purchase Agreement and all schedules, exhibits, annexes, and attachments thereto, the "Transaction Documents"); and

**WHEREAS**, in the best judgment of the Member, the Member has determined that it is desirable and in the best interests of the Seller and its creditors, equityholders, employees, and other parties-in-interest, to enter into the Asset Purchase Agreement and the other Transaction Documents and to execute, deliver, and consummate the transactions contemplated thereby, including the Sale.

**NOW, THEREFORE, BE IT**:

## Approval of Filing of Bankruptcy Petition

**RESOLVED**, that, in the best judgment of the Member, it is desirable and in the best interests of the Company and its creditors, equityholders, employees, and other parties-in-interest, that the Company file, or cause to be filed, a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code (the case so commenced, the "Chapter 11 Case");

**RESOLVED**, that Shaz Kahng, President and Chief Executive Officer of the Company, Jon Kimmins, Chief Financial Officer and Treasurer of the Company, Kimberly Holtz MacMillan, Vice President, General Counsel, and Secretary of the Company, and any other officer of the Company specifically designated by the foregoing officers (each, an "Authorized Officer" and collectively, the "Authorized Officers") be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to (i) execute and file, or cause to be executed and filed, with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") at such time as any Authorized Officer executing the same shall determine, all petitions, schedules, lists, motions, applications, pleadings, and other necessary papers or documents, including any amendments thereto; and (ii) take any and all actions, and perform any and all further deeds, that they deem necessary, advisable, or appropriate to obtain relief under the provisions of chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 Case, with a view to the successful prosecution of such Chapter 11 Case;

## Retention of Advisors

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the law firm of Milbank, Tweed, Hadley & McCloy LLP ("Milbank") as general bankruptcy counsel to represent, assist, and advise the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations, including filing any pleadings, in connection with the Chapter 11 Case; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon filing of the Chapter 11 Case, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Milbank;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Kutak Rock LLP ("Kutak") as local counsel to represent and advise the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance its rights and obligations in connection with the Chapter 11 Case; and, in connection therewith, the Authorized

Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Cases, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Kutak;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ (i) Stifel, Nicolaus & Company, Incorporated ("Stifel") as investment banker and financial advisor and (ii) Berkeley Research Group, LLC ("BRG") as financial advisor, each to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Case; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be executed and filed appropriate applications with the Bankruptcy Court for authority to retain each of the services of Stifel and BRG;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Prime Clerk LLC ("Prime Clerk") as claims, balloting, and noticing agent to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Cases, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Prime Clerk;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Hilco Real Estate, LLC ("Hilco") as real estate consultant to represent and assist the Company in carrying out its duties under the Bankruptcy Code; and, in connection therewith, the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be filed appropriate applications with the Bankruptcy Court for authority to retain the services of Hilco;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to employ any other professionals, including, without limitation, attorneys, financial advisors, investment bankers, accountants, tax advisors, and claims agents, as they deem necessary, advisable, or appropriate, in their sole discretion, to assist the Company in carrying out its duties under the Bankruptcy Code; and, in connection therewith, the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be filed appropriate applications with the Bankruptcy Court for authority to retain the services of any other professionals as they shall, in their business judgment, deem necessary, advisable, or appropriate;

3

## Approval of Asset Purchase Agreement

**RESOLVED**, that (i) the Sale, (ii) the form, terms, and provisions of the Asset Purchase Agreement and each of the other Transaction Documents, with such modifications to the Transaction Documents as the Authorized Officers shall approve (including, without limitation, any additions, deletions, or changes to the Asset Purchase Agreement or any additions, deletions, or changes to any schedules, exhibits, annexes, and attachments thereto), and (iii) the execution, delivery, and performance of the transactions contemplated by the Asset Purchase Agreement and each of the other Transaction Documents, in each case, are hereby authorized, approved, ratified, and confirmed in all respects;

