Dennis F. Dunne, Esq. (*pro hac vice* pending)
Evan R. Fleck, Esq. (*pro hac vice* pending)
Michael W. Price, Esq. (*pro hac vice* pending)
**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**
28 Liberty Street
New York, New York 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219

*Proposed Co-Counsel for Debtors in Possession*

Michael A. Condyles, Esq. (VA 27807)
Peter J. Barrett, Esq. (VA 46179)
Jeremy S. Williams, Esq. (VA 77469)
Brian H. Richardson, Esq. (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GYMBOREE GROUP, INC., *et al.*,[1] | ) | Case No. 19-30258 (KLP) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) |  |

**ORDER (I)(A) APPROVING BIDDING PROCEDURES, (B) APPROVING J&J
STALKING HORSE PURCHASE AGREEMENT, (C) SCHEDULING AN AUCTION
AND APPROVING FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING
ASSUMPTION AND ASSIGNMENT PROCEDURES AND (E) SCHEDULING THE
SALE HEARING; (II) APPROVING (A) THE SALE(S), FREE AND CLEAR OF
ENCUMBRANCES AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] of the above-captioned debtors in possession

(collectively, the "Debtors"), for entry of an order: (a) approving the Bidding Procedures,

(ii) approving the J&J Stalking Horse Agreement, (iii) scheduling an Auction and approving the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Gymboree Group, Inc. (6587); Gymboree Intermediate Corporation (1473); Gymboree Holding Corporation (0315); Gymboree Wholesale, Inc. (6588); Gym-Mark, Inc. (6459); Gymboree Operations, Inc. (6463); Gymboree Distribution, Inc. (8669); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, LLC (6461); Gym-Card, LLC (5720); and Gymboree Island, LLC (1215). The Debtors' service address is 71 Stevenson Street, Suite 2200, San Francisco, California 94105.

[2] Capitalized terms not specifically defined herein shall have the meaning assigned to them in the Motion.

form and manner of notice thereof, (iv) approving Assumption and Assignment Procedures, (v) scheduling a Sale Hearing, and (vi) granting certain related relief; and upon the Motion and the Declaration of Stephen Coulombe in Support of First Day Pleadings (the "First Day Declaration"), the Declaration of James Doak in support of the Motion (the "Doak Declaration"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference from the United States District Court for the Eastern District of Virginia*, dated July 10, 1984; and this Court having the authority to enter an order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

B.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

C.      The statutory predicates for the relief requested in the Motion are (i) Sections 105(a), 363, and 365 of the Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6004, 6006, 9007, 9008 and 9014, and (iii) Local Bankruptcy Rules 2002-1 and 6004-1.

D.      Notice of the Motion and the hearing on the Bidding Procedures was sufficient under the circumstances and no other or further notice need be provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief requested in the Motion has been afforded to parties in interest.

E.      The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures attached hereto as <u>Exhibit 1</u>,  and the Bidding Procedures are fair, reasonable and appropriate, and are designed to maximize the value of the Assets.

F.      The Assumption and Assignment Procedures set forth in ¶¶ D(1)-(13) below are fair, reasonable and appropriate and comply with the provisions of section 365 of the Bankruptcy Code.

G.      Each of the Sale Notice, Publication Notice, Potential Assumption and Assignment Notice and Proposed Assumed Contracts Notice is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, Sale Hearing, Bidding Procedures, Assumption and Assignment Procedures, the Debtors' good faith calculation of the cure amounts due under any executory contract or unexpired lease that the Debtors reasonably believe may be transferred in connection with a Sale, and of all relevant dates and deadlines with respect to the foregoing.

H.      Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED**

**THAT**:

1.    The Motion is GRANTED as set forth herein.

2.    Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

3.    All objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits with prejudice.

**B. The Bidding Procedures**

1.    The Bidding Procedures attached hereto as <u>Exhibit 1</u> are APPROVED and fully incorporated into this Order.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

2.    The following dates and deadlines regarding competitive bidding are established (subject to modification in accordance with the Bidding Procedures):

    a.    **Proposal Deadline:  January 25, 2019 at 5:00 p.m. (prevailing Eastern Time)** is the deadline by which any prospective interested parties must submit a Proposal;

    b.    **Final Bid Deadline:  February 11, 2019 at 5:00 p.m. (prevailing Eastern Time)** is the deadline by which the parties specified in the Bidding Procedures must **<u>actually receive</u>** the final, binding bids (each, a "<u>Final Bid</u>") from all Prospective Bidders that intend to participate in the Auction, <u>provided</u> that the Debtors shall have the discretion to extend the Final Bid Deadline for any Prospective Bidder;

    c.    **Notification of Status as Qualified Bidder**:  Prior to the Auction, the Debtors must notify all Qualified Bidders of their status as such; and

    d.    **Auction:**  If the Debtors receive more than one Qualified Bid for the same Assets, the Debtors shall conduct the Auction at the offices of Milbank, Tweed, Hadley & McCloy LLP, 55 Hudson Yards, New York, New York 10001 on **February 25, 2019**, at a time to be determined;

3.  Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction.

4.  If the Debtors receive no more than one Qualified Bid (including any Stalking Horse Bid) with respect to any Assets, the Debtors may determine, in their discretion and in consultation with the Consultation Parties, not to hold the Auction for such Assets and shall have the right to declare such Qualified Bid as the Successful Bid for such Assets and request, at the Sale Hearing, that the Court approve the applicable Asset Purchase Agreement.

5.  If the Auction is conducted, (a) each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the Sale; (b) each Qualified Bidder participating in the Auction shall be required to confirm that its Qualified Bid is a good faith, *bona fide* offer and that it intends to consummate the proposed Sale if selected as the Successful Bidder; and (c) the Auction shall be conducted openly and shall be transcribed or videotaped.

6.  If the Auction is conducted, this Court will not consider bids made after the Auction has closed.

7.  All Good Faith Deposits (for purposes of this paragraph, as increased by the Incremental Deposit Amount, if applicable) shall be held in escrow by the Debtors in a non-interest-bearing escrow or trust account and shall not become property of the Debtors' estates.  All Good Faith Deposits shall be retained by the Debtors until no later than five business days after the conclusion of the Auction, except for the Good Faith Deposit(s) of Successful Bidder(s) and Backup Bidder(s).  The Debtors shall retain the Good Faith Deposit(s) of the Backup Bidder(s) until the earlier of (a) five business days after the closing of the applicable Sale(s) and (b) 60 days after the date of the Sale Hearing.  The Good Faith Deposit(s) of the Successful Bidder(s) shall be credited towards the applicable Purchase Price.

## C.  Stalking Horse Agreements

1.  The Debtors are authorized to execute the J&J Stalking Horse Agreement and to perform thereunder.

2.  To the extent the Debtors deem necessary and appropriate in the prudent exercise of their business judgment to enter into any other Stalking Horse Agreement(s), they are authorized to seek approval of any such Stalking Horse Agreement, including any bid protections in connection therewith, on an expedited basis if necessary, but no earlier than ten days after filing a Stalking Horse Motion and no later than the Sale Hearing.

**D. Sale Notice**

1.  The form of the Sale Notice attached hereto as <u>Exhibit 3</u> is approved and fully incorporated into this Order.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in the Sale Notice shall not diminish or impair the effectiveness of such provision.

2.  Within two days after entry of this Order, the Debtors shall serve the Sale Notice on the Sale Notice Parties.

3.  As soon as reasonably practicable, but in no event later than five days after the entry of this Order, the Debtors shall post the Sale Notice and this Order on the website maintained by the Debtors' claim and noticing agent, Prime Clerk, LLC, located at http://cases.primeclerk.com/gym (the "<u>Prime Clerk Website</u>").

4.  Not later than five days after entry of this Order, the Debtors shall cause an abbreviated version of the Sale Notice to be published once in the *Wall Street Journal* and may be published in such additional local and trade publications as the Debtors deem advisable.

5.  The Sale Hearing shall be conducted on **March 4, 2019 at 2:00 p.m. (prevailing Eastern Time)**.

6.  Objections to any Sale (each, a "<u>Sale Objection</u>"), including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and entry of any Sale Order shall (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules and all orders of the Court; and (c) be filed with the Court and served on: the Service List as set forth in the Case Management Procedures and counsel to J&J Stalking Horse Bidder (collectively, the "<u>Objection Recipients</u>") by **February 15, 2019 at 5:00 p.m. (prevailing Eastern Time)**.

7.  Any reply to Sale Objections and any objections to the conduct of the Auction and the identification of the Successful Bidder(s) must be filed by no later than **February 28, 2019 at 5:00 p.m. (prevailing Eastern Time).** The failure of any party to timely file and serve on the Objection Recipients a timely Sale Objection shall bar such party from asserting, at the Sale Hearing or thereafter, any objection (other than a Cure Objection or an Adequate Assurance Objection) to the relief requested in the Motion, or to the consummation of the applicable Sale(s), including the transfer of the applicable Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to be a "consent" for purposes of section 363(f) of the Bankruptcy Code.

