**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GYMBOREE GROUP, INC., *et al.*,[1] | ) | Case No. 19-30258 (KLP) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**AMENDED INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN
POSTPETITION FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH
COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION
TO THE PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, (VI)
SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion, dated January 17, 2019 (the "DIP Motion") of Gymboree Group, Inc.,

(the "Borrower"), and Gymboree Intermediate Corporation, Gymboree Retail Stores, LLC,

Gymboree Manufacturing, Inc., Gymboree Operations, Inc., Gym-Mark, Inc., Gym-Card, LLC,

Gymboree Wholesale, Inc., and Gymboree Distribution, Inc. (the "Guarantors"), each as a debtor

and debtor in possession (collectively, the "Debtors") in the above-captioned Chapter 11 cases

(collectively, the "Cases"), seeking entry of an order (this "Interim Order") pursuant to sections

105, 361, 362, 363, 364(c)(l), 364(c)(2), 364(c)(3), 364(d), 364(e), and 507 of chapter 11 of title

11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, 6004, and 9014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") *inter alia*:

(i)        authorizing the Debtors to obtain senior secured postpetition financing on a

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Gymboree Group, Inc. (6587); Gymboree Intermediate Corporation (1473); Gymboree Holdings Corporation (0315); Gymboree Wholesale, Inc. (6588); Gym-Mark, Inc. (6459); Gymboree Operations, Inc. (6463); Gymboree Distribution, Inc. (8669); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, LLC (6461); Gym-Card, LLC (5720); and Gymboree Island, LLC (1215).  The Debtors' service address is 71 Stevenson Street, Suite 2200, San Francisco, California 94105.

superpriority basis consisting of a senior secured superiority term credit facility (the "DIP Facility"; and the lenders thereunder, the "DIP Lenders"), consisting of (a) a $30,000,000 new money multiple draw term loan facility ("New Money DIP Facility"; the new money loans made thereunder, the "New Money DIP Loans"; and the lenders making the loans thereunder, the "New Money DIP Lenders") and (b) (x) on the Closing Date (as defined in the DIP Agreement) following entry of this Interim Order, in connection with the funding of any New Money DIP Loans (the "Initial New Money DIP Loan"), a deemed exchange of a portion of the Prepetition Term Claims held by the New Money DIP Lenders (or their affiliates) in an aggregate principal amount equal to the Initial New Money DIP Loans funded on the Closing Date for Loans under the DIP Facility (each such Prepetition Term Claim deemed to be exchanged, an "Initial Roll-Up DIP Loan"; and collectively, the "Initial Roll-Up DIP Loans") and (y) upon entry of the Final Order, a deemed exchange of the entire remaining outstanding balance of the Prepetition Term Claims held by the New Money DIP Lenders (or their affiliates)  for Loans under the DIP Facility (each such Prepetition Term Claim deemed to be exchanged, a "Final Order Roll-Up DIP Loan", and collectively, the "Final Order Roll-Up DIP Loans"; and together with the Initial Roll-Up DIP Loans, the "Roll-Up DIP Loans"; together with the New Money DIP Loans, the "DIP Loans"), pursuant to the terms and conditions of that certain *Superpriority Secured Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Agreement"), by and among the Borrower, the Guarantors, and Special Situations Investing Group, Inc. as administrative agent and collateral agent (the "DIP Agent") for and on behalf of itself and the DIP Lenders party thereto, substantially in the form of **Exhibit A**, attached to the DIP Motion;

(ii)        authorizing the Debtors to execute and deliver the DIP Agreement and any

other agreements, instruments, pledge agreements, guarantees, control agreements, and other

Loan Documents (as defined in the DIP Agreement) and documents related thereto (as amended,

restated, supplemented, waived, and/or modified from time to time, collectively, with the DIP

Agreement, the "DIP Documents"), and to perform such other acts as may be necessary or

desirable in connection with the DIP Documents;

(iii)        granting the DIP Facility and all obligations owing thereunder and under, or

secured by, the DIP Documents to the DIP Agent and DIP Lenders (collectively, and including

all "Obligations" as defined in the DIP Agreement, the "DIP Obligations") allowed superpriority

administrative expense claim status in each of the Cases and any Successor Cases;

(iv)        granting to the DIP Agent, for the benefit of itself and the DIP Lenders and the

other Secured Parties (as defined in the DIP Agreement) under the applicable DIP Documents,

automatically perfected security interests in and liens on all of the DIP Collateral (as defined

herein), including all property constituting "cash collateral" as defined in section 363(a) of the

Bankruptcy Code ("Cash Collateral"), which liens shall be subject to the priorities set forth

herein;

(v)        authorizing and directing the Debtors to pay the principal, interest, fees,

expenses and other amounts payable under the DIP Documents as such become earned, due and

payable and without need to obtain further Court approval, including, without limitation, the fees

set forth in the Fee Letter (as defined in the DIP Agreement), and the reasonable fees and

disbursements of the DIP Agent's attorneys, advisors, accountants and other consultants, all to

the extent provided in, and in accordance with, the DIP Documents;

(vi)        authorizing the Debtors to use the Prepetition Collateral (as defined herein),

including the Cash Collateral of the Prepetition ABL Parties under the Prepetition ABL

Documents and the Prepetition Term Loan Parties under the Prepetition Term Loan Documents (each as defined herein), and providing adequate protection to the Prepetition ABL Parties and Prepetition Term Loan Parties for any diminution in value resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and the priming of their respective interests in certain of the Prepetition Collateral (including by the Carve Out) ("Diminution in Value") of their respective interests in the Prepetition Collateral, including the Cash Collateral;

(vii)     authorizing the Prepetition ABL Agent to receive and apply all payments made or to be made under the Agency Agreement until the Payment in Full of the Prepetition ABL Obligations

(viii)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(ix)     scheduling a final hearing (the "Final Hearing") within 35 days of the Petition Date to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the exhibits attached thereto, the *Declaration of James Doak in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Them to Obtain Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, (VII) Approving the Bidding Procedures Motion, and (VII) Granting Related Relief*, the *Declaration of Stephen Coulombe, Chief Restructuring Officer of*

*Gymboree Group, Inc., In Support of Chapter 11 Petitions and First Day Motions*,  the DIP

Documents, and the evidence submitted and argument made at the interim hearing held on

January 17, 2019 (the "Interim Hearing"); and notice of the Interim Hearing having been given

in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable local rules of

the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Rules"); and

the Interim Hearing having been held and concluded; and all objections, if any, to the interim

relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court;

and it appearing that approval of the interim relief requested in the DIP Motion is necessary to

avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing,

and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all

parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the

preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the

DIP Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due

deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE**

**COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF**

**LAW:**[2]

      A.    **Petition Date**.  On January 16, 2019 (the "Petition Date"), each of the

Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the

United States Bankruptcy Court for the Eastern District of Virginia (the "Court").

      B.    **Debtors in Possession**.  The Debtors have continued in the management

---

[2]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of
law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule
9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are
adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they
are adopted as such.

and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.  **Jurisdiction and Venue**.  This Court has jurisdiction over the Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.  **Committee Formation**.  As of the date hereof, the United States Trustee for the Eastern District of Virginia (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

E.  **Notice**.  Proper, timely, adequate, and sufficient notice of the Interim Hearing has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the DIP Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

F.  **Debtors' Stipulations**.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 45 herein, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through F(xi) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)  *Prepetition ABL Facility*.  Pursuant to that certain Credit Agreement dated as of September 29, 2017 (as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition ABL Agreement," and collectively with the Loan Documents (as defined in the Prepetition ABL Agreement) and any other agreements and

documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition ABL Documents"), among (a) the borrowers party thereto (the "Prepetition ABL Borrowers"), (b) the guarantors party thereto (the "Prepetition ABL Guarantors"), (c) Bank of America, N.A., as administrative agent and collateral agent (in such capacity, the "Prepetition ABL Agent"), and (d) the lenders party thereto (the "Prepetition ABL Lenders," and collectively with the Prepetition ABL Agent, the "Prepetition ABL Parties"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to, and issued letters of credit for the account of, the Prepetition ABL Borrowers pursuant to the Prepetition ABL Documents (the "Prepetition ABL Facility").  The Prepetition ABL Agent issued that certain Notice of Default and Reservation of Rights related to the Prepetition ABL Agreement on January 3, 2019.  As a result, as of the Petition Date, interest was accruing on the Prepetition ABL Obligations (as defined herein) at the default rate.

(ii)    *Prepetition ABL Obligations*.  The Prepetition ABL Facility provided the Prepetition ABL Borrowers with, among other things, up to $200,000,000 aggregate principal amount of Revolving Credit Loans (as defined in the Prepetition ABL Agreement).  As of the Petition Date, the aggregate principal amount outstanding under the Prepetition ABL Facility was not less than $80,702,020.34 in loans and not less than $42,506,266.20 in issued and outstanding letters of credit (collectively, together with accrued and unpaid interest, outstanding bankers' acceptances, any reimbursement obligations (contingent or otherwise) in respect of letters of credit and bankers' acceptances, any fees, expenses and disbursements (including reasonable attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements),

treasury, cash management, bank product and derivative obligations, indemnification obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Borrowers' or the Prepetition ABL Guarantors' obligations pursuant to, or secured by, the Prepetition ABL Documents, including all "Obligations" as defined in the Prepetition ABL Agreement, and all interest, fees, prepayment premiums, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "Prepetition ABL Obligations" and any claims of the Prepetition ABL Parties arising in connection with the Prepetition ABL Obligations, the "Prepetition ABL Claims").

(iii)     *Prepetition ABL Liens and Prepetition ABL Priority Collateral*. As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Prepetition ABL Borrowers and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, a security interest in and continuing lien on (the "Prepetition ABL Liens") substantially all of their assets and property (with certain exceptions set out in the Prepetition ABL Documents) including (a) a first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in that certain Intercreditor Agreement referred to below) (which, for the avoidance of doubt, includes Cash Collateral *other than* Cash Collateral that constitutes Term Priority Proceeds (as defined in the Intercreditor Agreement)), and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), and (b) a second priority security interest in and continuing lien on the Term Priority Collateral (as defined in the Intercreditor Agreement) and proceeds, products, and rents of any of the foregoing (collectively, the "Prepetition Term Priority

Collateral," and together with the Prepetition ABL Priority Collateral, the "Prepetition Collateral"), subject only to the Prepetition ABL Permitted Prior Liens (as defined herein) and, on the Prepetition Term Priority Collateral, the liens of the Prepetition Term Loan Agent.