**RESOLVED**, that the Authorized Officers are hereby authorized, empowered, and directed, in the name and on behalf of the Seller, to execute, deliver, and perform each of the Transaction Documents and the transactions contemplated thereby, and any and all such other documents, agreements and instruments as may be deemed necessary or advisable in order to carry out the purpose and intent of the foregoing Resolutions, in each case, with such Authorized Officer's execution or action to be conclusive evidence of the exercise by such Authorized Officer of the discretionary authority herein conferred;

## Debtor-In-Possession Term Loan Agreement

**WHEREAS**, Gymboree Group (the "Lead Borrower"), the other Borrowers party thereto from time to time, Gymboree Intermediate Corporation, a Delaware corporation ("Intermediate"), the other Guarantors party thereto from time to time, each a debtor and debtor-in-possession (together with Intermediate, the "Guarantors") in cases pending under Chapter 11 of the Bankruptcy Code, the Lenders and Special Situations Investing Group, Inc., as administrative agent (in such capacity, including any successor thereof, the "Administrative Agent") and as collateral agent (in such capacity, including any successor thereof, the "Collateral Agent", and together with the Administrative Agent, the "DIP Term Loan Agent") for the Lenders, propose to enter into that certain Debtor-in-Possession Term Loan Agreement (the "DIP Term Loan Agreement"), dated as of the date hereof;

**WHEREAS**, the obligation of the Lenders to make each Loan to the Borrower under the DIP Term Loan Agreement is subject to the Company having satisfied certain conditions described in the DIP Term Loan Agreement;

**WHEREAS**, the Company will receive benefits from the receipt of the Loans made by the Lenders under the DIP Term Loan Agreement; and

**WHEREAS**, it is in the best interests of the Company to enter into the DIP Term Loan Agreement and each agreement, document, instrument, certificate, recording and filing relating thereto.

**RESOLVED**, that the form, terms and provisions of the DIP Term Loan Agreement and each of the other Loan Documents (as defined below), and the Company's incurrence and performance of its obligations under the DIP Term Loan Agreement (including, without limitation, the "Obligations", as defined therein) and each of the other Loan Documents (as defined below),

including any borrowings of Loans in such amounts as may be available to it from time to time thereunder and the consummation of the transactions contemplated thereby, be, and hereby are, in all respects, authorized and approved; and further resolved, that the Company's Authorized Officers, acting alone or with one or more Authorized Officers be, and hereby is, authorized and empowered to execute and deliver, and to cause the Company to incur and perform its obligations under, the DIP Term Loan Agreement and each of the instruments and documents listed below and all other agreements, documents and instruments contemplated by any of the foregoing or requested by the DIP Term Loan Agent in connection with any of the foregoing (together with the DIP Term Loan Agreement, the "Loan Documents"), and each of the documents and instruments contemplated thereby, in the name and on behalf of the Company under its seal or otherwise, substantially in the forms presented to the Member, with such changes therein and modifications and amendments thereto as any Authorized Officer may in his or her sole discretion approve, which approval shall be conclusively evidenced by his or her execution thereof:

(a)      the Fee Letter;

(b)      the Security Agreement;

(c)      the Orders;

(d)      any intercreditor agreement;

(e)      UCC financing statements, fixture filings, and other instruments as may be reasonably requested by the DIP Term Loan Agent or as may be necessary or appropriate to create, preserve and perfect the security interests purported to be created by the Collateral Documents;

(f)      such other security agreements, pledge agreements, deeds of trust, mortgages, notices, financing statements, tax affidavits, reaffirmation agreements, and other instruments as the DIP Term Loan Agent may reasonably request or as may be necessary or appropriate to create, preserve and perfect the Liens purported to be required pursuant to the Loan Documents to be created in the Collateral as collateral security for the payment of obligations, advances, debts or liabilities related to the Company's obligations;