8.      If any Successful Bidder fails to consummate the proposed Sale, a hearing to authorize the assumption and assignment of the applicable Proposed Assigned Contracts to the applicable Backup Bidder(s) shall be held before the Court on no less than five business days' notice, with objections due at least one day prior to such hearing, unless otherwise ordered by the Court.  For the avoidance of doubt, the scope of such hearing shall be limited to issues relating to adequate assurance of future performance by the Backup Bidder(s).

9.      Notwithstanding the foregoing or anything herein to the contrary, the deadline to file a Cure Objection or an Adequate Assurance Objection in connection with a proposed Sale shall be as set forth below.

**E. Assumption and Assignment Procedures**

1.      The Potential Assumption and Assignment Notice attached hereto as Exhibit 2 is approved and fully incorporated into this Order.  The failure to specifically include a reference to any particular provision of the Assumption and Assignment Procedures in the Assumption and Assignment Notice shall not diminish or impair the effectiveness of such provision.

2.      The Debtors shall file with this Court and cause to be published on the Prime Clerk Website, the Potential Assumption and Assignment Notice within five business days after the entry of this Order.

3.      Within five business days after the entry of this Order, the Debtors shall serve on each non-Debtor counterparty (each, a "Counterparty") to an executory contract (each, an "Executory Contract") or unexpired lease (each, an "Unexpired Lease) that the Debtors reasonably believe may be transferred as part of the Sale(s) (collectively, such Executory Contracts and Unexpired Leases, the "Contracts"), the Potential Assumption and Assignment Notice with the proposed respective cure amounts (the "Cure Costs") for each Contract.

4.      Any Counterparty that wishes to object to the proposed Cure Costs with respect to any outstanding monetary defaults under the relevant Contract (each, a "Cure Objection"), shall file with this Court and serve on the Objection Recipients its Cure Objection, which must state, with specificity, the legal and factual bases therefor, including any appropriate documentation in support thereof, by no later than **5:00 p.m. (prevailing Eastern Time) on the date that is 14 days after the filing of the Potential Assumption and Assignment Notice**.

5.      As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file with this Court, serve on the Sale Notice Parties (including each applicable Counterparty and its counsel, if identified as a

notice party in the applicable Contract or as identified in any notice of appearance filed in these cases), by email, to the extent they have consented to email service and email addresses are available to the Debtors, or otherwise via overnight mail, and cause to be published on the Prime Clerk Website a list of the contracts that the Debtors will seek to assume and assign to the Successful Bidder(s) (the "<u>Proposed Assumed Contracts Notice</u>" and, each contract used therein, a "<u>Proposed Assumed Contract</u>").

6. If the parties are unable to consensually resolve a Cure Objection with respect to a Proposed Assumed Contract prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to such Cure Objection at or subsequent to the Sale Hearing; <u>provided</u> that the determination of whether a Cure Objection may be heard at the Sale Hearing is in the Debtors' and the Court's discretion. An adjourned Cure Objection may be resolved after the closing date of the applicable Sale; <u>provided</u> that the relevant Asset Purchase Agreement shall provide for the establishment of a cash reserve equal to the cure amount the objecting Counterparty reasonably believes is required to cure the asserted monetary default under the applicable Proposed Assumed Contract (or as otherwise may be ordered by the Court). Upon the Court's resolution of any Cure Objection, whether or not such resolution occurs prior to or after the closing of the applicable Sale, the Debtors or the applicable Successful Bidder, as applicable, will have the right to exclude the Proposed Assumed Contract subject to such Cure Objection from the Assets subject to the applicable Sale.

7. Upon resolution of a Cure Objection, provided that the Debtors or the applicable Successful Bidder have not determined to exclude the relevant Proposed Assumed Contract from the Assets subject to the applicable Sale, and the payment of the applicable cure amount, if any, the Proposed Assumed Contract that was the subject of such adjourned Cure Objection shall be deemed assumed and assigned to the applicable Successful Bidder, as of the closing date of the applicable Sale.

8. If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the Cure Costs set forth in the Potential Assumption and Assignment Notice and forever shall be barred from asserting any other claims related to such Proposed Assumed Contract against the Debtors or any Successful Bidder(s) or their respective property, and such Cure Costs shall constitute the only amount necessary to cure outstanding defaults under the applicable Contract in accordance with section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in such Contract or any other document.

9.      In the event that the Debtors identify any Counterparties that were not served with the Potential Assumption and Assignment Notice, the Debtors shall subsequently serve such Counterparty with the Potential Assumption and Assignment Notice, and these Assignment and Assumption Procedures shall nevertheless apply to such Counterparty; provided, however, that the deadline for such Counterparty to file a Cure Objection shall be **5:00 p.m. (prevailing Eastern Time) on the date that is seven days following service of the supplemental Assumption and Assignment Notice**.

10.     Within 24 hours of the receipt of adequate assurance information from any Qualified Bidder, but in no event later than 24 hours after the Final Bid Deadline, the Debtors shall serve, by email to the extent email addresses are available to the Debtors and otherwise by overnight mail, such adequate assurance information (as more fully set forth in Section VI.A.7 of the Bidding Procedures) to any Counterparty (and its counsel, if identified as a notice party in the applicable Contract or as identified in any notice of appearance filed in these cases) whose Contract may be assumed by such Qualified Bidder, including the legal name of the proposed assignee, the proposed assignee's financial ability to perform under the Contract and a contact person that Counterparties may contact if they wish to obtain further information regarding the Qualified Bidder.

11.     Any Counterparty that wishes to object to the proposed adequate assurance of future performance by the applicable Successful Bidder with respect to such Contract (each, an "Adequate Assurance Objection"), shall file with this Court and serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases therefor, including any appropriate documentation in support thereof, by no later than **February 28, 2019 at 5:00 p.m. (prevailing Eastern Time)**.

12.     If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance by the applicable Successful Bidder shall be determined by the Court at the Sale Hearing.

13.     If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, such Counterparty shall be deemed to have consented to the assumption and assignment of the Proposed Assumed Contract (unless the Counterparty has filed a timely Cure Objection with respect to the Proposed Assumed Contract) and to the adequate assurance of future performance in connection therewith, and forever shall be barred from asserting any objection with regard to such assumption and assignment or adequate assurance of future performance.  The applicable Successful Bidder shall

be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in the Contract or any other document.

**F. Additional Relief**

1.      All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Bidding Procedures, the Auction, and any Sale(s).

2.      In the event there is a conflict between this Order and the Motion, this Order shall control.

3.      Any Stalking Horse Bidder shall have standing to enforce the terms of this Order.

4.      The requirements of Bankruptcy Rule 6004(a) are satisfied.

5.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

6.      The Debtors are authorized to take all steps necessary or appropriate to carry out the provisions of this Order.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from the interpretation or implementation of this Order.

Dated: _____
Richmond, Virginia

Jan 17 2019

/s/ Keith L. Phillips
_____
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: Jan 17 2019

WE ASK FOR THIS:

*/s/ Michael A. Condyles*

Michael A. Condyles, Esq. (VA 27807)
Peter J. Barrett, Esq. (VA 46179)
Jeremy S. Williams, Esq. (VA 77469)
Brian H. Richardson, Esq. (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

- and -

Dennis F. Dunne, Esq. (*pro hac vice* pending)
Evan R. Fleck, Esq. (*pro hac vice* pending)
Michael W. Price, Esq. (*pro hac vice* pending)
**MILBANK, TWEED, HADLEY & M$^{C}$CLOY LLP**
28 Liberty Street
New York, New York 10005
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219

*Proposed Co-Counsel for Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Michael A. Condyles*

## Exhibit 1

**Bidding Procedures**

Dennis F. Dunne, Esq. (*pro hac vice* pending)
Evan R. Fleck, Esq. (*pro hac vice* pending)
Michael W. Price, Esq. (*pro hac vice* pending)
**MILBANK, TWEED, HADLEY & McCLOY LLP**
28 Liberty Street
New York, New York 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219

*Proposed Co-Counsel for Debtors in Possession*

Michael A. Condyles, Esq. (VA 27807)
Peter J. Barrett, Esq. (VA 46179)
Jeremy S. Williams, Esq. (VA 77469)
Brian H. Richardson, Esq. (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GYMBOREE GROUP, INC., *et al.*,[4] | ) | Case No. 19-30258 (KLP) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

## BIDDING PROCEDURES

On _____, 2019, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") entered an Order (the "Bidding Procedures Order") approving the following procedures (the "Bidding Procedures") for the sale of some or all of the assets (the "Assets") of the above-captioned debtors in possession (collectively, the "Debtors").