(iv)     *Prepetition Term Loan Facility*.    Pursuant to that certain Credit Agreement dated as of September 29, 2017 (as amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Agreement," and collectively with the Loan Documents (as defined in the Prepetition Term Loan Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, supplemented, waived or otherwise modified from time to time, the "Prepetition Term Loan Documents," and together with the Prepetition ABL Documents, the "Prepetition Documents"), among (a) the borrowers party thereto (the "Prepetition Term Loan Borrowers" and together with the Prepetition ABL Borrowers, the "Prepetition Borrowers"), (b) Goldman Sachs Specialty Lending Group, L.P., as administrative agent and collateral agent (in such capacity, the "Prepetition Term Loan Agent," and together with the Prepetition ABL Agent, the "Prepetition Agents"), (c) the guarantors party thereto (the "Prepetition Term Loan Guarantors" and, together with the Prepetition ABL Guarantors, the "Prepetition Guarantors"), and (d) the lenders party thereto (the "Prepetition Term Loan Lenders," and collectively with the Prepetition Term Loan Agent, the "Prepetition Term Loan Parties," and together with the Prepetition ABL Parties, the "Prepetition Secured Parties"), the Prepetition Term Loan Lenders provided term loans to the Prepetition Term Loan Borrower (the "Prepetition Term Loan Facility," and together with the Prepetition ABL Facility, the "Prepetition Secured Facilities").

(v)     *Prepetition Term Loan Obligations*.    The Prepetition Term Loan Facility provided the Prepetition Term Loan Borrower with term loans in the aggregate principal

amount of $85,000,000.  As of the Petition Date, the aggregate amount outstanding under the

Prepetition Term Loan Facility (including accrued interest, yield maintenance, and certain other

charges and fees) was $89,044,513.81 (collectively, together with any additional accrued and

unpaid interest, any fees, expenses and disbursements (including reasonable attorneys' fees,

accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and

disbursements), indemnification obligations, and other charges, amounts, and costs of whatever

nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or

chargeable in respect of any of the Prepetition Term Loan Borrower's and the Prepetition Term

Loan Guarantors' obligations pursuant to the Prepetition Term Loan Documents, including all

"Obligations" as defined in the Prepetition Term Loan Agreement, and all interest, fees, costs

and other charges allowable under Section 506(b) of the Bankruptcy Code, the "Prepetition Term

Loan Obligations," and together with the Prepetition ABL Obligations, the "Prepetition Secured

Obligations") (any claims of the Prepetition Term Loan Parties arising in connection with the

Prepetition Term Loan Obligations, the "Prepetition Term Loan Claims").

(vi)    *Prepetition Term Loan Liens and Prepetition Term Priority
Collateral*.  As more fully set forth in the Prepetition Term Loan Documents, prior to the Petition

Date, the Prepetition Term Loan Borrower and the Prepetition Term Loan Guarantors granted to

the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan

Lenders, a security interest in and continuing lien on (the "Prepetition Term Loan Liens," and

together with the Prepetition ABL Liens, the "Prepetition Liens") substantially all of their assets

and property (with certain exceptions set out in the Prepetition Term Loan Documents),

including (a) a first priority security interest in and continuing lien on the Prepetition Term

Priority Collateral, and (b) a second priority security interest in and continuing lien on the

10

Prepetition ABL Priority Collateral, subject only to the Prepetition Term Loan Permitted Prior Liens (as defined herein) and, on the Prepetition ABL Priority Collateral, the liens of the Prepetition ABL Agent.

(vii)    *Priority of Prepetition Liens; Intercreditor Agreement.*    The Prepetition ABL Agent and the Prepetition Term Loan Agent entered into that certain Intercreditor Agreement dated as of September 29, 2017 (as supplemented and modified by that certain Acknowledgment and Agreement dated as of January 17, 2019, and as may be further amended, restated, supplemented, or otherwise modified in accordance with its terms, the "Intercreditor Agreement") to govern the respective rights, interests, obligations, priority, and positions of the Prepetition Secured Parties with respect to the assets and properties of the Debtors.  Each of the Prepetition Borrowers and Prepetition Guarantors under the Prepetition Documents acknowledged and agreed to the Intercreditor Agreement.

(viii)    *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition ABL Obligations.*  The Debtors acknowledge and agree that as of the Petition Date (a) the Prepetition ABL Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, properly perfected, and continuing and were granted to, or for the benefit of, the Prepetition ABL Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to (1) the Prepetition Term Loan Liens on the Prepetition Term Priority Collateral, and (2) certain liens otherwise permitted by the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "Prepetition ABL Permitted Prior Liens"); (c) the Prepetition ABL Obligations constitute legal, valid, binding, and non-

avoidable obligations of the Debtors enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Parties or any of their respective affiliates, agents, attorneys, advisors, consultants, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition ABL Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the liens securing the Prepetition ABL Obligations; and (g) the Prepetition ABL Obligations constitute allowed, claims within the meaning of section 502 of the Bankruptcy Code.

(ix)     *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Obligations.*  The Debtors further acknowledge and agree that, as of the Petition Date, (a) the Prepetition Term Loan Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable, properly perfected, and continuing and were granted to, or for the benefit of, the Prepetition Term Loan Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Term Loan Liens were senior in priority over any and all

other liens on the Prepetition Collateral, subject only to (1) the Prepetition ABL Liens on the

Prepetition ABL Priority Collateral, and (2) certain liens otherwise permitted by the Prepetition

Term Loan Documents (solely to the extent any such permitted liens were valid, properly

perfected, non-avoidable, and senior in priority to the Prepetition Term Loan Liens as of the

Petition Date, the "Prepetition Term Loan Permitted Prior Liens" and, together with the

Prepetition ABL Permitted Prior Liens, the "Permitted Prior Liens");[3] (c) the Prepetition Term

Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors

enforceable in accordance with the terms of the applicable Prepetition Term Loan Documents;

(d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any

kind or nature to any of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations

exist, and no portion of the Prepetition Term Loan Liens or Prepetition Term Loan Obligations is

subject to any challenge or defense, including avoidance, disallowance, disgorgement,

recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or

applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections,

challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5

of the Bankruptcy Code or applicable state law equivalents or actions for recovery or

disgorgement, against any of the Prepetition Term Loan Parties, or any of their respective

affiliates, agents, attorneys, advisors, professionals, officers, consultants, directors, and

employees arising out of, based upon, or related to the Prepetition Term Loan Facility; (f) the

Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term

Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent,

---

[3]  For the avoidance of doubt, as used in this Interim Order, no reference to the Prepetition ABL Permitted
Prior Liens, the Prepetition Term Loan Permitted Prior Liens, or the Permitted Prior Liens shall refer to or
include the Prepetition ABL Liens or the Prepetition Term Loan Liens.

and priority of the liens securing the Prepetition Term Loan Obligations; and (g) the Prepetition

Term Loan Obligations constitute allowed claims within the meaning of section 502 of the

Bankruptcy Code.

(x)      *Release*.  The Debtors hereby stipulate and agree that they forever

and irrevocably release, discharge and acquit the DIP Agent, the Prepetition Secured Parties, all

former, current and future DIP Lenders, and each of their respective successors, assigns,

affiliates, subsidiaries, parents, officers, shareholders, professionals, directors, employees,

advisors, consultants, attorneys and agents, past, present and future, and their respective heirs,

predecessors, successors and assigns, each solely in their capacities as such (collectively, the

"Releasees"), of and from any and all claims, controversies, disputes, liabilities, obligations,

demands, damages, expenses (including reasonable attorneys' fees), debts, liens, actions and

causes of action of any and every nature whatsoever relating to, as applicable, the DIP Facility,

the DIP Documents, the Prepetition Secured Facilities, the Prepetition Documents and/or the

transactions contemplated hereunder or thereunder including (x) any so-called "lender liability"

or equitable subordination or recharacterization claims or defenses, (y) any and all claims and

causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of

action with respect to the validity, priority, perfection or avoidability of the liens or claims of the

Prepetition Agents, the Prepetition Secured Parties, the DIP Agent and the DIP Lenders.  The

Debtors further waive and release any defense, right of counterclaim, right of set-off or

deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which

the Debtors may now have or may claim to have against the Releasees, arising out of, connected

with or relating to any and all acts, omissions or events occurring prior to this Court entering this

Interim Order.

(xi)     *Default by the Debtors.*  The Debtors acknowledge and stipulate that they have been and are in default of their obligations under the Prepetition Documents and that, as a result of the Cases, an Event of Default has occurred under the Prepetition Documents. As of the Petition Date, therefore, interest was accruing on the Prepetition Secured Obligations at the default rate.

G.     **Permitted Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.   Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Agent, the Prepetition Secured Parties, or a Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien and/or security interests. The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Permitted Prior Lien and is expressly subject to the Prepetition Liens and DIP Liens.

H.     **Cash Collateral**.  All of the Debtors' cash (subject to certain exceptions set out in the Prepetition Documents and under applicable law), including any such cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

I.     **Merchandise Agent's Bid**.   The Debtors have received a bid (the "Merchandise Agent's Bid") for assets that constitute Prepetition ABL Priority Collateral pursuant to that certain Agency Agreement, dated as of January 16, 2019 by and among the Company and Great American Group, LLC, Tiger Capital Group, LLC, Gordon Brothers Retail Partners, LLC, and Hilco Merchant Resources, LLC (as amended, modified or supplemented from time to time, the "Agency Agreement").  The Merchandise Agent's Bid exceeds the amount

15

of Prepetition ABL Obligations that were outstanding as of the Petition Date.

J.      **Intercreditor Agreement**.   Pursuant to section 510 of the Bankruptcy

Code, the Intercreditor Agreement and any other applicable intercreditor or subordination

provisions contained in any of the Prepetition Documents (i) shall remain in full force and effect,

(ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured

Parties (including the relative priorities, rights and remedies of such parties with respect to the

replacement liens and administrative expense claims and superpriority administrative expense

claims granted, or amounts payable, by the Debtors under this Interim Order or otherwise and the

modification of the automatic stay), and (iii) shall not be deemed to be amended, altered, or

modified by the terms of this Interim Order or the DIP Documents, unless expressly set forth

herein or therein. The issuance of the Roll-Up DIP Loans pursuant to the terms of the DIP

Facility is deemed a "refinancing" in part of the Prepetition Term Loan Facility as such term is

used in the Intercreditor Agreement, and any repayment of the Prepetition Term Loan

Obligations pursuant to this Interim Order shall not be deemed to constitute a "Discharge of

Term Obligations" (as defined in the Intercreditor Agreement).

K.      **Findings Regarding Postpetition Financing**

(i)     *Request for Postpetition Financing*.   The Debtors seek authority to

(a) use existing Cash Collateral, and (b) enter into the DIP Facility on the terms described herein

and in the DIP Documents to administer their Cases and fund their operations.   At the Final

Hearing, the Debtors will seek final approval of the proposed postpetition financing and use of

Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall

be in form and substance acceptable to the DIP Agent and, with respect to any provisions of the

Final Order that modify, amend or otherwise affect any of the stipulations, findings, rights or

protections related, or granted to, the Prepetition ABL Parties, the Prepetition ABL Liens or the Prepetition ABL Obligations, the Prepetition ABL Agent. Notice of the Final Hearing and the proposed Final Order will be provided in accordance with this Interim Order.