(g)      such agreements with third parties (including, without limitation, bank agency agreements, motor vehicle perfection agreements, lockbox agreements, blocked account agreements, control agreements, credit card notices, customs broker agreements, landlord agreements and warehouse letters) relating to the Collateral;

(h)      the Loan Documents (as defined in the DIP Term Loan Agreement);

(i)      the Collateral Documents (as defined in the DIP Term Loan Agreement); and

(j)      such other documents, agreements, instruments, certificates, notices, assignments and documents as may be reasonably requested by the DIP Term Loan Agent or required by the DIP Term Loan Agreement, the Collateral Documents or any other Loan Documents;

**RESOLVED**, that the Company will receive value and obtain benefits from the incurrence of the Loans and the other obligations under the DIP Term Loan Agreement and the Loan Documents which are necessary and convenient to the conduct, promotion and attainment of the business of the Company;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered, in the name and on behalf of the Company, to grant a security interest and lien in all of the Company's assets pursuant to the terms of the Loan Documents, including, without limitation, a pledge of all of the equity interests now owned or hereafter acquired by the Company and all personal and real property of the Company now owned or hereafter acquired by the Company, in each case, to the DIP Term Loan Agent, and the DIP Term Loan Agent is authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral without the signature of the Company in such form and in such offices as the DIP Term Loan Agent or any Authorized Officer determines appropriate or necessary to perfect the perfection of the security interests of the DIP Term Loan Agent under the DIP Term Loan Agreement and the other Loan Documents. Without limiting the generality of the foregoing, the DIP Term Loan Agent is expressly authorized to use a collateral description that encompasses "all assets" or "all personal property" of the Company, wheresoever located, whether now owned and existing or hereafter acquired, together with all proceeds thereof or any similar all assets description in any such financing statements or other filing or recording documents or instruments;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered, in the name and on behalf of the Company, to take all such further actions including, without limitation, to pay all fees and expenses in accordance with the terms of the Loan Documents, to arrange for and enter into supplemental agreements, amendments, instruments, certificates or documents relating to the transactions contemplated by the DIP Term Loan Agreement or any of the other Loan Documents and to execute and deliver all such supplemental agreements, amendments, instruments, certificates or documents in the name and on behalf of the Company, which shall in their sole judgment be necessary, proper or advisable in order to perform the Company's obligations under or in connection with the DIP Term Loan Agreement or any of the other Loan Documents and the transactions contemplated therein, and which necessity or advisability shall be conclusively evidenced by such Authorized Officer's execution thereof, to carry out fully the intent of the foregoing resolutions;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered to execute and deliver any amendments, amendment and restatements, supplements, modifications, renewals, extensions, replacements, consolidations, substitutions and extensions of the DIP Term Loan Agreement and any of the Loan Documents which shall in their sole judgment be necessary, proper or advisable;

**RESOLVED**, that all acts and actions taken by the Authorized Officers prior to the date hereof with respect to the transactions contemplated by the DIP Term Loan Agreement and any of the other Loan Documents be, and hereby are, in all respects confirmed, approved and ratified;

**RESOLVED**, that the capitalized terms used in the resolutions under the caption "**Debtor-In-Possession Term Loan Agreement**" and not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Term Loan Agreement;

6

**RESOLVED**, that all acts and actions taken by the Authorized Officers prior to the date hereof with respect to the transactions contemplated by the DIP Term Loan Agreement and any other instruments, agreements or documents related thereto entered into prior to, on or after the date hereof, be, and hereby are, in all respects confirmed, approved and ratified;

## Further Authorizations

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to prosecute the Chapter 11 Case in a manner that in their business judgment is likely to maximize the recovery for stakeholders in the Company and minimize the obligations incurred by the Company;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to negotiate for and obtain postpetition financing according to terms to be negotiated by management of the Company, including under debtor-in-possession credit facilities, and to execute and deliver agreements regarding the use of cash collateral or other similar arrangements, including, without limitation, to enter into any guarantees and to pledge and grant liens on its assets as may be contemplated by or required under the terms of such postpetition financing or cash collateral agreements or other similar arrangements; and, in connection therewith, the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to execute appropriate loan agreements, guarantees, cash collateral agreements, and related ancillary documents;