## I.    KEY DATES AND DEADLINES

| | |
|---|---|
| **No later than five business days after entry of the Bidding Procedures Order** | Deadline for Debtors to file the Potential Assumption and Assignment Notice |

---

[4]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Gymboree Group, Inc. (6587); Gymboree Intermediate Corporation (1473); Gymboree Holding Corporation (0315); Gymboree Wholesale, Inc. (6588); Gym-Mark, Inc. (6459); Gymboree Operations, Inc. (6463); Gymboree Distribution, Inc. (8669); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, LLC (6461); Gym-Card, LLC (5720); and Gymboree Island, LLC (1215).  The Debtors' service address is 71 Stevenson Street, Suite 2200, San Francisco, California 94105.

| | |
|---|---|
| **5:00 p.m. (prevailing Eastern Time) on the date that is 14 days after filing of the Assumption and Assignment Notice** | Deadline to file Cure Objections |
| **January 25, 2019, at 5:00 p.m. (prevailing Eastern Time)** | Proposal Deadline |
| **February 11, 2019, at 5:00 p.m. (prevailing Eastern Time)[1]** | Final Bid Deadline |
| **February 15, 2019, at 5:00 p.m. (prevailing Eastern Time)** | Deadline for objections to the Sale(s) other than Cure Objections and Adequate Assurance Objections |
| **February 25, 2019, at a time to be determined** | Auction |
| **February 28, 2019, at 5:00 p.m. (prevailing Eastern Time)** | Deadline to file Adequate Assurance Objections and objections to the conduct of the Auction and the identification of the Successful Bidder(s) |
| **March 2, 2019, at 5:00 p.m. (prevailing Eastern Time)** | Deadline to file the replies in connection with the applicable Sale(s) |
| **March 4, 2019, at 2:00 p.m. (prevailing Eastern Time)** | Sale Hearing |

## II.    DUE DILIGENCE

To be eligible to participate in the bidding process for any or all of the Assets, any interested party (each, a "Prospective Bidder") shall first deliver to each of the Bid Notice Parties (as defined in Section X.A):

- an executed confidentiality agreement, in form and substance satisfactory to the Debtors;

- a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Prospective Bidder has a bona fide interest in purchasing the specified Assets; and

---

[1]    Subject to Debtors' extension right set forth in Section V of the Bidding Procedures.

- preliminary proof of the Prospective Bidder's financial capacity to close a proposed Sale.

Any Prospective Bidder identified by the Debtors as reasonably likely to be a Qualified Bidder (as defined below), upon execution of a confidentiality agreement, shall be granted access to information regarding the relevant Assets. The Debtors shall be entitled to revoke due diligence access to any Prospective Bidder that fails to become a Qualified Bidder.

The Debtors will work to accommodate all reasonable requests for additional information and due diligence access from Prospective Bidders. All due diligence requests shall be directed to (i) the Debtors, The Gymboree Group, 71 Stevenson Street, Suite 2200, San Francisco, California 94105 (Attn: Kimberly H. MacMillan, Esq.) and (ii) the Debtors' investment banker, Miller Buckfire, 787 7th Avenue, 5th Floor, New York, New York, 10019 (Attn: James Doak (james.doak@millerbuckfire.com)).

## III.    PROPOSALS

### A. Proposal Deadline

Written preliminary indications of interest (each, a "Proposal") are to be submitted no later than **January 25, 2019 at 5:00 p.m. (prevailing Eastern Time)** (the "Proposal Deadline").

### B. Proposal Requirements

Proposals must contain the following information:

1.  Identity of Purchaser and its Affiliates: A Proposal must specify the identity of the legal entity that would acquire the specified Assets, the ultimate holding company, the identity of all key shareholders and any relevant history and/or experience in the industry. A Proposal must disclose whether the Prospective Bidder or any of its representatives has, or within the last 24 months had, any commercial relationship or dealings with the Debtors or any of their directors and officers or any of the Debtors' prepetition secured lenders, and, if so, disclose in reasonable detail information about such relationship and/or dealings.

2.  Proposed Transaction: A Proposal must include the terms of the proposed transaction, including, but not limited to:

    a)  Identification of the Assets included in the proposed Sale;[1]

    b)  the liabilities, if any, to be assumed;

---

[1]    The Debtors will consider bids for any or all of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders. Any bid for particular Assets, even if such bid is the highest or best bid for such Assets, is subject to higher or better bids (i) on larger subsets of Assets that include the same Assets or (ii) multiple bids that, in the aggregate, constitute a higher or better bid.

c)    total purchase price (and its Allocation (as defined below)) and form of consideration; provided, however, that no such allocation shall be required for a Proposal that constitutes a "credit bid" under section 363(k) of the Bankruptcy Code (each, a "Credit Bid"), except to the extent that such Proposal covers any Assets that are subject to another party's valid and perfected senior lien, in which case the Proposal must identify the means of satisfying the obligations of such secured party;

d)    a description of any significant assumptions on which the Proposal is based;

e)    structure, terms and conditions of the proposed transaction;

f)    evidence of financial wherewithal to close the proposed Sale; and

g)    other economic matters to the extent material to the proposed transaction.

3.    Due Diligence:  A Proposal must include a description of the due diligence the Prospective Bidder needs to conduct, including a list of any due diligence items it needs to review or confirm in order for it to enter into a definitive agreement.

4.    Material Conditions:  A Proposal must list any other material conditions to which the consummation of the proposed Sale would be subject.

5.    Sources of Financing:  A Proposal must include an indication of expected sources of funds (including the amounts of debt and equity financing necessary to fund the Sale together with the indications from any third party sources of their commitment to provide such funds) and the steps required (and anticipated timing) to obtain definitive funding commitments.  If the Prospective Bidder will be a newly formed entity, the Proposal must identify the entity or entities that will provide backstops in the form of a guarantee, equity commitment letter, or any other credit support, and describe the nature of such support.

6.    Required Approvals & Timing:  A Proposal must include a description of the level of review, authorization and approval within the Prospective Bidder's organization that the potential Sale has received to date and an indication of any anticipated need (and associated timing) for further corporate, shareholder, or regulatory authorization, approvals and waivers and any other material conditions or time constraints related to closing.

## IV.    STALKING HORSE AGREEMENTS

The Debtors may, as they deem necessary and appropriate in the prudent exercise of their business judgment, execute one or more "stalking horse" agreements (together with the J&J

Stalking Horse Agreement, the "Stalking Horse Agreements") for any subset of Assets and file a motion for approval, on an expedited basis, of such Stalking Horse Agreement(s), including any bid protections that may be provided therein.

## V.     BID DEADLINE

Any Prospective Bidder that intends to participate in the Auction must submit its final, binding bid (a "Final Bid") on or before **February 11, 2019 at 5:00 p.m. (prevailing Eastern Time)** (the "Final Bid Deadline") in writing to the Bid Notice Parties (as defined in Section X.A); provided that the Debtors shall have the discretion to the extend in writing the Final Bid Deadline for any Prospective Bidder .  Any bid received after the Final Bid Deadline will not constitute a Qualified Bid.

Contemporaneously with the submission of its Final Bid, each Prospective Bidder (other than the J&J Stalking Horse Bidder) must provide a Good Faith Deposit (as defined in Section VI.A.7) by wire transfer or certified check pursuant to delivery instructions to be provided by the Debtors prior to the Final Bid Deadline.

The Debtors shall promptly provide copies of all Final Bids received to the Consultation Parties (as defined below).

## VI.     BID REQUIREMENTS

### A. Qualified Bid Requirements

In order for a Final Bid to qualify as a "Qualified Bid" (and any bidder that submits a Qualified Bid, a "Qualified Bidder"), the Final Bid shall satisfy the following requirements:

1.     Purchased Assets.  The Final Bid shall identify the following:

a)     the Assets to be purchased, including any Contracts (including Unexpired Leases) that would be assumed in connection with the relevant Sale(s) (the "Proposed Assumed Contracts");

b)     the liabilities, if any, to be assumed;

c)     the consideration offered (the "Purchase Price"); provided that, if the Final Bid is for any Assets subject to one or more Stalking Horse Agreement(s), (a) the bid shall allocate the Purchase Price among the Assets subject to each such Stalking Horse Agreement (the "Allocation") and (b) the Purchase Price shall exceed the applicable Stalking Horse Overbid(s) (as defined below);

d)     the proposed form of adequate assurance of future performance with respect to the Proposed Assumed Contracts;

e)    whether the Prospective Bidder intends to operate all or a portion of the Debtors' business as a going concern or to liquidate the applicable Assets; and

f)    whether the Prospective Bidder intends to offer future employment to any of the Debtors' employees.

2.    <u>Identification of Bidder</u>:  The Final Bid shall fully disclose the identity of each person or entity bidding for the applicable Assets or sponsoring, financing (including through the issuance of debt in connection with such bid), participating in such bid(including through license or similar arrangement), and the complete terms of any such participation, and shall also disclose any past or present connections or agreements with the Debtors, any other known Prospective Bidder or Qualified Bidder, any officer or director of the foregoing, and any of the Debtors' prepetition secured lender.

3.    <u>Asset Purchase Agreement</u>:  The Final Bid shall include (a) an executed Asset Purchase Agreement based (i) with respect to any Assets subject to a Stalking Horse Agreement, such Stalking Horse Agreement (including all exhibits and schedules thereto), and (ii) with respect to any other Asset, on the form asset purchase agreement provided by the Debtors (including all exhibits and schedules thereto), (b) a proposed sale order based on (i) with respect to any Assets subject to a Stalking Horse Agreement, on the sale order proposed by the relevant Stalking Horse Bidder and (ii) with respect to any other Assets, on the Sale Order, and (c) copies of the foregoing, marked to show any proposed amendments and modifications to each.

4.    <u>Credit Bidding</u>:  A Credit Bid shall be applied only to the Assets in which the party submitting the Credit Bid holds a validly perfected security interest.