(ii)    *Priming of the Prepetition Liens*. The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility, which will permit the Debtors to continue to operate their businesses during the Cases to the benefit of their estates and creditors. The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, for any Diminution in Value of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(iii)    *Need for Postpetition Financing and Use of Cash Collateral*. The Debtors have a need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, administer and preserve the value of their estates and avoid immediate and irreparable harm to the Debtors, their estates, and parties-in-interest. The Debtors do not have available sources of working capital during the Interim Period without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms*. Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors are unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain: (a) unsecured credit having priority over that of administrative

expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) credit secured solely by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) credit secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis on better terms is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof; (2) superpriority claims and liens; and (3) the other protections set forth in this Interim Order.

(v)      *Use of Cash Collateral and Proceeds of the DIP Facility*.  As a condition to entry into the DIP Agreement, the extensions of credit under the DIP Facility, and the authorization to use Cash Collateral, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties require, and the Debtors have agreed, that Cash Collateral and the proceeds of the DIP Facility shall be used, in each case, in a manner consistent with the terms and conditions of this Interim Order and the DIP Documents and in accordance with the budget (as the same may be modified from time to time consistent with paragraph 12 of this Interim Order, the "Budget"),[4] solely for: (a) working capital and letters of credit, (b) other general corporate purposes of the Debtors; (c) permitted payment of costs of administration of the Cases; (d) payment of such other prepetition obligations as consented to by the DIP Agent in its reasonable discretion, and as approved by the Court; (e) payment of interest, fees, expenses and other amounts (including legal and other professionals' fees and expenses of the Prepetition ABL Agent and the DIP Agent) owed to the Prepetition ABL Agent the DIP Agent and the DIP Lenders; (f) payment of certain adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraphs 19-20 hereof; (g) payment of obligations arising from or related to the

---

[4]  A copy of the initial Budget is attached hereto as **Schedule 1**.

Carve Out, and making disbursements therefrom, and (h) such other uses set forth in the Budget and permitted by the DIP Agreement and, following occurrence of a Trigger Event, payment of obligations arising from or related to the Carve Out, and making disbursements therefrom.

(vi)    *Application of Proceeds of Collateral*.  As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have agreed that as of, and commencing on, the date of the Interim Hearing, the Debtors shall apply the proceeds of Collateral in accordance with this Interim Order.

(vii)    *Roll-up Loans.*  Upon entry of this Interim Order, without any further action by the Debtors or any other party, $30,000,000 of Prepetition Term Loan Obligations shall be converted into the Initial Roll-Up DIP Loan and constitute DIP Obligations pursuant to, and consistent with, the terms of the DIP Agreement and this Interim Order.  The conversion (or "roll-up") shall be authorized as compensation for, in consideration for, and solely on account of, the agreement of the Prepetition Term Loan Lenders to fund the New Money DIP Loans and not as payments under, adequate protection for, or otherwise on account of, any Prepetition Obligations.  Notwithstanding any other provision of this Interim Order, the DIP Agreement or the Intercreditor Agreement, all rights of the Prepetition Secured Parties shall be fully preserved.  Upon entry of a Final Order that so provides, without any further action by the Debtors or any other party, the Prepetition Term Loan Obligations that remain outstanding following entry of this Interim Order shall be converted into the Final Order Roll-Up DIP Loans. The Prepetition Term Loan Lenders would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and the DIP Lenders would not be willing to provide the New Money DIP Loans or extend credit to the

Debtors thereunder without the inclusion of the Roll-Up DIP Loans in the DIP Obligations. Because the Roll-Up DIP Loans are subject to the reservation of rights in paragraph 45 below, they will not prejudice the right of any party in interest.

L.    **Adequate Protection**.    The Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, and the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral. Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection: (i) the Prepetition ABL Parties will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 15 and 17 herein, and (b) current payment of interest, reasonable and documented fees and out-of-pocket expenses (including legal and other professionals' fees and expenses of the Prepetition ABL Agent whether arising before or after the Petition Date), as more fully set forth in paragraph 19 herein; and (ii) the Prepetition Term Loan Parties will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 15 and 17 herein, and (b) current payment of expenses (including legal and other professionals' reasonable and documented fees and out-of-pocket expenses of the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders whether arising before or after the Petition Date), as more fully set forth in paragraph 20herein.

M.    **Sections 506(c) and 552(b).**    In light of: (i) the DIP Agent's and the DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out; (ii) the Prepetition ABL Agent's and the Prepetition ABL Lenders' agreement that their liens shall, in the case of the Term Priority Collateral, be subordinate to the DIP Liens, the Prepetition Term Loan Liens, and the Prepetition Term Loan Adequate Protection Liens; (iii) the Prepetition Term

Loan Parties' agreement that their liens shall be subordinate to the DIP Term Loan Liens and, in the case of the ABL Priority Collateral, subordinate to the Prepetition ABL Liens, and Prepetition ABL Adequate Protection Liens; and (iv) the payment of expenses as set forth in the Budget, in accordance with and subject to the terms and conditions of this Interim Order, (a) subject to entry of a Final Order, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent, and the Prepetition Term Loan Lenders are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

N.     **Good Faith of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties**.

(i)     *Willingness to Provide Financing*.   The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to: (a) entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that the DIP Facility are essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e)*.

The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, with the assistance and counsel of their respective advisors.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

O.    **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

P.    **Interim Hearing**.  Notice of the Interim Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) those entities or individuals included on the Debtors' list of 50 largest unsecured creditors on a consolidated basis; (iii) counsel to the Prepetition ABL Agent; (iv) counsel to the Prepetition Term Loan Agent; and (v) all other parties entitled to notice under the Local Rules.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and no other notice is required in connection with the relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and

sufficient cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      <u>Interim Financing Approved</u>.   The DIP Motion is granted, the Interim

Financing (as defined herein) is authorized and approved, and the use of Cash Collateral during

the Specified Period (as defined herein) is authorized, in each case subject to the terms and

conditions set forth in the DIP Documents or this Interim Order, as applicable.   All objections to

this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and

overruled.

**DIP Facility Authorization**

2.      <u>Authorization of the DIP Facility</u>.   The DIP Facility, including the Initial

Roll-Up DIP Loans, are hereby approved.    The Debtors are expressly and immediately

authorized and  empowered to execute and deliver the DIP Documents, and to incur and to

perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order

and the DIP Documents, and to deliver all instruments, certificates, agreements, and documents

which may be required or necessary for the performance by the Debtors under the DIP Facility

and the creation and perfection of the DIP Liens (as defined herein) described in and provided

for by this Interim Order and the DIP Documents, including each of the Guarantors providing its

joint and several guarantee of all of the DIP Obligations and such acts as shall be necessary or

desirable in order to effect the roll-up and conversion of $30,000,000 of Prepetition Term Loans

into Initial Roll-Up DIP Loans.   The Debtors are hereby authorized and directed to pay, in

accordance with this Interim Order, the principal, interest, fees, payments, expenses, and other

amounts described in the DIP Documents as such amounts become earned, due and payable and

without need to obtain further Court approval, including, without limitation, the fees set forth in

the Fee Letter, the reasonable fees and disbursements of the DIP Agent's attorneys, advisors, accountants, and other consultants, whether or not such fees arose before or after the Petition Date, and to take any other actions that may be necessary or appropriate, all to the extent provided in this Interim Order or the DIP Documents.  Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    Authorization to Borrow.  To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the Termination Declaration (as defined below), and subject to the terms, conditions set forth in the DIP Documents and this Interim Order, the Debtors are hereby authorized to request extensions of credit up to an aggregate outstanding principal amount of not greater than $30,000,000 under the DIP Facility (the "Interim Financing").

4.    DIP Obligations.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which shall be enforceable against the Debtors, their estates and any successors thereto, including any trustee appointed in the Cases, or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases").  Upon entry of this Interim Order, the DIP Obligations will include all loans, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders, in each case, under, or secured by, the DIP Documents or this Interim Order, including all principal, accrued interest, costs, fees, expenses and other amounts payable

24

under the DIP Documents.  The Borrower and the Guarantors shall be jointly and severally liable

for the DIP Obligations.  The DIP Obligations shall be due and payable, without notice or

demand, and, if there has been Payment in Full (as defined herein) of the Prepetition ABL

Obligations, the use of Cash Collateral shall automatically cease on the DIP Termination Date

(as defined herein), except as provided in paragraph 33 herein.  Subject to paragraph 45 hereof,

and except as otherwise expressly provided by this Interim Order, no obligation, payment,

transfer, or grant of collateral security hereunder or under the DIP Documents (including any

DIP Obligation or DIP Liens (as defined below), and including in connection with any adequate

protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained,

voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law

(including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any

applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform

Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance,

reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable,

contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the

Bankruptcy Code or any applicable law or regulation by any person or entity.

   5. <u>DIP Liens</u>.  Subject and subordinate to the Carve Out as set forth in this

Interim Order, in order to secure the DIP Obligations, effective immediately upon entry of this

Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy

Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, continuing,

valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition

security interests in and liens on (collectively, the "<u>DIP Liens</u>") all real and personal property,

whether now existing or hereafter arising and wherever located, tangible and intangible, of each

of the Debtors (the "DIP Collateral" and together with the Prepetition Collateral, the "Collateral"), including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of its subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, fee interests in real property owned by the Debtors, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all owned real property interests and all proceeds of leased real property; (c) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) subject to entry of a Final Order, the proceeds of any avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents (other than actions brought pursuant to section 549 of the Bankruptcy Code) (the "Avoidance Action Proceeds"); (e) subject to entry of a Final Order, the Debtors' rights under section 506(c) and 550 of the Bankruptcy Code and the proceeds thereof (the "506(c) Rights"); and (f) all DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date (the "Unencumbered Assets").    Notwithstanding the foregoing, DIP Collateral shall not include (i) the Debtors' real property leases (but shall include all proceeds of

such leases), and (ii) Excluded Assets (as defined in the DIP Security Agreement).    The

following shall constitute "<u>ABL Priority Collateral</u>": (i) Collateral that is of a type that would be

Prepetition ABL Priority Collateral (and all receipts and proceeds thereof), and (ii) until the

Payment in Full[5] of the Prepetition ABL Obligations, the Agency Agreement, all rights

thereunder, and all payments received thereunder, and the US Letter of Credit (as defined in the

Agency Agreement).    In no event shall any of the Prepetition ABL Parties' rights in the ABL

Priority Collateral be junior to the DIP Liens or the Carve Out.    The following shall constitute

Term Priority Collateral: (i) Collateral that is of a type that would be Prepetition Term Priority

Collateral (and all receipts and proceeds thereof), (ii) Unencumbered Assets, (iii) Avoidance

Action Proceeds, (iv) 506(c) Rights, and (v) the proceeds of the Debtors' real property leases.