**RESOLVED,** that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company (i) to file a chapter 11 plan or plans and attendant disclosure statements, and to prosecute and obtain confirmation of such plan or plans in the Chapter 11 Case, and/or (ii) to sell some or substantially all of the assets of the Company;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates, or other documents, and to take such other action, as in the business judgment of such Authorized Officers shall be or becomes necessary, advisable, or appropriate, to effectuate a successful reorganization of the Company, including a sale of some or substantially all of the Company's assets; to effectuate a restructuring of debt, other obligations, organizational form and structure, and ownership of the Company; and to carry out and put into effect the purposes of the foregoing Resolutions and the transactions contemplated by these Resolutions;

**RESOLVED**, that in addition to the specific authorizations hereto conferred upon the Authorized Officers or their designees, each of them hereby is authorized, directed, and empowered, in the name of, and on behalf of, the Company, to take or cause to be taken any and all such further actions, to execute and deliver any and all such agreements, certificates, instruments, and other documents, and to pay all expenses, including filing fees, in each case as such Authorized Officer or Authorized Officers shall determine in his, her, or their business judgment to be necessary, advisable, or appropriate to fully carry out the intent and accomplish

the purposes of the Resolutions adopted herein, or to fully accomplish any and all actions taken in connection with the Chapter 11 Case;

**RESOLVED**, that Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to amend, supplement, or otherwise modify, from time to time, the terms of any documents, certificates, instruments, agreements, or other writings referred to in the foregoing Resolutions;

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before these Resolutions were adopted, are hereby in all respects approved, confirmed, and ratified; and

**RESOLVED**, that this Written Consent of the Sole Member of the Company may be executed in any number of counterparts, including by facsimile or electronic transmission, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument.

[*Remainder of Page Intentionally Left Blank*]

**IN WITNESS WHEREOF**, the undersigned has duly executed this Written Consent of the Sole Member as of the date first set forth above.

<u>SOLE MEMBER</u>

Gymboree Group, Inc.


By: _____
Name: Jon W. Kimmins
Title:  Chief Financial Officer and Treasurer

## **Exhibit B**

**Written Consent of the Sole Member of Gymboree Island, LLC**
(*See attached.*)

# GYMBOREE ISLAND, LLC

## WRITTEN CONSENT OF THE SOLE MEMBER

January 15, 2019

In accordance with Section 19.18(D) of Chapter 19 of the General Corporations Act of Puerto Rico, as may be amended from time to time, and Section 11 of the Operating Agreement of Gymboree Island, LLC, a limited liability company organized under the laws of the Commonwealth of Puerto Rico (the "Company"), as amended, modified, or supplemented from time to time, and dated as of August 30, 2007, the undersigned, being the sole member of the Company (the "Member"), hereby consents to, adopts, and approves the following resolutions and each and every action effected thereby, effective as of the date first written above:

**WHEREAS**, the Member has reviewed the materials presented by management and the financial, legal, and other advisors of the Company and has held numerous discussions regarding such materials and the liabilities, obligations, and liquidity situation (including current and future liquidity needs) of the Company, the strategic alternatives available to the Company, and the impact of the foregoing on the businesses and operations of the Company;

**WHEREAS**, the Member has had the opportunity to consult with management and the financial, legal, and other advisors of the Company and fully consider each of the strategic alternatives available to the Company;