5.    <u>Financial Information</u>.  The Final Bid shall include a statement:

a)    that the Prospective Bidder is financially capable of consummating the Sale contemplated by the applicable Asset Purchase Agreement, together with the Prospective Bidder's audited financial statements for the prior two years and pro forma capital structure; and

b)    setting forth in reasonable detail the proposed structure and material terms of such financing.

6.    <u>Good Faith Deposit</u>:  Each Qualified Bid (including each Qualified Bid that includes a Credit Bid   other than the J&J Credit Bid) shall be accompanied by a good faith deposit (a "<u>Good Faith Deposit</u>") in the form of cash (or other form acceptable to the Debtors in their sole and absolute discretion) in an amount equal to 10% of the Purchase Price (inclusive of

any Credit Bid).  All Good Faith Deposits shall be held in escrow in a non-interest-bearing account identified by the Debtors until no later than five business days after the conclusion of the Auction and thereafter returned to the respective Qualified Bidders in accordance with the Bidding Procedures or, in the case of Stalking Horse Bidder(s), if any, in accordance with the applicable Stalking Horse Agreement(s); provided, however, that if a bidder is selected as the Successful Bidder or as a Backup Bidder, such bidder's Good Faith Deposit shall be (i) in the case of the Backup Bidder, returned  the earlier of five business days after the closing of the applicable Sale(s) or 60 days after the date of the Sale Hearing; and (ii) in the case of the Successful Bidder, credited toward the Purchase Price.  The Debtors reserve the right to increase the Good Faith Deposit in their sole and reasonable discretion.

7.    <u>Adequate Assurance</u>:  The Final Bid shall include evidence of the Prospective Bidder's ability to perform future obligations arising under the Proposed Assumed Contracts, in a form that will permit immediate dissemination of such evidence to the applicable Counterparties.

8.    <u>Authorization</u>:  The Final Bid shall include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the Final Bid, participation in the Auction and closing of the proposed Sale; <u>provided</u> that, if the Prospective Bidder is an entity specially formed for the purpose of purchasing the relevant Assets, the Final Bid must provide written evidence acceptable to the Debtors of the approval by the equity holder(s) of such Prospective Bidder.

9.    <u>Other Requirements</u>:  A Qualified Bid shall:

a)      state that the bid is not subject to or conditioned on any further due diligence or financing contingencies of any kind; and be irrevocable until the selection of the Successful Bid; <u>provided</u> that if the Prospective Bidder is the Successful Bidder or Backup Bidder, its bid must remain irrevocable until the earlier of (i) the consummation of a Sale(s) with the Successful Bidder(s) and (ii) 60 days after the date of the Sale Hearing;

b)      if the bid is for Assets subject to a Stalking Horse Agreement, state that the bid is not subject to conditions more burdensome than those in such Stalking Horse Agreement;

c)      state that the Prospective Bidder is committed to closing the Sale contemplated by the bid as soon as practicable;

d)    unless otherwise approved by the Court with respect to a particular Stalking Horse Bid, expressly acknowledge that the Prospective Bidder shall not be entitled to any bid protections;

e)    expressly waive any right to assert an administrative expense claim for substantial contribution under section 503(b) of the Bankruptcy Code in connection with bidding for the applicable Assets and/or participating in the Auction;

f)    not contain any condition to closing of the proposed Sale on the receipt of any third party approvals (excluding Court approval);

g)    state that the Prospective Bidder agrees to serve as a backup bidder (a "Backup Bidder") if such bidder's Qualified Bid is selected as the next highest or best bid after the Successful Bid with respect to the applicable Assets;

h)    include contact information for the specific person(s) the Debtors should contact in the event they have any questions about such Final Bid;

i)    be received by the Bid Notice Parties by the Final Bid Deadline;

j)    certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture or other entity in which more than one bidder (or any of its affiliates) has a direct or indirect interest, unless consented to in writing by the Debtors; and

k)    certify compliance with the Debtors' consumer data privacy policy that restricts the transfer of personally identifiable information of the Debtors' customers.

**B. Qualified Bidders**

A Final Bid that is determined by the Debtors, in consultation with the Consultation Parties, to meet the requirements set forth in Section VI.A will be considered a "Qualified Bid" and any bidder that submits a Qualified Bid will be considered a "Qualified Bidder." The J&J Stalking Horse Bidder is a Qualified Bidder and the J&J Stalking Horse Agreement is a Qualified Bid. Upon Court's approval, (i) any Stalking Horse Bidder will be a Qualified Bidder, (ii) any Stalking Horse Bids will be Qualified Bids.

The Debtors, in consultation with the Consultation Parties, will evaluate a Qualified Bid using any and all factors that the Debtors deem reasonably pertinent, including, without limitation, (i) the amount of the Purchase Price, including the form of consideration; (ii) the risks and timing associated with consummating a Sale with the Qualified Bidder, (iii) any Assets included in or excluded from the Qualified Bid, including any Proposed Assumed Contracts, and (iv) the ability to obtain any and all necessary regulatory approvals for the proposed Sale(s).

The Debtors shall make a determination regarding which Final Bid(s) qualify as Qualified Bid(s) and notify all Prospective Bidders whether they have been selected as Qualified Bidders prior to the Auction.  Within 24 hours of the receipt of adequate assurance information from any Qualified Bidder, but in no event later than 24 hours after the Final Bid Deadline, the Debtors shall provide adequate assurance information received from each Qualified Bidder to any Counterparty whose Contract would be assumed pursuant to such Qualified Bidder's proposed purchase agreement.

## VII.   THE AUCTION

If the Debtors receive more than one Qualified Bid for any of the Assets, the Debtors shall conduct the Auction.  The Auction, if required, shall be conducted at the offices of Milbank, Tweed, Hadley & McCloy LLP, 55 Hudson Yards New York, New York 10001 on **February 25, 2019, at a time to be determined**, or at such other time and location as designated by the Debtors.

If the Debtors receive no more than one Qualified Bid (including any Stalking Horse Bid(s)) with respect to any of the Assets, the Debtors may determine, in their reasonable discretion, not to hold the Auction for such Assets and instead declare such Qualified Bid(s) as the Successful Bid(s) on such Assets and request that the Court approve the applicable Asset Purchase Agreement at the Sale Hearing.

All bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sale(s) and the construction and enforcement of any Stalking Horse Agreement(s) and all other agreements entered into in connection with any Sale(s).

### A. Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations that may be reasonably imposed by the Debtors in consultation with the Consultation Parties.  Qualified Bidders participating in the Auction must appear at the Auction in person or through a duly authorized representative.  Subject to the Auction procedures set forth in Section VII.B, the Auction will be conducted openly and all Qualified Bidders and the Consultation Parties are permitted to attend; provided that the Debtors may, in their sole and exclusive discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the submission of any bid or the Auction and (ii) each Qualified Bid it submits at the Auction is a binding, good faith and bona fide offer to purchase the Assets identified in such bid.

### B. Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable discretion, in consultation with the Consultation Parties:

1. <u>Baseline Bids</u>.  Prior to the commencement of the Auction, the Debtors shall provide copies of the Qualified Bid(s) that the Debtors determine in their reasonable business judgment, after consultation with the Consultation Parties, to be the highest or otherwise best Qualified Bid(s) for particular Assets (the "<u>Baseline Bid(s)</u>") to all other Qualified Bidders who have submitted Qualified Bid(s) for such Assets.  Bidding at the Auction shall commence at the amount of the Baseline Bid(s).

2. <u>Minimum Overbid</u>.  At each round of bidding, for each subset of Assets, Qualified Bidders shall submit bids that are higher than the Leading Bid (as defined below) for such Assets from the prior round (or, for the first round, the relevant Baseline Bid), by at least the increment the Debtors determine and announce prior to such round of bidding) (the "<u>Minimum Overbid</u>"); <u>provided</u>, <u>however</u>, that, to the extent that the Baseline Bid is a Stalking Horse Bid, the bidding for the relevant Assets shall start at an amount equal to the sum of:  (i) the Baseline Bid, (ii) the aggregate amount of the applicable bid protections, if any, and (iii) the Minimum Overbid (the "<u>Stalking Horse Overbid</u>").  The Debtors shall, in their reasonable discretion, announce increases or reductions to Minimum Overbids or Stalking Horse Overbids at any time during the Auction.

   Additionally, upon a Qualified Bidder's declaration of its bid, it shall commit on the record that, if such bid is to be the Successful Bid or the Backup Bid, it shall, following the Auction, pay the additional Good Faith Deposit, calculated on the basis of the increased Purchase Price (the "<u>Incremental Deposit Amount</u>").

3. <u>Highest or Best Offer</u>.  After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce, in consultation with the Consultation Parties, the bid that they believe to be the highest or otherwise best offer for the applicable Assets (each, the "<u>Leading Bid</u>") and describe the material terms thereof.  Each round of bidding shall conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the Leading Bid.

   The Debtors shall have the right to determine, in their reasonable discretion, and in consultation with the Consultation Parties, which bid (or combination of bids) is the highest or otherwise best bid with respect to the applicable Assets and reject, at any time, without liability, any bid that the Debtors deem to be inadequate or insufficient, or not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures,

any order of the Court, or the best interests of the Debtors and their estates.