      6.    <u>DIP Lien Priority</u>.    The DIP Liens are valid, automatically perfected, non-

avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or

claim to any of the DIP Collateral, except that the DIP Liens shall be subject to the Carve Out as

set forth in this Interim Order and shall otherwise be junior only to: (i) as to the ABL Priority

---

[5] As used in this Interim Order, "Payment in Full" shall mean shall mean the payment in full in Cash of all Prepetition ABL Obligations (including all fees and expenses of the Prepetition ABL Agent through the date of payment), the cash collateralization of all treasury and cash management, hedging obligations and bank product obligations constituting Obligations (as defined in the Prepetition ABL Agreement), the cancellation, backing, or cash collateralization of letters of credit under the Prepetition ABL Facility in accordance with the terms of the Prepetition ABL Documents and this Interim Order, receipt by the Prepetition ABL Agent of an amount sufficient to cover estimated fees and expenses of the Prepetition ABL Agent, and funding of the Prepetition ABL Indemnity Reserve (as defined herein).

As used in this Interim Order, the "ABL Lien Release Date" shall be deemed to have occurred when (a) (i) the Challenge Period (as defined herein) expires without the timely and proper commencement of a Challenge proceeding (as defined herein) in accordance with paragraph 45 of this Interim Order with respect to the Prepetition ABL Obligations, the Prepetition ABL Claims, or against the Prepetition ABL Parties or (ii) if a Challenge Proceeding is timely and properly asserted prior to the expiration of the Challenge Period, upon the final disposition of such adversary proceeding or contested matter in favor of the Prepetition ABL Parties; and (b) the Prepetition ABL Agent has received (i) a countersigned payoff letter in form and substance satisfactory to the Prepetition ABL Agent, and (ii) releases from the Debtors and their estates (including any applicable liquidator), with respect to any claims arising out of or related to the Prepetition ABL Agreement and the Prepetition ABL Documents, acceptable to the Prepetition ABL Agent and each other Prepetition ABL Lender in their sole discretion. The Prepetition ABL Liens shall not be released until the occurrence of the ABL Lien Release Date.

Collateral, (A) Permitted Prior Liens; (B) the Prepetition ABL Liens; and (C) the Prepetition ABL Adequate Protection Liens (as defined herein). Other than as set forth herein (including the Carve Out) or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.    Superpriority Claims. Subject and subordinate to the Carve Out as set forth in this Interim Order, upon entry of this Interim Order, the DIP Agent, on behalf of itself and the DIP Lenders, is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations: (a) with respect to the ABL Priority Collateral, shall be junior to the Prepetition ABL Claims and the Prepetition ABL Superpriority Claims; (b) shall otherwise have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; and (c) which shall at all times be senior to the rights of the Debtors and

28

their estates, and any successor trustee or other estate representative to the extent permitted by law.

8.      No Obligation to Extend Credit.  Except as required to fund the Carve Out as set forth in this Interim Order (and subject to the occurrence of the Closing Date), the DIP Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agent and in accordance with the terms of the DIP Agreement.

9.      Use of Proceeds of DIP Facility.  From and after the Petition Date, the Debtors shall use proceeds of the DIP Facility, in accordance with the Budget, only for the purposes specifically set forth in this Interim Order and the DIP Documents, and in compliance with the terms and conditions in this Interim Order and the DIP Documents.

10.     Roll-Up of Loans.  Upon entry of this Interim Order, without any further action by the Debtors or any other party, and as a condition to the provision of liquidity under the DIP Facility, $30,000,000 of Prepetition Term Loan Obligations shall be converted and "rolled-up" into Initial Roll-Up DIP Loans and such Prepetition Term Loan Obligations shall be reduced on a dollar-for-dollar basis.  The authorization of the Initial Roll-Up DIP Loans shall be subject to the reservation of rights set forth in paragraph 45 of this Interim Order.

**Authorization to Use Cash Collateral**

11.     Authorization to Use Cash Collateral.  Subject to the terms and conditions of this paragraph 11, the Debtors are authorized to use Cash Collateral for the period from the Petition Date through the expiration of the Remedies Notice Period (as defined herein).  All Cash Collateral use must be strictly in accordance with the terms of the Budget (subject to Permitted

Variances) (as defined in the DIP Agreement)).   The authorization for the Debtors to use Cash

Collateral shall be subject to Payment in Full of the Prepetition ABL Obligations by January 18,

2019 (the "ABL Payment Date").

12.    Budget Maintenance.    The Budget shall be updated, modified, or

supplemented by the Debtors from time to time and upon the reasonable request of the DIP

Agent or, until the Payment in Full of the Prepetition ABL Obligations, the Prepetition ABL

Agent, but in any event shall be updated by the Debtors not less than one time in each two (2)

week consecutive period.   Such updated, modified or supplemented budget shall be deemed the

Budget unless the DIP Agent or, until the Payment in Full of the Prepetition ABL Obligations,

the Prepetition ABL Agent, objects by written notice to the Debtors on or within five (5)

business days after the receipt of such updated, modified or supplemented budget.   In the event

the DIP Agent or Prepetition ABL Agent (if applicable) timely objects to an updated, modified,

or supplemented budget, the then-existing Budget shall remain in effect the time (if ever) the

Debtors, the DIP Agent, and the Prepetition ABL Agent (if applicable) agree as to an updated,

modified, or supplemented Budget.   The Budget delivered to the DIP Agent and the Prepetition

ABL Agent shall be accompanied by such supporting documentation as reasonably requested by

the DIP Agent and the Prepetition ABL Agent (if applicable) and shall be prepared in good faith

based upon assumptions the Debtors believe to be reasonable.   A copy of any proposed budget

shall be delivered to counsel for a Committee (if appointed) and the U.S. Trustee when it

becomes the Budget.

13.    Budget Compliance.    The Debtors shall at all times comply with the

Budget (subject to Permitted Variances).   The Debtors shall provide all reports and other

information required by the terms of this Interim Order and the DIP Documents (as applicable).

14.    <u>Budget Reporting Obligations</u>.  The Debtors shall deliver to the DIP Agent and, until the Payment in Full of the Prepetition ABL Obligations, the Prepetition ABL Agent, on or before 12:00 p.m. (Eastern Time) on Wednesday of each week a: (i) comparison for the prior week of actual results of all items contained in the Budget to the budgeted amounts originally contained in the Budget; (ii) cumulative comparison for the period from the Petition Date through the end of the prior week of the actual results of all items contained in the Budget to the budgeted amounts originally contained in the Budget.

15.    <u>Adequate Protection Liens</u>.

(a)    *Prepetition ABL Adequate Protection Liens*.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition ABL Adequate Protection Liens</u>").

(b)    *Prepetition Term Loan Adequate Protection Liens*.  Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of the Prepetition Collateral, the Debtors hereby grant to the Prepetition Term Loan Agent, for the benefit of itself and the Prepetition Term Loan Parties, continuing, valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral (the "<u>Prepetition Term Loan Adequate Protection Liens</u>," and together with the Prepetition ABL Adequate Protection Liens, the "<u>Adequate Protection Liens</u>").

16.    <u>Priority of Adequate Protection Liens</u>.

(a)    The Prepetition ABL Adequate Protection Liens shall be junior only to: (i) with respect to the ABL Priority Collateral (other than the Prepetition ABL Indemnity Reserve) (1) the Carve Out, (2) Permitted Prior Liens; and (3) the Prepetition ABL Liens; and (ii) with respect to the Term Priority Collateral, (1) the Carve Out, (2) Permitted Prior Liens; (3) the DIP Term Loan Liens; (4) the Prepetition Term Loan Liens; (5) the Prepetition Term Loan Adequate Protection Liens; and (6) the Prepetition ABL Liens.  The Prepetition ABL Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(b)    The Prepetition Term Loan Adequate Protection Liens shall be junior only to: (i) with respect to the ABL Priority Collateral (1) the Carve Out, (2) Permitted Prior Liens; (3) the Prepetition ABL Liens; (4) the Prepetition ABL Adequate Protection Liens; (5) the DIP Term Loan Liens; and (6) the Prepetition Term Loan Liens; and (ii) with respect to the Term Priority Collateral (1) the Carve Out, (2) Permitted Prior Liens; (3) the DIP Term Loan Liens; and (4) the Prepetition Term Loan Liens.  The Prepetition Term Loan Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(c)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant

to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

17.    <u>Adequate Protection Superpriority Claims</u>.

(a)    *Prepetition ABL Superpriority Claim*.    As further adequate protection of the interests of the Prepetition ABL Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Prepetition ABL Superpriority Claim</u>").

(b)    *Prepetition Term Loan Superpriority Claim*.    As further adequate protection of the interests of the Prepetition Term Loan Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Term Loan Agent, on behalf of itself and the Prepetition Term Loan Parties, is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "<u>Prepetition Term Loan Superpriority Claim</u>," and together with the Prepetition ABL Superpriority Claim, the "<u>Adequate Protection Superpriority Claims</u>").

18.    <u>Priority of the Adequate Protection Superpriority Claims</u>.    Except as set forth herein and subject in all respects to the Carve Out (except as to any Prepetition ABL Superpriority Claim against the Prepetition ABL Indemnity Reserve, which shall in no event be junior to the Carve Out) , the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now

existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 506(c) (subject to entry of the Final Order), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code.  With respect to the ABL Priority Collateral, the Prepetition ABL Superpriority Claim shall be senior in all respects to the DIP Superpriority Claim and the Prepetition Term Loan Superpriority Claim.  With respect to the Term Priority Collateral, the Prepetition Term Loan Superpriority Claim shall be senior in all respects to the Prepetition ABL Superpriority Claim.

19.    Adequate Protection Payments and Protections for Prepetition ABL Parties.

(a)    As further adequate protection (the "Prepetition ABL Adequate Protection Payments"), the Debtors are authorized and directed to provide adequate protection to the Prepetition ABL Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of the reasonable and documented fees, out-of-pocket expenses, and disbursements incurred by the Prepetition ABL Agent (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors), whether incurred prior to or subsequent to the Petition Date, which may be paid from amounts held by the Prepetition ABL Agent to cover estimated fees and expenses (or held by such counsel, financial advisors, auditors, third-party consultants, or other vendors, as the case may be) without further notice and which shall not be subject to the notice provisions of paragraph 38.