**WHEREAS**, the Member has reviewed and considered the advice and recommendations of the management of the Company and the Company's financial, legal, and other advisors as to the relative risks and benefits of filing for relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, the Member has been presented with and reviewed the Asset Purchase Agreement (the "Asset Purchase Agreement"), substantially on the terms presented to the Member, to be entered into by and among (i) Gymboree Group, Inc., a Delaware corporation ("Gymboree Group"), and the Gymboree Group subsidiaries, including the Company, signatory thereto (collectively, the "Seller"), and (ii) Special Situations Investing Group, Inc., a Delaware corporation ("Buyer"), pursuant to which, among other things, the Seller will sell, assign, and transfer to Buyer, and Buyer will acquire, assume, and accept the transfer from Seller of, certain contracts, lease agreements, intellectual property, and e-commerce assets and liabilities (as more particularly described therein) on the terms and subject to the conditions set forth therein (collectively, the "Sale");

**WHEREAS**, in furtherance of the transactions contemplated by the Asset Purchase Agreement, the Member has determined that it is necessary and advisable for the Seller to execute certain other documents, agreements, instruments, and certificates as may be contemplated or required by the Asset Purchase Agreement (collectively, and including the Asset Purchase Agreement and all schedules, exhibits, annexes, and attachments thereto, the "Transaction Documents"); and

**WHEREAS**, in the best judgment of the Member, the Member has determined that it is desirable and in the best interests of the Seller and its creditors, equityholders, employees, and other parties-in-interest, to enter into the Asset Purchase Agreement and the other Transaction Documents and to execute, deliver, and consummate the transactions contemplated thereby, including the Sale.

**NOW, THEREFORE, BE IT**:

## Approval of Filing of Bankruptcy Petition

**RESOLVED**, that, in the best judgment of the Member, it is desirable and in the best interests of the Company and its creditors, equityholders, employees, and other parties-in-interest, that the Company file, or cause to be filed, a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code (the case so commenced, the "Chapter 11 Case");

**RESOLVED**, that Shaz Kahng, President and Chief Executive Officer of the Company, Jon Kimmins, Chief Financial Officer and Treasurer of the Company, Kimberly Holtz MacMillan, Vice President, General Counsel, and Secretary of the Company, and any other officer of the Company specifically designated by the foregoing officers (each, an "Authorized Officer" and collectively, the "Authorized Officers") be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to (i) execute and file, or cause to be executed and filed, with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") at such time as any Authorized Officer executing the same shall determine, all petitions, schedules, lists, motions, applications, pleadings, and other necessary papers or documents, including any amendments thereto; and (ii) take any and all actions, and perform any and all further deeds, that they deem necessary, advisable, or appropriate to obtain relief under the provisions of chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 Case, with a view to the successful prosecution of such Chapter 11 Case;

## Retention of Advisors

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the law firm of Milbank, Tweed, Hadley & McCloy LLP ("Milbank") as general bankruptcy counsel to represent, assist, and advise the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations, including filing any pleadings, in connection with the Chapter 11 Case; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon filing of the Chapter 11 Case, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Milbank;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Kutak Rock LLP ("Kutak") as local counsel to represent and advise the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance its rights and obligations in connection with the Chapter 11 Case; and, in connection therewith, the Authorized

Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Cases, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Kutak;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ (i) Stifel, Nicolaus & Company, Incorporated ("Stifel") as investment banker and financial advisor and (ii) Berkeley Research Group, LLC ("BRG") as financial advisor, each to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Case; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be executed and filed appropriate applications with the Bankruptcy Court for authority to retain each of the services of Stifel and BRG;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Prime Clerk LLC ("Prime Clerk") as claims, balloting, and noticing agent to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations; and, in connection therewith, the Authorized Officers are hereby authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Cases, and (iii) cause to be executed and filed an appropriate application with the Bankruptcy Court for authority to retain the services of Prime Clerk;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to employ the firm of Hilco Real Estate, LLC ("Hilco") as real estate consultant to represent and assist the Company in carrying out its duties under the Bankruptcy Code; and, in connection therewith, the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be filed appropriate applications with the Bankruptcy Court for authority to retain the services of Hilco;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to employ any other professionals, including, without limitation, attorneys, financial advisors, investment bankers, accountants, tax advisors, and claims agents, as they deem necessary, advisable, or appropriate, in their sole discretion, to assist the Company in carrying out its duties under the Bankruptcy Code; and, in connection therewith, the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to (i) execute appropriate retention agreements, (ii) pay appropriate retainers prior to and/or immediately upon the filing of the Chapter 11 Case, and (iii) cause to be filed appropriate applications with the Bankruptcy Court for authority to retain the services of any other professionals as they shall, in their business judgment, deem necessary, advisable, or appropriate;