Each Leading Bid shall remain open and binding on the applicable Qualified Bidder until and unless (i) the Debtors accept as a Leading Bid for the same Assets a bid by another Qualified Bidder during the Auction and (ii) such Leading Bid is not selected as the Backup Bid.

4.    <u>No Round-Skipping</u>.  To remain eligible to participate in the Auction for a particular subset of Assets, (i) each Qualified Bidder shall submit a bid in each round of bidding for such Assets that is higher or otherwise better than the immediately preceding bid submitted in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid at each round of bidding or to submit a bid in each round of bidding that is higher or otherwise better than the immediately preceding bid for the applicable Assets submitted in such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for the applicable Assets.

## C. Auction Results

1.    <u>Successful Bids</u>.  Immediately prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, shall (a) determine, consistent with the Bidding Procedures, which bid(s) constitutes the highest or otherwise best bid for the applicable Asset (each, a "<u>Successful Bid</u>") and (b) notify all Qualified Bidders bidding for the applicable Assets at the Auction of the identity of the bidder that submitted the Successful Bid (each, the "<u>Successful Bidder</u>") for such Assets and the amount of the Purchase Price and other material terms of the Successful Bid.  As a condition to remaining the Successful Bidder, each Successful Bidder shall wire to the Debtors, in immediately available funds, the Incremental Deposit Amount, calculated based on the Purchase Price of its Successful Bid, no later than one business day following the date on which the applicable Successful Bid is announced.

2.    <u>Backup Bids</u>.  Prior to the conclusion of the Auction, the Debtors shall (i) determine, in consultation with the Consultation Parties, which Qualified Bid is the next highest or otherwise best Qualified Bid after the Successful Bid for the applicable Assets (each, a "<u>Backup Bid</u>") and (ii) notify all Qualified Bidders bidding for the applicable Assets of the identity of the relevant Backup Bidder and the amount of the Purchase Price and other material terms of its Backup Bid.  Each Backup Bidder shall wire to the Debtors, in immediately available funds, the Incremental Deposit Amount, based on the Purchase Price of its Backup Bid, no later than one business day following the date on which the applicable Backup Bid is announced.

3.      The Backup Bid(s) shall remain binding on the Backup Bidder(s) until the earlier of (i) the closing of the Sale for the applicable Assets and (ii) 60 days after the date of the Sale Hearing.  If the Successful Bidder(s) for the applicable Assets fail to consummate the Sale(s), the Backup Bidder(s) shall be deemed the new Successful Bidder(s) for the applicable Assets, and the Debtors shall be authorized, but not required, to consummate the Sale(s) of the applicable Assets to the Backup Bidder(s).

On or before one business day after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the website maintained by the Debtors' claims and noticing agent, Prime Clerk, LLC, http://cases.primeclerk.com/gym (the "Prime Clerk Website"), the results of the Auction, which shall include (i) a copy of all Successful Bid(s) and Backup Bid(s), if any; and (ii) the identities of the Successful Bidder(s) and Backup Bidder(s).

As soon as reasonably practicable after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties, by email, and cause to be published on the Prime Clerk Website, (i) the Notice of the Proposed Assumed Contracts; and (ii) each Successful Bidder's and Backup Bidder's proposed form of adequate assurance of future performance with respect to the relevant Proposed Assumed Contracts (the "Proposed Assumed Contracts Notice").

### D. Return of Good Faith Deposits

The Good Faith Deposits shall be held in escrow by the Debtors in a non-interest-bearing escrow or trust account and shall not become property of the Debtors' estates.  The Good Faith Deposits shall be retained by the Debtors, notwithstanding Court approval of any Sale(s) for the applicable Assets, until no later than five business days after the conclusion of the Auction, except for the Good Faith Deposit(s) of Successful Bidder(s) and Backup Bidder(s); provided that, if a Stalking Horse Bidder is not the Successful Bidder or Backup Bidder, its Good Faith Deposit shall be returned to such Stalking Horse Bidder in accordance with the applicable Stalking Horse Agreement(s).  The Debtors shall retain the Good Faith Deposits of Backup Bidders until the earlier of (i) five business days after the closing of the Sale(s) of the applicable Assets and (ii) 60 days after the date of the Sale Hearing.

At the closing of a Sale, the Successful Bidder shall be entitled to a credit for the amount of its Good Faith Deposit.  If a Successful Bidder fails to consummate a Sale because of a breach that entitles the Debtors to terminate the applicable Asset Purchase Agreement, then, the Debtors shall be entitled to retain such Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach or failure to perform.

## VIII.   SALE HEARING

Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) shall be subject to approval by the Court.  The hearing to approve the Sale(s) shall take place on **March 4, 2019 at 2:00 p.m. (prevailing Eastern Time)** (the "Sale Hearing") before

the Honorable Keith L. Phillips, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Eastern District of Virginia, located at 701 East Broad Street, Suite 4000, Richmond, Virginia 23219.

At the Sale Hearing, the Debtors shall seek entry of order(s) (each, a "Sale Order") approving, among other things, the Sale(s) of some or all of the Assets to the Successful Bidder(s).  The Sale Hearing may be adjourned or rescheduled by the Debtors.

The Debtors may reject at any time, before entry of the applicable Sale Order, any bid that, in the Debtors' judgment, following consultation with the Consultation Parties, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors and their estates.

The Debtors' presentation to the Court for approval of any Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.  Upon the Court's approval of a Successful Bid, the Debtors shall be bound by the terms of that Successful Bid.

Objections to a Sale, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), or to entry of a Sale Order shall (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Court; and (iii) be filed with the Court and served on the Objection Recipients by **February 15, 2019 at 5:00 p.m. (prevailing Eastern Time)**.

All Sale Objections not resolved by the parties prior thereto shall be heard at the Sale Hearing.  The failure of any party to timely file with the Court and serve on the Objection Recipients a Sale Objection forever shall bar such party from asserting, at the applicable Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation of the applicable Sale(s), including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

Notwithstanding the foregoing, the deadline to file an objection to a Successful Bidder's proposed form of adequate assurance of future performance with respect to a Proposed Assumed Contract in connection with a proposed Sale or objections to the conduct of the Auction and the identification of the Successful Bidder(s) shall be **February 28, 2019 at 5:00 p.m. (prevailing Eastern time)**.  If a Successful Bidder fails to consummate the approved Sale, a hearing to authorize the assumption and assignment of Proposed Assumed Contracts to the applicable Backup Bidder(s) shall be held before the Court on no less than five business days' notice, with objections due at least one business day prior to such hearing, unless otherwise ordered by the Court.  For the avoidance of doubt, the scope of such hearing shall be limited to issues relating to the adequate assurance of future performance by the Backup Bidder(s).

## IX.    MODIFICATION OF PROCEDURES

The Debtors may, in any manner consistent with the Debtors' fiduciary duties and applicable law, modify the procedures and deadlines set forth herein (including, without limitation, extending the Final Bid Deadline, modifying the Qualified Bid requirements, modifying the procedures for conducting the Auction, rescheduling the Auction or adjourning the Sale Hearing) or adopt new rules, procedures and deadlines in order to, in their sole and reasonable discretion, better maximize value for their estates; provided that the Debtors may not amend these Bidding Procedures or the bidding process to reduce or otherwise modify their obligations to consult with any Consultation Party without the consent of such Consultation Party or further order of the Court.    All such modifications and additional rules shall be communicated to each of the Consultation Parties, the Sale Notice Parties, Prospective Bidders and Qualified Bidders; provided that, to the extent such modifications occur at the Auction, disclosure of such modifications may be limited to those in attendance at the Auction.

## X.    NOTICING

### A. Bid Notice Parties

Qualified Bids shall be submitted in writing to (i) the Debtors, The Gymboree Group, 71 Stevenson Street, Suite 2200, San Francisco, California, 94105 (Attn: Kimberly H. MacMillan, Esq.); (ii) co-counsel for the Debtors, (a) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York, 10005 (Attn: Dennis F. Dunne, Esq. (ddunne@milbank.com), Evan R. Fleck, Esq. (efleck@milbank.com), and Michael W. Price, Esq. (mprice@milbank.com)) and (b) Kutak Rock LLP, 901 East Byrd Street, Suite 1000, Richmond, Virginia 23219 (Attn: Michael A. Condyles, Esq. (michael.condyles@kutakrock.com), Peter J. Barrett, Esq. (peter.barrett@kutakrock.com), Jeremy S. Williams, Esq. (jeremy.williams@kutakrock.com), and Brian H. Richardson, Esq. (brian.richardson@kutakrock.com)); and (iii) the Debtors' investment banker, Miller Buckfire, 787 7th Avenue, 5th Floor, New York, New York 10019 (Attn: James Doak (james.doak@millerbuckfire.com)) (the foregoing entities in clauses (i) through (iii), the "Bid Notice Parties").