(b)    In connection with the Payment in Full of the ABL Obligations, the Debtors are further authorized and directed to pay to the Prepetition ABL Agent, for the

benefit of the Prepetition ABL Parties, $500,000 into a non-interest bearing account maintained at Bank of America, N.A. (the "<u>Prepetition ABL Indemnity Reserve</u>") to secure contingent indemnification, reimbursement or similar continuing obligations arising under or related to the Prepetition ABL Documents (the "<u>Prepetition ABL Indemnity Obligations</u>").  The Prepetition ABL Indemnity Reserve shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition ABL Agent and the Prepetition ABL Lenders in connection with or responding to (1) formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 45 hereof, (2) any Challenge (as defined herein) against the Prepetition ABL Agent or Prepetition ABL Lenders related to the Prepetition ABL Documents, the Prepetition ABL Obligations, or the Prepetition ABL Liens granted to the Prepetition ABL Agent, as applicable, whether in these Cases or independently in another forum, court, or venue, or (3) any other dispute or challenge whatsoever by any party to the nature, extent, validity, or priority of the Prepetition ABL Liens, the Prepetition ABL Claims, or the Prepetition ABL Obligations, including without limitation any payments made or to be made to or for the benefit of the Prepetition ABL Parties pursuant to the Agency Agreement or otherwise in connection with the Prepetition ABL Obligations.  Until the occurrence of the ABL Lien Release Date, the Prepetition ABL Indemnity Obligations shall be secured by a first lien on the Prepetition ABL Indemnity Reserve and the funds therein and by a lien on the Prepetition Collateral (subject in all respects to the Intercreditor Agreement).  The Prepetition ABL Indemnity Reserve shall in no event be junior to the DIP Liens or the Tern Loan Adequate Protection Liens or the Carve Out.  The Prepetition ABL Agent may apply amounts in the Prepetition ABL Indemnity Reserve against the Prepetition ABL Indemnity Obligations as and

when they arise, without further notice to or consent from the Debtors, a Committee (if appointed), or any other parties in interest and without further order of this Court; *provided*, that (i) any such indemnification claims shall be subject to (a) the terms of the Prepetition ABL Documents (including with respect to application of proceeds) and (b) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with paragraph 45 hereof, and (ii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).  Until the occurrence of the ABL Lien Release Date, the Prepetition ABL Agent (for itself and on behalf of the Prepetition ABL Parties) shall retain and maintain the Prepetition ABL Liens granted to the Prepetition ABL Agent, including without limitation as security for the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Reserve.  The Prepetition ABL Indemnity Reserve shall be released and the funds applied in accordance with paragraph 25 of this Interim Order upon the occurrence of the ABL Lien Release Date and the receipt by the Prepetition ABL Agent and the Prepetition ABL Lenders of releases from the Debtors and their estates (including any applicable liquidator), with respect to any claims arising out of or related to the Prepetition ABL Agreement and the Prepetition ABL Documents, acceptable to the Prepetition ABL Agent and each other Prepetition ABL Lender in their sole discretion.

20.    <u>Adequate Protection Payments and Protections for Prepetition Term Loan Parties</u>.  As further adequate protection (the "<u>Prepetition Term Loan Adequate Protection Payments</u>," and together with the Prepetition ABL Adequate Protection Payments, the "<u>Adequate Protection Payments</u>"), the Debtors are authorized and directed to provide adequate protection to the Prepetition Term Loan Parties in the form of payment in cash, without the need

for the filing of formal fee applications: (i) so long as any Prepetition Term Loan Obligations remain outstanding after entry of this Interim Order, interest (at the default rate set forth in Section 2.07 of the Prepetition Term Loan Agreement) and principal due under the Prepetition Term Loan Agreement, subject to the rights preserved in paragraph 45 below, (ii) contemporaneously with the Closing Date, the reasonable and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Parties arising prior to the Petition Date,; and (iii) the reasonable, and documented fees, out-of-pocket expenses, and disbursements (including the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third-party consultants, and other vendors) incurred by the Prepetition Term Loan Parties arising subsequent to the Petition Date in accordance with the provisions of paragraph 38 of this Interim Order.

21.    <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Parties are adequately protected.  Further, this Interim Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

**Provisions Common to DIP Financing
<u>and use of Cash Collateral</u>**

22.    <u>Amendment of the DIP Documents</u>.  The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto, subject to the approval of the Debtors and the DIP Agent.  Further order of the Court shall not be required if such amendment, modification, or supplement is (a) non-material and (b) in accordance with the DIP Documents.  In the case of a material amendment, modification, or supplement to the DIP Documents, the Debtors shall provide notice (which may be provided through electronic mail) to counsel to a Committee (if appointed), the U.S. Trustee, and, until the ABL Lien Release, the Prepetition ABL Agent (collectively, the "<u>Notice Parties</u>") promptly upon the effectiveness of such amendment, modification, or supplement; *provided*, *however*, that approval of the Court will be necessary to effectuate any such amendment, modification or supplement; and *provided further* that such amendment, modification, or supplement shall be without prejudice to the right of any party in interest to be heard.

23.    <u>Modification of Automatic Stay</u>.    The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including to: (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claims, and the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Loan Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, the DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility, and this Interim Order; and (d) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

24. <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Loan Agent is authorized to file, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Loan Agent all such financing statements, mortgages, notices, and other documents as the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Loan Agent may reasonably request.  Each of the DIP Agent, the Prepetition ABL Agent and the Prepetition Term Loan Agent, in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of

deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.  To the extent that the Prepetition ABL Agent or the Prepetition Term Loan Agent is the secured party under any security agreement, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Documents or is listed as loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the secured party or mortgagee, as applicable, under such documents or to be the loss payee or additional insured, as applicable.  The Prepetition Term Loan Agent shall serve as agents for the DIP Agent for purposes of perfecting the DIP Agent's liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Interim Order, is of a type such that perfection of a lien therein may be accomplished only by possession or control by a secured party.

25.    _Application of Proceeds of Collateral_.  As a condition to the entry of the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply all net proceeds of Prepetition Collateral and DIP Collateral, whether received by the Debtor pursuant to the Agency Agreement, sold in the ordinary course, or otherwise, as follows: (a) with respect to all payments received under the Agency Agreement, as set out in paragraph 26 of this Interim Order; and (b) after Payment in Full of the ABL Obligations by the ABL Payment Date,, as provided in the DIP Agreement in accordance with the Budget.

26.    _Payments Received Pursuant to the Agency Agreement._   All payments received pursuant to the Agency Agreement shall be made as follows: (a) within one (1) business

40

day of entry of the Approval Orders, to the Prepetition ABL Agent in an amount sufficient for Payment in Full of the Prepetition ABL Obligations; (b) following Payment in Full of the Prepetition ABL Obligations, to the Debtors for use in accordance with the Budget.

27.    <u>US Letter of Credit</u>.    Until the payment of the Initial US Guaranty Payment (as defined in the Agency Agreement), the US Letter of Credit posted by the Agent (each as defined in the Agency Agreement) shall constitute ABL Priority Collateral and, in the event that there has not been Payment in Full of the Prepetition ABL Obligations by the ABL Payment Date, the Prepetition ABL Agent shall be entitled to draw on the US Letter of Credit and apply the proceeds for Payment in Full of the Prepetition ABL Obligations.

28.    <u>Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties</u>.

(a)    Unless the DIP Agent and the Prepetition Agents shall have provided their prior written consent, or until the Payment in Full of all Prepetition ABL Obligations, the indefeasible payment in full of all DIP Obligations and all Prepetition Term Loan Obligations (excluding contingent indemnification obligations for which no claim has been asserted), there shall not be entered in any of these Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following (unless such order provides for the simultaneous satisfaction of such obligations): (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or the Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Prepetition Adequate Protection Liens, and/or the Adequate Protection Superpriority Claims

41

except as expressly set forth in this Interim Order or the DIP Documents; (ii) the use of Cash Collateral for any purpose other than as permitted in the Budget (subject to Permitted Variances) and this Interim Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of any of the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' rights under this Interim Order, the DIP Documents or the Prepetition Documents with respect any DIP Obligations or Prepetition Secured Obligations.

(b)      The Debtors (and or their legal and financial advisors in the case of clauses (ii) through (iv) below), will, until the indefeasible payment in full in cash of the DIP Obligations and all Prepetition Term Loan Obligations (excluding contingent indemnification obligations for which no claim has been asserted) and the Payment in Full of the Prepetition ABL Obligations, as applicable (i) maintain books, records, and accounts to the extent and as required by the DIP Documents and the Prepetition ABL Documents (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the Prepetition ABL Agent all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by either of the DIP Agent or the Prepetition ABL Agent) to provide under the DIP Documents, the provisions of this Interim Order, or, until the Payment in Full of the Prepetition ABL Obligations, the Prepetition ABL Documents; (iii) upon reasonable advance notice and subject to the terms of the Agency Agreement, permit the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, the Prepetition Term Agent, and their respective consultants, advisors and other representatives

42

(including third party representatives) to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants, and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Documents; (iv) permit the DIP Agent, the Prepetition ABL Agent, the Prepetition Term Agent, and their respective consultants, advisors and other representatives (including third party representatives) to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and assets; and (v) upon reasonable advance notice, and subject to the terms of the Agency Agreement, permit the DIP Agent and the Prepetition ABL Agent to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the Collateral in accordance with the DIP Documents and the Prepetition Documents.

(c)    No Debtor shall object to any DIP Lenders or any Prepetition Secured Parties credit bidding up to the full amount of the applicable outstanding DIP Obligations, the Prepetition ABL Obligations (as applicable), and the Prepetition Term Loan Obligations (as applicable), in each case including any accrued interest, fees (including prepayment premiums and/or make wholes) and expenses, in any sale of any Collateral, as applicable, whether such sale is effectuated through section 363 or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

29.    <u>Credit Bidding</u>.    Subject to paragraph 45, in connection with any sale
process authorized by the Court or otherwise, the DIP Agent, the DIP Lenders, and the
Prepetition Secured Parties may credit bid up to the full amount of the applicable outstanding
DIP Obligations or Prepetition Secured Obligations for their respective priority collateral, in
each case including any accrued interest, fees (including any prepayment premium or make
whole) and expenses (each a "<u>Credit Bid</u>"), whether such sale is effectuated through section 363
or section 1129 of the Bankruptcy Code, by a Chapter 7 trustee under section 725 of the
Bankruptcy Code, subject in each case to the rights and duties of the parties under the
Intercreditor Agreement and Prepetition Documents and to the provision of consideration
sufficient to pay in full in cash any senior liens on the collateral that is subject to the credit bid.
Each of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be considered
a "Qualified Bidder" under IP and Online Business Bid Procedures Motion (as defined in the
DIP Agreement) and any other bid procedures motion with respect to its rights to acquire all or
any of the assets by Credit Bid.

30.    <u>Proceeds of Subsequent Financing</u>.    If the Debtors, any trustee, any
examiner with expanded powers, or any responsible officer subsequently appointed in these
Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code
sections 364(b), 364(c), or 364(d) or in violation of the DIP Documents at any time prior to the
Payment in Full of the Prepetition ABL Obligations and the indefeasible repayment in full of all
DIP Obligations and all Prepetition Term Loan Obligations and the termination of the lending
commitments under the DIP Facility, including subsequent to the confirmation of any plan with
respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by
any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately

be turned over to the DIP Agent or the Prepetition ABL Agent, as applicable, to be applied in accordance with this Interim Order, the DIP Documents and the Prepetition ABL Documents, as applicable.