**Approval of Asset Purchase Agreement**

**RESOLVED**, that (i) the Sale, (ii) the form, terms, and provisions of the Asset Purchase Agreement and each of the other Transaction Documents, with such modifications to the Transaction Documents as the Authorized Officers shall approve (including, without limitation, any additions, deletions, or changes to the Asset Purchase Agreement or any additions, deletions, or changes to any schedules, exhibits, annexes, and attachments thereto), and (iii) the execution, delivery, and performance of the transactions contemplated by the Asset Purchase Agreement and each of the other Transaction Documents, in each case, are hereby authorized, approved, ratified, and confirmed in all respects;

**RESOLVED**, that the Authorized Officers are hereby authorized, empowered, and directed, in the name and on behalf of the Seller, to execute, deliver, and perform each of the Transaction Documents and the transactions contemplated thereby, and any and all such other documents, agreements and instruments as may be deemed necessary or advisable in order to carry out the purpose and intent of the foregoing Resolutions, in each case, with such Authorized Officer's execution or action to be conclusive evidence of the exercise by such Authorized Officer of the discretionary authority herein conferred;

**Debtor-In-Possession Term Loan Agreement**

**WHEREAS**, Gymboree Group (the "Lead Borrower"), the other Borrowers party thereto from time to time, Gymboree Intermediate Corporation, a Delaware corporation ("Intermediate"), the other Guarantors party thereto from time to time, each a debtor and debtor-in-possession (together with Intermediate, the "Guarantors") in cases pending under Chapter 11 of the Bankruptcy Code, the Lenders and Special Situations Investing Group, Inc., as administrative agent (in such capacity, including any successor thereof, the "Administrative Agent") and as collateral agent (in such capacity, including any successor thereof, the "Collateral Agent", and together with the Administrative Agent, the "DIP Term Loan Agent") for the Lenders, propose to enter into that certain Debtor-in-Possession Term Loan Agreement (the "DIP Term Loan Agreement"), dated as of the date hereof;

**WHEREAS**, the obligation of the Lenders to make each Loan to the Borrower under the DIP Term Loan Agreement is subject to the Company having satisfied certain conditions described in the DIP Term Loan Agreement;

**WHEREAS**, the Company will receive benefits from the receipt of the Loans made by the Lenders under the DIP Term Loan Agreement; and

**WHEREAS**, it is in the best interests of the Company to enter into the DIP Term Loan Agreement and each agreement, document, instrument, certificate, recording and filing relating thereto.

**RESOLVED**, that the form, terms and provisions of the DIP Term Loan Agreement and each of the other Loan Documents (as defined below), and the Company's incurrence and performance of its obligations under the DIP Term Loan Agreement (including, without limitation, the "Obligations", as defined therein) and each of the other Loan Documents (as defined below),

including any borrowings of Loans in such amounts as may be available to it from time to time thereunder and the consummation of the transactions contemplated thereby, be, and hereby are, in all respects, authorized and approved; and further resolved, that the Company's Authorized Officers, acting alone or with one or more Authorized Officers be, and hereby is, authorized and empowered to execute and deliver, and to cause the Company to incur and perform its obligations under, the DIP Term Loan Agreement and each of the instruments and documents listed below and all other agreements, documents and instruments contemplated by any of the foregoing or requested by the DIP Term Loan Agent in connection with any of the foregoing (together with the DIP Term Loan Agreement, the "Loan Documents"), and each of the documents and instruments contemplated thereby, in the name and on behalf of the Company under its seal or otherwise, substantially in the forms presented to the Member, with such changes therein and modifications and amendments thereto as any Authorized Officer may in his or her sole discretion approve, which approval shall be conclusively evidenced by his or her execution thereof:

(a)     the Fee Letter;

(b)     the Security Agreement;

(c)     the Orders;

(d)     any intercreditor agreement;

(e)     UCC financing statements, fixture filings, and other instruments as may be reasonably requested by the DIP Term Loan Agent or as may be necessary or appropriate to create, preserve and perfect the security interests purported to be created by the Collateral Documents;

(f)     such other security agreements, pledge agreements, deeds of trust, mortgages, notices, financing statements, tax affidavits, reaffirmation agreements, and other instruments as the DIP Term Loan Agent may reasonably request or as may be necessary or appropriate to create, preserve and perfect the Liens purported to be required pursuant to the Loan Documents to be created in the Collateral as collateral security for the payment of obligations, advances, debts or liabilities related to the Company's obligations;

(g)     such agreements with third parties (including, without limitation, bank agency agreements, motor vehicle perfection agreements, lockbox agreements, blocked account agreements, control agreements, credit card notices, customs broker agreements, landlord agreements and warehouse letters) relating to the Collateral;

(h)     the Loan Documents (as defined in the DIP Term Loan Agreement);

(i)     the Collateral Documents (as defined in the DIP Term Loan Agreement); and

(j)     such other documents, agreements, instruments, certificates, notices, assignments and documents as may be reasonably requested by the DIP Term Loan Agent or required by the DIP Term Loan Agreement, the Collateral Documents or any other Loan Documents;

**RESOLVED**, that the Company will receive value and obtain benefits from the incurrence of the Loans and the other obligations under the DIP Term Loan Agreement and the Loan Documents which are necessary and convenient to the conduct, promotion and attainment of the business of the Company;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered, in the name and on behalf of the Company, to grant a security interest and lien in all of the Company's assets pursuant to the terms of the Loan Documents, including, without limitation, a pledge of all of the equity interests now owned or hereafter acquired by the Company and all personal and real property of the Company now owned or hereafter acquired by the Company, in each case, to the DIP Term Loan Agent, and the DIP Term Loan Agent is authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral without the signature of the Company in such form and in such offices as the DIP Term Loan Agent or any Authorized Officer determines appropriate or necessary to perfect the perfection of the security interests of the DIP Term Loan Agent under the DIP Term Loan Agreement and the other Loan Documents. Without limiting the generality of the foregoing, the DIP Term Loan Agent is expressly authorized to use a collateral description that encompasses "all assets" or "all personal property" of the Company, wheresoever located, whether now owned and existing or hereafter acquired, together with all proceeds thereof or any similar all assets description in any such financing statements or other filing or recording documents or instruments;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered, in the name and on behalf of the Company, to take all such further actions including, without limitation, to pay all fees and expenses in accordance with the terms of the Loan Documents, to arrange for and enter into supplemental agreements, amendments, instruments, certificates or documents relating to the transactions contemplated by the DIP Term Loan Agreement or any of the other Loan Documents and to execute and deliver all such supplemental agreements, amendments, instruments, certificates or documents in the name and on behalf of the Company, which shall in their sole judgment be necessary, proper or advisable in order to perform the Company's obligations under or in connection with the DIP Term Loan Agreement or any of the other Loan Documents and the transactions contemplated therein, and which necessity or advisability shall be conclusively evidenced by such Authorized Officer's execution thereof, to carry out fully the intent of the foregoing resolutions;

**RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered to execute and deliver any amendments, amendment and restatements, supplements, modifications, renewals, extensions, replacements, consolidations, substitutions and extensions of the DIP Term Loan Agreement and any of the Loan Documents which shall in their sole judgment be necessary, proper or advisable;