### B. Sale Notice Parties

1.    Sale Notice Parties.  The "Sale Notice Parties" shall include the following: (a) the Consultation Parties, (b) counsel to the Stalking Horse Bidder(s), (c) all Counterparties, (d) all persons and entities known by the Debtors to have expressed an interest in the Assets during the past 12 months, (e) all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance with respect to the Assets (for whom identifying information and addresses are available to the Debtors), (f) any governmental authority known to have a claim against the Debtors, (g) the United States Attorney General, (h) the Antitrust Division of the United States Department of Justice, (i) the United States Attorney for the Eastern District of Virginia, (j) the Office of the Attorney General in each state in which the Debtors operate, (k) the Federal Trade Commission, (l) the

-14-

Office of the United States Trustee for the Eastern District of Virginia, (m) counsel for any official committee appointed in these cases, (n) the Internal Revenue Service, (o) the United States Securities and Exchange Commission, (p) all of the Debtors' known creditors (for whom identifying information and addresses are known to the Debtors), (q) all parties who have filed a notice of appearance and request for service of papers in these Cases pursuant to Bankruptcy Rule 2002 and (r) all other persons and entities as directed by the Court.

### C. Objection Recipients

Sale Objections shall be filed in accordance with these Bidding Procedures and served on (i) the Debtors, The Gymboree Group, 71 Stevenson Street, Suite 2200, San Francisco, California 94105 (Attn: Kimberly H. MacMillan, Esq.); (ii) counsel for the Debtors, (a) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York, 10005 (Attn: Dennis F. Dunne, Esq. (ddunne@milbank.com), Evan R. Fleck, Esq. (efleck@milbank.com), and Michael W. Price, Esq. (mprice@milbank.com)) and (b) Kutak Rock LLP, 901 East Byrd Street, Suite 1000, Richmond, Virginia 23219 (Attn: Michael A. Condyles, Esq. (michael.condyles@kutakrock.com), Peter J. Barrett, Esq. (peter.barrett@kutakrock.com), Jeremy S. Williams, Esq. (jeremy.williams@kutakrock.com), and Brian H. Richardson, Esq. (brian.richardson@kutakrock.com); (iii) counsel for the Committee, (iv) counsel for the DIP Lender and the Pre-Petition First Lien Lender, (v) counsel for the Consultation Parties, (vi) counsel to any applicable Successful Bidder(s), (vii) counsel to any applicable Backup Bidder(s), (viii) counsel to any applicable Stalking Horse Bidder(s) and (ix) the Office of the United States Trustee for the Eastern District of Virginia (collectively, the "Objection Recipients").

### D. Assumption and Assignment

The Debtors shall provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

## XI.    CONSULTATION BY THE DEBTORS

Where indicated, the Debtors shall consult with the advisors to any official committee, counsel to their prepetition ABL lenders, and, to the extent SSIG is no longer an active bidder for any of the Assets, SSIG's advisors (collectively, the "Consultation Parties").

Dated: January 17, 2019            */s/ Michael A. Condyles*
Richmond, Virginia                  Michael A. Condyles, Esq. (VA 27807)
                                    Peter J. Barrett, Esq. (VA 46179)
                                    Jeremy S. Williams, Esq. (VA 77469)
                                    Brian H. Richardson, Esq. (VA 92477)
                                    **KUTAK ROCK LLP**
                                    901 East Byrd Street, Suite 1000
                                    Richmond, Virginia 23219-4071
                                    Telephone:    (804) 644-1700
                                    Facsimile:     (804) 783-6192
                                    Email:    Michael.Condyles@KutakRock.com
                                                Peter.Barrett@KutakRock.com
                                                Jeremy.Williams@KutakRock.com
                                                Brian.Richardson@KutakRock.com
                                    -and-

                                    Dennis F. Dunne, Esq. (*pro hac vice* pending)
                                    Evan R. Fleck, Esq. (*pro hac vice* pending)
                                    Michael W. Price, Esq. (*pro hac vice* pending)
                                    **MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP**
                                    28 Liberty Street
                                    New York, New York 10005
                                    Telephone:    (212) 530-5000
                                    Facsimile:     (212) 530-5219
                                    Email:    ddunne@milbank.com
                                                efleck@milbank.com
                                                mprice@milbank.com

                                    *Proposed Co-Counsel for Debtors in Possession*

<u>**Exhibit 2**</u>

**Assumption and Assignment Notice**

Dennis F. Dunne, Esq. (*pro hac vice* pending)
Evan R. Fleck, Esq. (*pro hac vice* pending)
Michael W. Price, Esq. (*pro hac vice* pending)
**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**
28 Liberty Street
New York, New York 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219

Michael A. Condyles, Esq. (VA 27807)
Peter J. Barrett, Esq. (VA 46179)
Jeremy S. Williams, Esq. (VA 77469)
Brian H. Richardson, Esq. (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:    (804) 644-1700
Facsimile:    (804) 783-6192

*Proposed Co-Counsel for Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GYMBOREE GROUP, INC., *et al.*,[1] | ) | Case No. 19-30258 (KLP) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) |  |

**NOTICE OF POSSIBLE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY
<u>CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE</u>**

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      On _____, 2019, the United States Bankruptcy Court for the Eastern District of Virginia (the "<u>Court</u>") entered an Order (the "<u>Bidding Procedures Order</u>") authorizing certain procedures to be used in connection with the sale(s) (the "<u>Sale(s)</u>") of the assets (the "<u>Assets</u>") of the above-captioned debtors (the "<u>Debtors</u>").

2.      **On March 4, 2019 at 2:00 p.m. (prevailing Eastern Time),** a hearing (the "<u>Sale Hearing</u>") will take place before the Honorable Keith L. Phillips, United States Bankruptcy Judge, 701 East Broad Street, Suite 4000, Richmond, Virginia 23219, where the Debtors will present for  the Court's approval one or more bid(s) for the Assets (each, a "<u>Successful Bid</u>").

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Gymboree Group, Inc. (6587); Gymboree Intermediate Corporation (1473); Gymboree Holding Corporation (0315); Gymboree Wholesale, Inc. (6588); Gym-Mark, Inc. (6459); Gymboree Operations, Inc. (6463); Gymboree Distribution, Inc. (8669); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, LLC (6461); Gym-Card, LLC (5720); and Gymboree Island, LLC (1215). The Debtors' service address is 71 Stevenson Street, Suite 2200, San Francisco, California 94105.

The Debtors will have accepted the terms of any Successful Bid only when such bid has been approved by the Court.

3.     In connection with the Sale(s), potential purchasers of the Assets may wish to assume certain of the Debtors' executory contracts or unexpired leases (collectively, the "Contracts"). Pursuant to the Bidding Procedures Order, the Debtors hereby notify all counterparties to such Contracts that their Executory Contract or Unexpired Lease may be assumed by the Debtors and assigned to those potential purchasers that submit winning bid(s) for the Assets ("Successful Bidders"). The list of such Contracts is attached hereto as Schedule 1. Schedule 1 also indicates for each Executory Contract and Unexpired Lease the amount, if any, that the Debtors believe is required to be paid to the applicable Counterparty to cure any monetary defaults under such Executory Contract or Unexpired Lease pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code ("Cure Costs"). **The Debtors' inclusion of any Contracts on Schedule 1 or any other notice served in connection with the Sale(s) shall not be a guarantee that such Executory Contract or Unexpired Lease ultimately will be assumed or assigned.**

4.     Any Counterparty that wishes to object to the proposed Cure Costs for its Contract (each, a "Cure Objection") must file with the Court and serve its Cure Objection on (a) the Debtors, The Gymboree Group, 71 Stevenson Street, Suite 2200, San Francisco, California, 94105 (Attn: Kimberly H. MacMillan, Esq.); (b) counsel for the Debtors, (i) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York, 10005 (Attn: Dennis F. Dunne, Esq. (ddunne@milbank.com), Evan R. Fleck, Esq. (efleck@milbank.com), and Michael W. Price, Esq. (mprice@milbank.com)) and (ii) Kutak Rock LLP, 901 East Byrd Street, Suite 1000, Richmond, Virginia 23219 (Attn: Michael A. Condyles, Esq. (michael.condyles@kutakrock.com), Peter J. Barrett, Esq. (peter.barrett@kutakrock.com), Jeremy S. Williams, Esq. (jeremy.williams@kutakrock.com), and Brian H. Richardson, Esq. (brian.richardson@kutakrock.com)); (c) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases; (d) counsel (if applicable) of any Stalking Horse Bidder(s); (e) counsel (if applicable) of any applicable Successful Bidder(s); (f) counsel (if applicable) of any Backup Bidder(s) (as defined in the Bidding Procedures); and (g) the Office of the United States Trustee for the Eastern District of Virginia, (collectively, the "Objection Recipients") **no later than 5:00 p.m. (prevailing Eastern Time) on the date that is 14 days from the service of this Assumption and Assignment Notice**, _____, 2019.

5.     Any Cure Objection must state, with specificity, the legal and factual bases therefor, including any appropriate documentation in support thereof.

6.     The Bidding Procedures Order requires that the Debtors and a Counterparty that has filed a Cure Objection first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Objections at or subsequent to the Sale Hearing; provided that the determination of whether a Cure Objection may be heard at the Sale Hearing is in the Debtors' and the Court's discretion. The relevant Asset Purchase Agreement will provide for the establishment of a cash reserve equal to the cure amount the objecting Counterparty reasonably believes is required to cure the asserted monetary default under the applicable

Executory Contract or Unexpired Lease (or as otherwise ordered by the Court).  Upon the Court's resolution of any Cure Objection, whether or not such resolution occurs prior to or after the closing of the applicable Sale, the Debtors or the applicable Successful Bidder, as applicable, will have the right to exclude the Contract or Lease subject to such Cure Objection from the Assets to be sold as part of the applicable Sale.