31.    <u>Cash Collection</u>.

(a)    Subject to Payment in Full of the ABL Obligations by the ABL Payment Date, from and after the date of the entry of this Interim Order and until the end of the Specified Period, all collections and proceeds of any Collateral shall be used in accordance with the Budget.

(b)    Notwithstanding anything in this Interim Order to the contrary, in accordance with the terms of the DIP Agreement, upon any draw under the DIP Facility, the DIP Lenders shall deposit the proceeds of the New Money DIP Loans into one or more segregated deposit account furnished by a depository bank acceptable to the DIP Agent and such account shall be in the name of the DIP Agent subject to the sole dominion and control of the DIP Agent (each such account, a "<u>DIP Funding Account</u>"; and collectively, the "<u>DIP Funding Accounts</u>"). The DIP Funding Accounts shall not be subject to a security interest or a lien in favor of the Prepetition ABL Parties.  The Debtors' use of the proceeds in the DIP Funding Accounts shall be subject to and limited to the express purposes specified in this Interim Order and the DIP Documents.   The Debtors may make weekly withdrawals from the DIP Funding Accounts subject to the conditions set forth in the DIP Agreement and this Interim Order, which proceeds shall be deposited into one or more the Segregated Operating Accounts (as defined in the DIP Agreement) for use by the Borrowers.

(c)    From and after the date of the entry of this Interim Order, all (x) collections and proceeds of any Term Priority Collateral or services provided by any Debtor that

shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, and (y) solely after the Payment in Full of the Prepetition ABL Obligations, all collections and proceeds from ABL Priority Collateral, shall in each case promptly be deposited into the Segregated Operating Account, which shall be subject to the sole dominion and control of the DIP Agent.  The Debtors' use of the proceeds in the Segregated Operating Account shall be subject to this Interim Order and the DIP Documents.

32.     <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full of all DIP Obligations, all Prepetition Secured Obligations, and the termination of the DIP Agent's and the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Documents, as applicable, (b) maintain the cash management system in effect as of the Petition Date, as modified by this Interim Order and any Cash Management Order that has been agreed to by the Prepetition ABL Agent and the DIP Agent and (c) and shall otherwise maintain the DIP Collateral in accordance with the terms of the DIP Documents.

33.     <u>DIP Termination Date</u>.  On the DIP Termination Date (as defined herein): (a) all DIP Obligations shall be immediately due and payable, all lending commitments under the DIP Facility will terminate, other than as required in paragraph 42 with respect to the Carve Out, and the DIP Agent shall be entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim Order (including paragraph 36); and (b) all authority to use Cash Collateral shall cease, *provided*, *however*, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll and other expenses that the Prepetition ABL Agent approves as critical to the administration of the Debtors' estates in accordance with the Budget as determined by the Prepetition ABL Agent in its sole discretion.

For the purposes of this Interim Order, the "<u>DIP Termination Date</u>" shall mean the "DIP Termination Date" as defined in the DIP Agreement.

34.    <u>Events of Default</u>.  The occurrence of any of the following events, unless waived by the DIP Agent or the Prepetition ABL Agent, each in its sole discretion, in writing, shall constitute an event of default (collectively, the "<u>Events of Default</u>"):

(a)    if there has not been Payment in Full of the Prepetition ABL Obligations by the ABL Payment Date;

(b)    the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order and such failure remains uncured for three (3) days after notice to the Debtors thereof;

(c)    the occurrence of an "Event of Default" under the DIP Agreement unless such "Event of Default" has been waived or cured in accordance with the terms of the DIP Agreement;

(d)    the failure of the Debtors to comply with any of the milestones set out in Section 6.19 of the DIP Agreement;

(e)    the obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest, mortgage or other lien on all or any portion of the Collateral which is equal or senior to any security interest, mortgage or other lien of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, or (ii) entitled to priority administrative status which is equal or senior to that granted to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in this Interim Order unless such credit or indebtedness is used to repay in full such obligations;

(f)    this Court enters judgment in favor of the plaintiff or movant in a

timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal;

(g)     any lien or security interest purported to be created under the Prepetition Documents shall cease to be, or shall be asserted by any Debtors not to be, a valid and perfected lien on or security interest in any Collateral, with the priority required by the Prepetition Documents or this Interim Order;

(h)     the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code: (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral (other than a Permitted Prior Lien), or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority;

(i)     any of the Debtors' return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code;

(j)     reversal, vacatur, or modification (without the express prior written consent of the Prepetition ABL Agent or the DIP Agent, each in its sole discretion) of this Interim Order;

(k)     dismissal of the Cases or conversion of the Cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner with enlarged powers or other responsible person;

(l)     any material misrepresentation of fact made after the Petition Date by any of the Debtors or their agents to the Prepetition ABL Agent or the DIP Agent (or to their respective agents) about the financial condition of the Debtors, or the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral;

48

(m)    a default by any of the Debtors in reporting financial information as and when required under this Interim Order and such failure remains uncured for three (3) days after notice to the Debtors thereof;

(n)    the sale of any portion of any of the Debtors' assets outside the ordinary course of business without the prior written consent of the Prepetition ABL Agent (until the ABL Lien Release Date has occurred) or the DIP Agent other than pursuant to the Agency Agreement, the IP and Online Business Sale (as defined in the DIP Agreement), and the Lease Sale (as defined in the DIP Agreement), as applicable;

(o)    any default under, modification of or termination of the Agency Agreement or Approval Orders (as defined in the Agency Agreement), without the prior written waiver of or agreement to such default, modification or termination by the Prepetition ABL Agent;

(p)    the Debtors' failure to meet any of the milestones set out in paragraph 35 of this Interim Order.

35.    <u>Milestones</u>.    As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the following milestones

(a)    entry of the Approval Orders (as defined in the Agency Agreement) by January 19, 2019;

(b)    commencement of the Sale (as defined in the Agency Agreement) by January 20, 2019;

(c)    entry of an order approving a stalking horse bid for the Debtors' intellectual property and E-commerce platform by January 30, 2019;

(d)    entry of the Final Order within thirty-five (35) days of the Petition

Date; and

(e)        the milestones set out in Section 6.19 of the DIP Agreement.

36.    <u>Rights and Remedies Upon Event of Default</u>.    Immediately upon the occurrence and during the continuation of an Event of Default under this Interim Order, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Interim Order (and the Remedies Notice Period) (a) the DIP Agent may declare (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve Out has occurred through the occurrence of a Trigger Event to the Debtors; and (b) the Prepetition ABL Agent may declare (i) a termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, and (ii) that the application of the Carve Out has occurred through delivery of the occurrence of a Trigger Event (a declaration issued under either (a) or (b) shall be referred to herein as a "<u>Termination Declaration</u>", and the date which is the earliest to occur of any such date a Termination Declaration is delivered and the DIP Termination Date shall be referred to herein as the "<u>Termination Date</u>").    The Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Prepetition ABL Agent, counsel to a Committee (if appointed), and the U.S. Trustee.    The automatic stay in the Cases otherwise applicable to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties is hereby modified so that three (3) business

days after the date a Termination Declaration is delivered (the "Remedies Notice Period"): (a) the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the respective DIP Documents and this Interim Order to satisfy the relevant DIP Obligations, DIP Superpriority Claim, and DIP Liens; (b) the applicable Prepetition Secured Parties shall be entitled to exercise their rights and remedies in accordance with the applicable Prepetition Documents and this Interim Order to satisfy the relevant Prepetition Secured Obligations, Adequate Prepetition Superpriority Claims, and Prepetition Adequate Protection Liens.  During the Remedies Notice Period, the Debtors and/or a Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing, and the Debtors hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.  Unless the Court orders otherwise, the automatic stay, as to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period as set forth in this paragraph without further notice or order.  Upon expiration of the Remedies Notice Period, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein, in the DIP Documents, the Prepetition Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with the Intercreditor Agreement and this Interim Order.  Until the Payment in Full of the Prepetition ABL Obligations, any exercise of remedies by the DIP Agent, the DIP Lenders and the Prepetition Term Loan Parties with respect to the ABL Priority Collateral, shall be in accordance with the Intercreditor Agreement and this

Interim Order.  Upon the occurrence and during the continuation of an Event of Default, the

Prepetition ABL Agent, any liquidator or professional retained by the Prepetition ABL Agent

and/or approved by the Court, or, solely after Payment in Full of the Prepetition ABL

Obligations, the DIP Agent, shall have the right to access and utilize, at no cost or expense, any

trade names, trademarks, copyrights or other intellectual property and any warehouse,

distribution centers, store or other locations to the extent necessary or appropriate in order to sell,

lease or otherwise dispose of any of the ABL Priority Collateral, including pursuant to any Court

approved sale process.

37.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No
Modification or Stay of this Interim Order</u>.  The DIP Agent, the DIP Lenders, and the Prepetition

Secured Parties have acted in good faith in connection with this Interim Order and are entitled to

rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code.  Based

on the findings set forth in this Interim Order and the record made during the Interim Hearing,

and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the

provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent

order of this Court or any other court, the DIP Agent, the DIP Lenders, and the Prepetition

Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

Any such modification, amendment or vacatur shall not affect the validity and enforceability of

any advances previously made or made hereunder, or lien, claim, or priority authorized or

created hereby; provided that the Roll-Up DIP Loans are subject to paragraph 45 of this Interim

Order.

38.     <u>DIP and Other Expenses</u>. The Debtors are authorized and directed to pay

all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of

the DIP Agent, the DIP Lenders and the Prepetition ABL Agent in connection with the DIP Facility, the use of Cash Collateral, and the negotiation of this Interim Order, whether or not the transactions contemplated hereby are consummated, including attorneys' fees, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses.  Payment of all such fees and expenses shall not be subject to allowance by the Court.  Professionals for the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be required to comply with the U.S. Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine) to the U.S. Trustee and counsel for a Committee (if appointed) contemporaneously with the delivery of such summary invoice to the Debtors.  Any objections raised by the Debtors, the U.S. Trustee or a Committee (if appointed) with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.  Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date all reasonable and documented fees, costs, and out-of-pocket expenses of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties incurred on or prior to such date without the need for any professional engaged by the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to first deliver a copy of

its invoice as provided for herein.  No attorney or advisor to the DIP Agent, the DIP Lenders or

any Prepetition Secured Party shall be required to file an application seeking compensation for

services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses

paid prior to the Petition Date by any of the Debtors to the (i) DIP Agent or DIP Lenders in

connection with or with respect to the DIP Facility; and (ii) Prepetition Secured Parties in

connection or with respect to these matters, are hereby approved in full.