**RESOLVED**, that all acts and actions taken by the Authorized Officers prior to the date hereof with respect to the transactions contemplated by the DIP Term Loan Agreement and any of the other Loan Documents be, and hereby are, in all respects confirmed, approved and ratified;

**RESOLVED**, that the capitalized terms used in the resolutions under the caption "**Debtor-In-Possession Term Loan Agreement**" and not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Term Loan Agreement;

**RESOLVED**, that all acts and actions taken by the Authorized Officers prior to the date hereof with respect to the transactions contemplated by the DIP Term Loan Agreement and any other instruments, agreements or documents related thereto entered into prior to, on or after the date hereof, be, and hereby are, in all respects confirmed, approved and ratified;

## Further Authorizations

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to prosecute the Chapter 11 Case in a manner that in their business judgment is likely to maximize the recovery for stakeholders in the Company and minimize the obligations incurred by the Company;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to negotiate for and obtain postpetition financing according to terms to be negotiated by management of the Company, including under debtor-in-possession credit facilities, and to execute and deliver agreements regarding the use of cash collateral or other similar arrangements, including, without limitation, to enter into any guarantees and to pledge and grant liens on its assets as may be contemplated by or required under the terms of such postpetition financing or cash collateral agreements or other similar arrangements; and, in connection therewith, the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed to execute appropriate loan agreements, guarantees, cash collateral agreements, and related ancillary documents;

**RESOLVED,** that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company (i) to file a chapter 11 plan or plans and attendant disclosure statements, and to prosecute and obtain confirmation of such plan or plans in the Chapter 11 Case, and/or (ii) to sell some or substantially all of the assets of the Company;

**RESOLVED**, that the Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, and perform such agreements, instruments, motions, affidavits, applications for approvals or ruling of governmental or regulatory authorities, certificates, or other documents, and to take such other action, as in the business judgment of such Authorized Officers shall be or becomes necessary, advisable, or appropriate, to effectuate a successful reorganization of the Company, including a sale of some or substantially all of the Company's assets; to effectuate a restructuring of debt, other obligations, organizational form and structure, and ownership of the Company; and to carry out and put into effect the purposes of the foregoing Resolutions and the transactions contemplated by these Resolutions;

**RESOLVED**, that in addition to the specific authorizations hereto conferred upon the Authorized Officers or their designees, each of them hereby is authorized, directed, and empowered, in the name of, and on behalf of, the Company, to take or cause to be taken any and all such further actions, to execute and deliver any and all such agreements, certificates, instruments, and other documents, and to pay all expenses, including filing fees, in each case as such Authorized Officer or Authorized Officers shall determine in his, her, or their business judgment to be necessary, advisable, or appropriate to fully carry out the intent and accomplish

the purposes of the Resolutions adopted herein, or to fully accomplish any and all actions taken in connection with the Chapter 11 Case;

**RESOLVED**, that Authorized Officers be, and each of them hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to amend, supplement, or otherwise modify, from time to time, the terms of any documents, certificates, instruments, agreements, or other writings referred to in the foregoing Resolutions;

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before these Resolutions were adopted, are hereby in all respects approved, confirmed, and ratified; and

**RESOLVED**, that this Written Consent of the Sole Member of the Company may be executed in any number of counterparts, including by facsimile or electronic transmission, each of which when so executed and delivered shall be deemed an original, and such counterparts shall together constitute one and the same instrument.

[*Remainder of Page Intentionally Left Blank*]

**IN WITNESS WHEREOF**, the undersigned has duly executed this Written Consent of the Sole Member of the Company as of the date first set forth above.

<u>SOLE MEMBER</u>

Gymboree Group, Inc.

By: _____
Name: Jon W. Kimmins
Title:  Chief Financial Officer and Treasurer

*[Signature Page to Written Consent of the Sole Member of Gymboree Island, LLC]*