7.      **If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty will be deemed to have consented to the Cure Costs set forth in Schedule 1 and forever will be barred from asserting any objection to such Cure Costs or any other claims related to the applicable Contract or Lease against the Debtors or any Successful Bidder(s) or their respective property, and such Cure Costs will constitute the only amount necessary to cure outstanding defaults under the applicable Executory Contract or Unexpired Lease in accordance with section 365(b) of the Bankruptcy Code, notwithstanding anything to the contrary in such Contract, or any other document.**

8.      In the event that the Debtors identify any Counterparties that were not served with this Assumption and Assignment Notice, the Debtors may subsequently serve such Counterparty with an Assumption and Assignment Notice, and the following procedures will nevertheless apply to such Counterparty; provided, however, that the deadline for such Counterparty to file a Cure Objection will be **5:00 p.m. (prevailing Eastern Time) on the date that is seven days following service of such modified Assumption and Assignment Notice.**

9.      As soon as reasonably practicable after the conclusion of the Auction (currently scheduled for February 25, 2019), but no later than _____**, 2019**, the Debtors will file with the Court, serve on each applicable Counterparty, and cause to be published on the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Prime Clerk LLC (http://cases.primeclerk.com/gym) (the "Prime Clerk Website") a list of the Contracts that the Successful Bidders have actually selected for assumption (the "Proposed Assumed Contracts"). Any Counterparty to a Proposed Assumed Contract that wishes to object to the proposed assumption and assignment of its Proposed Assumed Contract, based on the applicable Successful Bidder's proposed form of adequate assurance of future performance under such Proposed Assumed Contract (each, an "Adequate Assurance Objection"), must file such objection with the Court and serve it on the Objection Recipients by no later than February 28, 2019, at 5:00 p.m. **(prevailing Eastern Time).**

10.     Each Adequate Assurance Objection must state, with specificity, the legal and factual bases therefor, including any appropriate documentation in support thereof.

11.     The Bidding Procedures Order requires that the Debtors and a Counterparty that has filed an Adequate Assurance Objection first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, such objection and all issues of adequate assurance of future performance by the applicable Successful Bidder shall be determined by the Court at the Sale Hearing.

12.     **If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the Proposed Assumed Contract to the applicable Successful Bidder (unless the Counterparty has filed a timely Cure Objection with respect to the Proposed Assumed Contract) and adequate assurance of future performance in connection therewith and forever shall be barred from asserting any objection with regard to such assumption and assignment or adequate assurance of future performance.  The applicable Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to the applicable Proposed Assumed Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code, notwithstanding anything to the contrary in the Proposed Assumed Contract, or any other document.**

13.     The inclusion of an Executory Contract or Unexpired Lease on <u>Schedule 1</u> or on any subsequently filed list(s) of Proposed Assumed Contracts (collectively, the "<u>Contract Notices</u>") shall not constitute or be deemed a determination or admission by the Debtors, the applicable Successful Bidder(s), or any other party in interest that such Contracts is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or that the stated Cure Costs are due (all rights with respect thereto being expressly reserved).

14.     The Debtors fully reserve the right to amend, modify or supplement the Contract Notices; <u>provided</u> that the deadline for any Counterparty that is added to an amended Contract Notice or whose Cure Costs are reduced to file (a) a Cure Objection shall be **5:00 p.m. (prevailing Eastern Time) on the date that is seven days** following service of the applicable amended Contract Notice; and (b) an Adequate Assurance Objection by the earlier **of one business day following the service of the applicable amended Contract Notice or the date of the Sale Hearing**; <u>provided</u>, <u>however</u>, that if such date is after the date of the Sale Hearing, the Counterparty need not file a written Adequate Assurance Objection and may instead make its Adequate Assurance Objection on the record at the Sale Hearing.

15.     The Contract Notices shall be without prejudice to the Debtors' and/or each Successful Bidder's rights to subsequently exclude any Proposed Assumed Contract from the assumption prior to the closing of the applicable Sale(s).

16.     The Debtors' assumption and assignment of an Executory Contract or Unexpired Lease is subject to approval by the Court and consummation of the relevant Sale.  Absent entry of a Sale Order(s) approving the assumption and/or assignment of an Executory Contract or Unexpired Lease and the consummation of the relevant Sale, the Executory Contract or Unexpired Lease shall be deemed neither assumed nor assigned.

17.     Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge at the Prime Clerk Website.  Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, located at 701 East Broad Street, Suite 4000, Richmond, Virginia 23219, and may be viewed for a fee on the internet at the Court's website (https://www.vaeb.uscourts.gov) by following the directions for accessing the ECF system on such website.

Dated:  January 17, 2019
Richmond, Virginia

*/s/ Michael A. Condyles*

Michael A. Condyles, Esq. (VA 27807)
Peter J. Barrett, Esq. (VA 46179)
Jeremy S. Williams, Esq. (VA 77469)
Brian H. Richardson, Esq. (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:      (804) 783-6192
Email:    Michael.Condyles@KutakRock.com
              Peter.Barrett@KutakRock.com
              Jeremy.Williams@KutakRock.com
              Brian.Richardson@KutakRock.com
-and-

Dennis F. Dunne, Esq. (*pro hac vice* pending)
Evan R. Fleck, Esq. (*pro hac vice* pending)
Michael W. Price, Esq. (*pro hac vice* pending)
**MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP**
28 Liberty Street
New York, New York 10005
Telephone:     (212) 530-5000
Facsimile:      (212) 530-5219
Email:    ddunne@milbank.com
              efleck@milbank.com
              mprice@milbank.com

*Proposed Co-Counsel for Debtors in Possession*

**Schedule 1**

| Counterparty | Counterparty Address | Title/Description of Contract/Lease | Cure Costs |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

**<u>Exhibit 3</u>**

**Sale Notice**

Dennis F. Dunne, Esq. (*pro hac vice* pending)          Michael A. Condyles, Esq. (VA 27807)
Evan R. Fleck, Esq. (*pro hac vice* pending)            Peter J. Barrett, Esq. (VA 46179)
Michael W. Price, Esq. (*pro hac vice* pending)         Jeremy S. Williams, Esq. (VA 77469)
**MILBANK, TWEED, HADLEY & McCLOY LLP**                 Brian H. Richardson, Esq. (VA 92477)
28 Liberty Street                                       **KUTAK ROCK LLP**
New York, New York 10005                                901 East Byrd Street, Suite 1000
Telephone:    (212) 530-5000                            Richmond, Virginia 23219-4071
Facsimile:    (212) 530-5219                            Telephone:    (804) 644-1700
                                                        Facsimile:    (804) 783-6192

*Proposed Co-Counsel for Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GYMBOREE GROUP, INC., *et al.*,[2] | ) | Case No. 19-30258 (KLP) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

### NOTICE OF SALE, BID PROCEDURES, AUCTION, SALE OBJECTION,
### SALE HEARING AND OTHER DEADLINES RELATED THERETO

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

1.      On _____, 2019, the United States Bankruptcy Court for the Eastern District of Virginia (the "Court") entered an Order (the "Bidding Procedures Order") authorizing certain procedures (the "Bidding Procedures") to be used in connection with the sale(s) (the "Sale(s)") of the assets (the "Assets") of the above-captioned debtors (the "Debtors").

2.      Copies of the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge at the website dedicated to the Debtors' chapter 11 cases maintained by their claims and noticing agent, Prime Clerk LLC (http://cases.primeclerk.com/gym). Copies of these documents are also available for inspection during regular business hours at the Office of the Clerk of the Court, located at 701 East Broad Street, Suite 4000, Richmond, Virginia 23219,

---

[2]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Gymboree Group, Inc. (6587); Gymboree Intermediate Corporation (1473); Gymboree Holding Corporation (0315); Gymboree Wholesale, Inc. (6588); Gym-Mark, Inc. (6459); Gymboree Operations, Inc. (6463); Gymboree Distribution, Inc. (8669); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, LLC (6461); Gym-Card, LLC (5720); and Gymboree Island, LLC (1215).  The Debtors' service address is 71 Stevenson Street, Suite 2200, San Francisco, California 94105.

and may be viewed for a fee on the internet at the Court's website (https://www.vaeb.uscourts.gov) by following the directions for accessing the ECF system on such website.

3.      **On March 4, 2019 at 2:00 p.m. (prevailing Eastern Time),** a hearing (the "Sale Hearing") will take place before the Honorable Keith L. Phillips, United States Bankruptcy Judge, 701 East Broad Street, Suite 4000, Richmond, Virginia 23219, where the Debtors will present for  the Court's approval one or more bid(s) for the Assets (each, a "Successful Bid"). The Debtors will have accepted the terms of any Successful Bid only when such bid has been approved by the Court.