       39.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless (a) the

DIP Agent and the DIP Lenders in accordance with the terms and conditions of the DIP

Agreement, (b) the Prepetition ABL Parties in accordance with the terms and conditions of the

Prepetition ABL Documents, and (c) the Prepetition Term Loan Parties in accordance with the

terms and conditions of the Prepetition Term Loan Documents.

       40.    <u>Proofs of Claim</u>.  Notwithstanding any order entered by this Court in

relation to the establishment of a bar date in any of the Cases or any Successor Cases to the

contrary, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties will not be

required to file proofs of claim in any of the Cases or Successor Cases for any claims arising

under the DIP Documents or the Prepetition Documents.  The Debtors' stipulations, admissions,

and acknowledgments and the provisions of this Interim Order shall be deemed to constitute a

timely filed proof of claim for the Prepetition Agents, DIP Agent, the DIP Lenders and the

Prepetition Secured Parties with regard to all claims arising under the DIP Documents or the

Prepetition Documents.  Notwithstanding the foregoing, each of (a) the Prepetition ABL Agent

on behalf of itself and the Prepetition ABL Parties and (b) the Prepetition Term Loan Agent on

behalf of itself and the Prepetition Term Loan Parties is hereby authorized and entitled, in its sole

discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim

and/or aggregate or master proofs of claim in each of the Cases or Successor Cases for any claim described herein (with any such aggregate or master proof of claim filed in the Cases deemed to be filed in all Cases of the Debtors and asserted against all of the Debtors).  Any proof of claim filed by the Prepetition ABL Agent or Prepetition Term Loan Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Parties or Prepetition Term Loan Parties, respectively.  Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall provide that none of the DIP Agents, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Parties shall be required to file a proof of claim.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

41.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent (and so long as an Event of Default has occurred and is continuing, each DIP Lender), and the Prepetition ABL Agent reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and Prepetition Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent (and so long as an Event of Default has occurred and is continuing, each DIP Lender) and the Prepetition ABL Agent all such information as may be reasonably requested with respect to the business, results of operations

and financial condition of any of the Debtors.

      42.    <u>Carve Out</u>.

      (a)    *Carve-Out.*  As used in this Interim Order, the "Carve-Out" means, after the earliest of the following (the "<u>Trigger Event</u>") (1) delivery of a written notice by the DIP Agent or the Prepetition ABL Agent to the Debtors, the U.S. Trustee and counsel to a Committee (if appointed) following the occurrence and during the continuation of an Event of Default under this Interim Order, expressly stating that the Wind-Down Carve-Out Amount (as defined herein) is invoked (the "<u>Carve-Out Trigger Notice</u>"), (2) the closing of a Credit Bid and (3) the maturity of the DIP Facility, the following expenses: (a) without duplication, the payment of allowed and unpaid professional fees and disbursements incurred in connection with the Cases by professionals to the Debtors and any statutory committee retained pursuant to section 327 and 1103 of the Bankruptcy Code (the "<u>Case Professionals</u>"), in each case, without duplication of any unapplied retainers that may be held by the applicable professionals, in an aggregate amount not in excess of $1,250,000 (the "<u>Wind-Down Carve-Out Amount</u>"), plus all unpaid professional fees and disbursements incurred prior to the occurrence of the Trigger Event to the extent allowed by the Court at any time, but solely to the extent the same are incurred in accordance with the Budget, including any Permitted Variance thereto the "<u>Allowed Professional Fees</u>"), (b) the payment of fees to the Clerk of the Court and all statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. §3717,(c) fees and expenses up to $10,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, and (d) any accrued but unpaid amounts owed by the Debtors to any current or former employee in respect of paid leave and flexible time off solely to the extent that such amounts are set forth in the Budget and any Permitted Variance thereto (the amounts set forth in this subclause (d), the "<u>Supplemental Carve-</u>

Out Amount", and the amounts set forth in subclauses (a) through (c), the "Base Carve-Out Amount"). Notwithstanding the foregoing, so long as no Carve-Out Trigger Notice has been issued by the DIP Agent or the Prepetition ABL Agent, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, but solely to the extent the same are incurred in accordance with the Budget and any Permitted Variance thereto, as the same may be due and payable and otherwise allowed and payable by final order of the Court, and the same shall not reduce the Wind-Down Carve-Out Amount. No portion of the Carve-Out may be used in contravention of the restrictions or the limitations on the use of the Carve-Out set forth in this Interim Order.

(b)     *Fee Reserve Account.* The Debtors shall, contemporaneously with each withdrawal from the DIP Funding Accounts transfer cash proceeds from the DIP Facility or cash-on hand in an amount equal to the total budgeted weekly fees of the Case Professional for the next unfunded week set forth in the Budget into a segregated account not subject to the control of the DIP Agent, the DIP Lender, any Prepetition Agent or an Prepetition Lender (the "Fee Reserve Account"). Upon the Trigger Event, the Debtors shall utilize all cash on hand to transfer to the Fee Reserve Account cash in an amount equal to all remaining unfunded portions of the Base Carve-Out Amount as provided herein. Following the occurrence of the Trigger Event and the transfer set forth in the prior sentence, the DIP Agent shall deposit into the Fee Reserve Account any cash swept or foreclosed upon (including cash received as a result of the sale or other disposition of any assets) or contained in the DIP Funding Accounts until the Fee Reserve Account has been fully funded in an amount equal to all remaining unfunded portions of the Base Carve-Out Amount as provided herein. In the event the Fee Reserve Account has not been fully funded by the actions in the prior sentences, the Prepetition ABL Agent shall transfer

any cash in accounts over which it has dominion and control (other than funds serving as cash collateral) to the Fee Reserve Account in the amount of any such funding shortfall.  Funds in the Fee Reserve Account shall be held in trust to pay the fees of Case Professionals and, after the occurrence of the Trigger Event as set forth above, to pay all amounts included in the Base Carve-Out Amount. The Debtors shall be authorized to use funds held in the Fee Reserve Account to pay fees of Case Professionals as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of the Court; provided that the Debtors' obligations to pay allowed fees of Case Professionals shall not be limited or be deemed limited to funds held in the Fee Reserve Account.

(c)      *Supplemental Carve Out Reserve Account.*  Upon the occurrence of the Trigger Event, the DIP Lenders shall fund an amount equal to the Supplemental Carve-Out Amount (which amount shall be added to the DIP Obligations but will not be limited by the availability under the DIP Facility) that shall be deposited into a segregated account of the Debtors not subject to the control of the DIP Agent, the DIP Lender, any Prepetition Agent or an Prepetition Lender (the "Supplemental Carve-Out Reserve Account").    Funds in the Supplemental Carve-Out Reserve Account shall be used to pay any accrued but unpaid amounts owed by the Debtors to any current or former employee in respect of paid leave and flexible time off; provided that the Debtors' obligations to pay such amounts shall not be limited or be deemed limited to funds held in the Supplemental Carve-Out Reserve Account.

(d)      *No Direct Obligation to Pay Professional Fees.*  Neither the DIP Agent, the DIP Lenders, the Prepetition Agents nor the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of

the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, in any way to pay compensation to or to reimburse expenses of any Case Professionals, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)     *Payment of Carve-Out After Trigger Event.*  Any payment or reimbursement made on or after the occurrence of the Trigger Event in respect of any Allowed Professional Fees shall permanently reduce the Wind-Down Carve-Out Amount on a dollar-for-dollar basis.  Any funding of the Carve-Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code and applicable law.

43.     <u>Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out</u>.  The DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral and the Carve Out may not be used in connection with: (a) except to contest the occurrence of an Event of Default, preventing, hindering, or delaying any of the DIP Agent's, the DIP Lenders', or the Prepetition Secured Parties' enforcement or realization upon any of the Collateral; (b) using or seeking to use Cash Collateral except as provided for in this Interim Order; (c) selling or otherwise disposing of ABL Priority Collateral without the consent of the Prepetition ABL Agent or DIP Collateral (excluding ABL Priority Collateral until Payment in Full of the Prepetition ABL Obligations) without the consent of the DIP Agent; (d) using or seeking to use any insurance proceeds constituting DIP Collateral except as provided for in this Interim Order without the consent of the DIP Agent or the Prepetition ABL Agent; (e) incurring indebtedness without the prior consent of the DIP Agent or the Prepetition ABL Agent; (f) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties

under this Interim Order, the DIP Documents, or the Prepetition Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; (g) objecting to or challenging in any way the DIP Liens, the DIP Obligations, the Prepetition Liens, the Prepetition Secured Obligations, the DIP Collateral (including Cash Collateral) or, as the case may be, the Prepetition Collateral, or any other claims or liens, held by or on behalf of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, respectively; (h) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including any actions under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions to recover or disgorge payments, against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, consultants, professionals, officers, directors, and employees; (i) litigating, objecting to, challenging, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Liens, the Prepetition Secured Obligations or any other rights or interests of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties; or (j) seeking to subordinate, recharacterize, disallow or avoid the DIP Obligations or the Prepetition Secured Obligations; *provided*, *however*, that the Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed, subject to the Final Order, $50,000 in the aggregate (the "Investigation Budget Amount"), incurred solely by a Committee (if appointed), in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens prior to the Challenge Deadline.

44.     Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Professional Person or shall affect

the right of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.  So long as an unwaived Event of Default has not occurred, the Debtors shall be permitted to pay fees and expenses allowed and payable by final order (that has not been vacated or stayed, unless the stay has been vacated) under sections 328, 330, 331, and 363 of the Bankruptcy Code, as the same may be due and payable, as reflected in the most recent Budget provided by the Debtors to the DIP Agent (subject to any Permitted Variances).

45.    <u>Effect of Stipulations on Third Parties</u>.

(a)    *Generally*.  The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "<u>Prepetition Lien and Claim Matters</u>") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including a Committee (if appointed), unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 45) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "<u>Challenge</u>") by the earlier of (A) two days prior to the date of entry of an order approving the sale of substantially all of the Debtors' assets or a Confirmation Order, and (B) no later than (1) for a Committee, (if appointed), sixty (60) days from the date of formation of a Committee (if

appointed), or (2) seventy-five (75) days following the entry of the Interim Order for any other

party in interest with requisite standing (the earlier to occur of (A) and (B), the "Challenge

Deadline"), as such applicable date may be extended in writing from time to time in the sole

discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Documents) and

the Prepetition Term Loan Agent (with respect to the Prepetition Term Loan Documents), or by

this Court for good cause shown pursuant to an application filed by a party in interest prior to the

expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff

or movant in any such timely and properly commenced Challenge proceeding and any such

judgment has become a final judgment that is not subject to any further review or appeal.