4.      Pursuant to the Bidding Procedures Order, written preliminary indications of interest (each, a "Proposal") are to be submitted no later than **January 25, 2019 at 5:00 p.m. (prevailing Eastern Time)** to the following parties: (i) the Debtors, The Gymboree Group, 71 Stevenson Street, Suite 2200, San Francisco, California, 94105 (Attn: Kimberly H. MacMillan); (ii) counsel for the Debtors, (a) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York, 10005 (Attn: Dennis F. Dunne, Esq. (ddunne@milbank.com), Evan R. Fleck, Esq. (efleck@milbank.com), and Michael W. Price, Esq. (mprice@milbank.com)) and (b) Kutak Rock LLP, 901 East Byrd Street, Suite 1000, Richmond, Virginia 23219 (Attn: Michael A. Condyles, Esq. (michael.condyles@kutakrock.com), Peter J. Barrett, Esq. (peter.barrett@kutakrock.com), Jeremy S. Williams, Esq. (jeremy.williams@kutakrock.com), and Brian H. Richardson, Esq. (brian.richardson@kutakrock.com); and (iii) the Debtors' investment banker, Miller Buckfire, 787 7th Avenue, 5th Floor, New York, New York 10019 (Attn: James Doak (james.doak@millerbuckfire.com)) (collectively, the "Bid Notice Parties").

5.      To be eligible to participate in the bidding process for any or all Assets, a Prospective Bidder shall deliver to the Bid Notice Parties: (i) an executed confidentiality agreement, in form and substance satisfactory to the Debtors; (ii) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction that the Prospective Bidder has a bona fide interest in purchasing the specified Assets; and (iii) preliminary proof of the Prospective Bidder's financial capacity to close the proposed Sale.

6.      Any party that intends to participate in the Auction (each, a "Prospective Bidder") shall submit its final, binding bid (a "Final Bid") in writing to the Bid Notice Parties on or before **February 11, 2019 at 11:59 p.m. (prevailing Eastern Time) (**the "Final Bid Deadline"); provided that the Debtors shall have the discretion to extend the Final Bid Deadline for any Prospective Bidder so long as such extended deadline does not exceed the applicable milestone for such deadline under the DIP Loan Agreement (as defined in the DIP Orders).  Any bid received after the Final Bid Deadline will not constitute a Qualified Bid.

7.      If the Debtors receive more than one Qualified Bid for any of the Assets, the Debtors shall conduct the Auction.  The Auction, if required, shall be conducted at the offices of Milbank, Tweed, Hadley & McCloy LLP, 55 Hudson Yards, New York, New York 10001 on **February 25, 2019 at:_____ [a.m./p.m.] (prevailing Eastern Time)**, or at such other time and location as designated by the Debtors; provided that the Auction shall not be rescheduled for a date that is beyond the outside date or milestone for the Auction set forth in the DIP Loan Documents (as defined in the DIP Orders).

8.      If the Debtors receive no more than one Qualified Bid (as defined in the Bidding Procedures) with respect to any of the Assets, the Debtors may determine, in their reasonable discretion, not to hold an auction for such Assets and instead declare such Qualified Bid(s) as the Successful Bid(s) for such Assets and request that the Court approve the applicable Asset Purchase Agreement at the Sale Hearing.

9.      Pursuant to the Bidding Procedures Order, the Debtors may, as they deem necessary and appropriate in the prudent exercise of their business judgment, accept Stalking Horse Bid(s) and execute Stalking Horse Agreement(s) for some or all of the Assets (except for the Assets to be purchased under the J&J Stalking Horse Agreement (the "SSIG Assets"), which is already subject to a stalking horse agreement).  If that occurs, the Debtors will file a motion (each, a "Stalking Horse Motion") seeking approval of such Stalking Horse Agreement, including any bid protections provided therein.  Subject to the Court's availability, but no earlier than ten days after filing a Stalking Horse Motion, and no later than the Sale Hearing, the Debtors will seek approval from the Court on an expedited basis of such Stalking Horse Agreement(s) and any bid protections contained therein.

10.     Objections to a Sale, including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each, a "Sale Objection"), and to entry of an order approving any Sale(s) (the "Sale Order") shall (i) be in writing and specify the nature of such objection; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and all orders of the Court; and (iii) be filed with the Court and served on:  (i) the Debtors, The Gymboree Group, 71 Stevenson Street, Suite 2200, San Francisco, California, 94105 (Attn: Kimberly H. MacMillan, Esq.); (ii) counsel for the Debtors, (a) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York, 10005 (Attn: Dennis F. Dunne, Esq. (ddunne@milbank.com), Evan R. Fleck, Esq. (efleck@milbank.com), and Michael W. Price, Esq. (mprice@milbank.com)) and (b) Kutak Rock LLP, 901 East Byrd Street, Suite 1000, Richmond, Virginia 23219 (Attn: Michael A. Condyles, Esq. (michael.condyles@kutakrock.com), Peter J. Barrett, Esq. (peter.barrett@kutakrock.com), Jeremy S. Williams, Esq. (jeremy.williams@kutakrock.com), and Brian H. Richardson, Esq. (brian.richardson@kutakrock.com)); (iii) counsel for the official committee of unsecured creditors appointed in the Debtors' cases, if any; (vii) counsel (if applicable) of any Stalking Horse Bidder(s); (viii) counsel (if applicable) of any Successful Bidder(s); (ix) counsel (if applicable) of any Backup Bidder(s); and (x) the Office of the United States Trustee for the Eastern District of Virginia, (collectively, the "Objection Recipients") by **February 15, 2019 at 5:00 p.m. (prevailing Eastern Time)**.

11.     All Sale Objections not resolved by the parties prior thereto shall be heard at the Sale Hearing.  **THE FAILURE OF ANY PARTY TO TIMELY FILE WITH THE COURT AND SERVE ON THE OBJECTION RECIPIENTS A SALE OBJECTION FOREVER SHALL BAR SUCH PARTY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, OR TO THE CONSUMMATION AND PERFORMANCE OF THE SALE(S) TO SUCCESSFUL BIDDER(S), INCLUDING THE TRANSFER OF THE ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES PURSUANT TO SECTION 363(F) OF THE BANKRUPTCY CODE.**  Notwithstanding the foregoing, the deadline to file an objection to the proposed assumption and assignment of any

executory contract or unexpired lease in connection with a Sale, based on a Successful Bidder's proposed form of adequate assurance of future performance under such contract or lease, shall be two days prior to the Sale Hearing.

12.     The Debtors' presentation to the Court for approval of a Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will have accepted the terms of a Successful Bid only when such bid has been approved by the Court.

13.     This Notice is subject to the full terms and conditions set forth in the Bidding Procedures Order and the Bidding Procedures.  To the extent set forth in the Bidding Procedures, the Debtors reserve the right to, in their reasonable discretion, modify the Bidding Procedures at any time, including, without limitation, to extend deadlines and proposed dates set forth therein, including extending the Final Bid Deadline, changing the date of the Auction, and adjourning and/or rescheduling the Sale Hearing; provided that the Debtors may not amend the Bidding Procedures to (a) reduce or otherwise modify their obligations to consult with any Consultation Party (as defined in the Bidding Procedures) without the consent of such Consultation Party or further Court Order, (b) reduce or otherwise modify their obligations to obtain consent from the DIP Lender or the Pre-Petition First Lien Lender, as applicable or (c) provide for any extensions of deadlines, other modifications of the Bidding Procedures or acceptance of any bid which limit the rights set out in or the protections provided to the DIP Agent, the DIP Lender and the Pre-Petition First Lien Lender as set forth in the DIP Orders, the DIP Loan Documents or the Pre-Petition First Lien Documents, or are inconsistent with the Debtors' agreements and obligations thereunder, in each case without the prior written consent of the Pre-Petition First Lien Lender or the DIP Agent or the DIP Lender, as applicable.

14.     Parties interested in receiving additional information about the Debtors, the Bidding Procedures, the Sale(s), the Assets, or the Auction may make requests to the Debtors' investment banker, Miller Buckfire, 787 7th Avenue, 5th Floor, New York, New York 10019 (Attn: James Doak (james.doak@millerbuckfire.com)).

15.     The Debtors have provided notice of this Motion simultaneously to all parties on the Service List who have also received the Notice of Commencement Docket No. 4, consistent with the notice procedures therein.

[*Remainder of page intentionally left blank*]

Dated:  January 17, 2019
Richmond, Virginia

/s/ Michael A. Condyles

Michael A. Condyles, Esq. (VA 27807)
Peter J. Barrett, Esq. (VA 46179)
Jeremy S. Williams, Esq. (VA 77469)
Brian H. Richardson, Esq. (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:      (804) 783-6192
Email:    Michael.Condyles@KutakRock.com
            Peter.Barrett@KutakRock.com
            Jeremy.Williams@KutakRock.com
            Brian.Richardson@KutakRock.com
-and-

Dennis F. Dunne, Esq. (*pro hac vice* pending)
Evan R. Fleck, Esq. (*pro hac vice* pending)
Michael W. Price, Esq. (*pro hac vice* pending)
**MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP**
28 Liberty Street
New York, New York 10005
Telephone:     (212) 530-5000
Facsimile:      (212) 530-5219
Email:    ddunne@milbank.com
            efleck@milbank.com
            mprice@milbank.com

*Proposed Co-Counsel for Debtors in Possession*

## Exhibit 1

**Purchase Agreement**

**<u>Exhibit 2</u>**

**Cure Costs**

## Exhibit 3

**Notice of Sale Closing Date**