(b)     *Binding Effect*.  To the extent no Challenge is timely and properly

commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final

and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien

and Claim Matters, then, without further notice, motion, or application to, order of, or hearing

before, this Court and without the need or requirement to file any proof of claim, the Prepetition

Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and

final on any person, entity, or party in interest in the Cases, and their successors and assigns, and

in any Successor Case for all purposes and shall not be subject to challenge or objection by any

party in interest, including a trustee, responsible individual, examiner with expanded powers, or

other representative of the Debtors' estates.  Notwithstanding anything to the contrary herein, if

any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters

shall nonetheless remain binding on all other parties in interest and preclusive as provided in

subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters

is expressly the subject of a timely and properly filed Challenge, which Challenge is successful

as set forth in a final judgment as provided in subparagraph (a) above, and only as to plaintiffs or movants that have complied with the terms hereof. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the Prepetition Documents in defending themselves in any such proceeding as adequate protection.

46.     <u>Letters of Credit; Cash Management, Bank Product and Treasury Obligations</u>. All letters of credit issued for the account of the Debtors under the Prepetition ABL Agreement shall (a) continue in place, (b) be secured by the Prepetition ABL Liens, the Prepetition ABL Adequate Protection Liens, and the Prepetition ABL Indemnity Reserve, and (c) be cash collateralized in an amount equal to 105% of the face amount thereof. Letters of credit and any other cash management, bank product and treasury obligations shall be cash collateralized by the Initial Guaranty Amount and the remaining balance of the Guaranteed Amount, and such cash collateral shall not be subject to or subordinate to the Carve Out.

47.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

48.     <u>Section 506(c) Claims</u>.  Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP

Agent, DIP Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition

Term Loan Agent or the Prepetition Term Loan Lenders, as applicable, and no such consent shall

be implied from any other action, inaction, or acquiescence by any such agents or lenders.

49.    <u>No Marshaling/Applications of Proceeds</u>.    Subject to entry of a Final

Order, the DIP Agent, DIP Lenders, the Prepetition ABL Agent, the Prepetition ABL Lenders,

the Prepetition Term Loan Agent and the Prepetition Term Loan Lenders shall not be subject to

the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the

DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received

and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other

agreement or provision to the contrary.

50.    <u>Section 552(b)</u>.    Subject to entry of a Final Order, the Prepetition ABL

Agent, the Prepetition ABL Lenders, the Prepetition Term Loan Agent and the Prepetition Term

Loan Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the

Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the

Bankruptcy Code shall not apply to the Prepetition ABL Agent, the Prepetition ABL Lenders,

the Prepetition Term Loan Agent or the Prepetition Term Loan Lenders, with respect to

proceeds, product, offspring or profits of any of the Prepetition Collateral.

51.    <u>Access to DIP Collateral</u>.    Upon expiration of the Remedies Notice Period,

the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall be permitted to (a)

access and recover any and all Collateral, and (b) enter onto any leased premises of any Debtor

and exercise all of the Debtors' rights and privileges as lessee under such lease in connection

with an orderly liquidation of the Collateral, <u>provided</u>, that in the case of clause (b), the DIP

Agent, the DIP Lenders and/or the Prepetition Secured Parties can only enter upon a leased

premises after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, as applicable, and any applicable landlord, (ii) pre-existing rights of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, as applicable, and any applicable landlord under applicable non-bankruptcy law, (iii) consent of the applicable landlord, or (iv) entry of an order of this Court obtained by motion of the applicable DIP Agent, DIP Lender, or Prepetition Secured Party on such notice to the landlord as shall be required by this Court; provided, however, solely with respect to rent due to a landlord of any such leased premises, the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties, as applicable, shall be obligated only to reimburse the Debtors for the payment of rent of the Debtors that first accrues after delivery of the Termination Declaration in accordance with paragraph 36 herein that that is payable during the period of such occupancy by the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties, as applicable, calculated on a daily per diem basis; provided, further, that nothing herein shall relieve the Debtors of their obligations pursuant to section 365(d)(3) of the Bankruptcy Code for the payment of rent that accrues prior to delivery of the Termination Declaration through and including any assumption and/or rejection of any lease.  Nothing herein shall require the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to assume any lease as a condition to the rights afforded in this paragraph.

52.    Limits on Lender Liability.  Subject to entry of a Final Order, nothing in this Interim Order, any of the DIP Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the

administration of these Cases.  The DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Interim Order or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

53.    <u>Insurance Proceeds and Policies</u>.  Upon entry of this Interim Order and to the fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Lenders), the Prepetition ABL Agent (on behalf of the Prepetition ABL Lenders), and the Prepetition Term Loan Agent (on behalf of the Prepetition Term Loan Lenders), shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral or the Prepetition Collateral.

54.    <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations in accordance with the terms hereof and of the DIP Facility and the DIP Documents.

55.    <u>Collateral Access</u>.  Until the Payment in Full of the Prepetition ABL Obligations, and subject in all respects to the Intercreditor Agreement, the Debtors, the

Prepetition ABL Agent, any liquidator or professional retained by the Prepetition ABL Agent and/or approved by the Court, or, solely after Payment in Full of the Prepetition ABL Obligations, the DIP Agent, shall have the right to access and utilize, at no cost or expense, any trade names, trademarks, copyrights or other intellectual property, any warehouse, distribution centers, store or other locations, FF&E, and all other Term Priority Collateral to the extent necessary or appropriate in order to sell, lease or otherwise dispose of any of the ABL Priority Collateral, including pursuant to any Court-approved sale process.

56.    <u>No Superior Rights of Reclamation</u>.    Based on the findings and rulings herein regarding the continuing nature of the Prepetition Liens and the integrated nature of the DIP Facility and the relation back of the DIP Liens, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens or the Prepetition Liens.

57.    <u>Rights Preserved</u>.    Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the Prepetition Documents and the Intercreditor Agreement: (a) the DIP Agent's, the DIP Lenders' and the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the DIP Agent, the DIP Lenders, and/or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges

(whether legal, equitable or otherwise) of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Committee's (if appointed), or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.  Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Debtors' Chapter 11 cases.

58.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, a Committee (if appointed), or any party in interest.

59.    <u>Binding Effect of Interim Order</u>.  Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, all other creditors of any of the Debtors, any Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

60.    <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations and (other than contingent obligations with respect to then unasserted claims) have been

indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the DIP Agent (or the Prepetition Agents), (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or Adequate Protection Superpriority Claims, other than the Carve Out; (b) without the prior written consent of the DIP Agent (or the Prepetition Agents) for any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) resulting from Collateral; (c) without the prior written consent of the DIP Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Agents, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent (or the Prepetition Agents), and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agents.

61.    Continuing Effect of Intercreditor Agreement.  The Debtors, DIP Agent, DIP Lenders, and Prepetition Secured Parties each shall be bound by, and in all respects of the

DIP Facility shall be governed by, and be subject to all the terms, provisions and restrictions of the Intercreditor Agreement.

62.     Interim Order Controls.   In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

63.     Discharge.   The DIP Obligations, and the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan of reorganization, or each of the DIP Agent, the DIP Lenders, the Prepetition ABL Agent and Prepetition Term Loan Agent, as applicable, has otherwise agreed in writing.   None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the Payment in Full of the Prepetition ABL Obligations (in the case of the sale of ABL Priority Collateral), the indefeasible payment in full of all DIP Obligations (other than contingent indemnification obligations for which no claim has been asserted) (in the case of the sale of Term Priority Collateral), and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "Prohibited Plan or Sale") without the written consent of each of the DIP Agent, the DIP Lenders, the Prepetition ABL Agent and the Prepetition Term Loan Agent, as applicable.   For the avoidance of doubt, the Debtors' proposal

or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

64.    <u>Survival</u>.   The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.   The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such orders described in (a)-(d), above, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until: (i) in respect of the Prepetition ABL Facility, there has been Payment in Full of all the Prepetition ABL Obligations (other than contingent obligations with respect to then unasserted claims); (ii) in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted); and (iv) in respect of the Prepetition Term Loan Agreement, all of the Prepetition Term Loan Obligations pursuant to the Prepetition Term Loan Documents and this Interim Order have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted).   The terms and provisions concerning the indemnification of the DIP Agent and the DIP Lenders shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents

and/or the indefeasible repayment of the DIP Obligations.  In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Term Loan Parties notwithstanding the Payment in Full of the Prepetition ABL Obligations.

65.    <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **February 15, 2019, at 10:00 a.m. (EST)** before the Honorable Keith L. Phillips, United States Bankruptcy Judge at the United States Bankruptcy Court for the Eastern District of Virginia.  On or before January 22, 2019, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Committee (if appointed); (d) the Securities and Exchange Commission; and (e) the Internal Revenue Service.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on **February 8, 2019, at 4:00 p.m. (EST)**, which objections shall be served so as to be received on or before such date by: (i) counsel to the Debtors, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, New York 1005-1413, Attn: Evan R. Fleck and Michael W. Price and co-counsel to the Debtors, Kutak Rock LLP, 901 E. Byrd St., Suite 1000, Richmond, VA 23219, Attn: Michael A. Condyles, Peter J. Barrett, Jeremy S. Williams, and Brian H. Richardson ; (ii) counsel to the Prepetition ABL Agent, Morgan Lewis & Bockius LLP, One Federal Street, Boston, Massachusetts 02110, Attn: Julia Frost-Davies and Amelia C. Joiner, and Hunton & Williams LLP, Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219, Attn: Tyler P. Brown and Justin Paget; (iii) counsel to the

DIP Agent and Prepetition Term Loan Agent, King & Spalding LLP, 1185 Avenue of the Americas, New York, New York 10036, Attn: W. Austin Jowers and Christopher G. Boies; and (v) counsel to the Committee (if appointed).

66.    _Nunc Pro Tunc_ Effect of this Interim Order.    This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable _nunc pro tunc_ to the Petition Date immediately upon execution thereof.

67.    Retention of Jurisdiction.    The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility, and/or this Interim Order.

Jan 17 2019

Dated: _____, 2019
Richmond, Virginia

/s/ Keith L. Phillips
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:  Jan 17 2019

WE ASK FOR THIS:

*/s/ Michael A. Condyles*
Michael A. Condyles, Esq. (VA 27807)
Peter J. Barrett, Esq. (VA 46179)
Jeremy S. Williams, Esq. (VA 77469)
Brian H. Richardson, Esq. (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:     (804) 644-1700
Facsimile:     (804) 783-6192

- and -

Dennis F. Dunne, Esq. (*pro hac vice* pending)
Evan R. Fleck, Esq. (*pro hac vice* pending)
Michael W. Price, Esq. (*pro hac vice* pending)
**MILBANK, TWEED, HADLEY & M$^C$CLOY LLP**
28 Liberty Street
New York, New York 10005
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219

*Proposed Co-Counsel for Debtors in Possession*

## CERTIFICATION OF ENDORSEMENT
## UNDER LOCAL BANKRUPTCY RULE 9022-1(C)

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

*/s/ Michael A. Condyles*