IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

------------------------------------------------------------------------ X
In re                                                                    :   Chapter 11
                                                                         :
GYMBOREE GROUP, INC., *et al.*[1],                                       :   Case No. 19-30258 (KLP)
                                                                         :
                          Debtors,                                :   (Jointly Administered)
                                                                         :
------------------------------------------------------------------------ X
DEUTSCHE BANK TRUST COMPANY AMERICAS,                                    :
                                                                         :
                          Plaintiff,                              :   Adversary Proceeding No.
                                                                         :
          -against-                                                     :   COMPLAINT
                                                                         :
GYMBOREE GROUP, INC., GIRAFFE                                            :
INTERMEDIATE B, INC., GYM-CARD, LLC, GYM-                                :
MARK, INC., GYMBOREE MANUFACTURING, INC.,                                :
GYMBOREE RETAIL STORES, LLC., GYMBOREE                                   :
OPERATIONS, INC., GYMBOREE WHOLESALE, INC.,                              :
STEVEN COULOMBE, DAVID INOUYE, and                                       :
MICHAEL FOSTER,                                                          :
                                                                         :
                          Defendants.                            :
                                                                         :
------------------------------------------------------------------------ X

Plaintiff, Deutsche Bank Trust Company Americas ("DBTCA"), by its attorneys, Moses & Singer LLP, for its Complaint, alleges:

**SUMMARY OF COMPLAINT**

1. This action seeks relief for the damages suffered by DBTCA by reason of the breach of trust and conversion of funds that had been held by Gymboree Group, Inc. ("GGI") and

---

[1] The Gymboree entities involved in the bankruptcy proceeding captioned *In re Gymboree Group, Inc. et al.*, No. 19-30258-KLP (Bankr. E.D. Va. 2019) include Gymboree Group, Inc., Gymboree Intermediate Corporation, Gymboree Holding Corporation, Gymboree Wholesale, Inc., Gymboree Operations, Inc., Gymboree Distribution, Inc., Gymboree Manufacturing, Inc., Gymboree Retail Stores, LLC, Gym-Card, LLC and Gymboree Island, LLC.

1

its affiliates (collectively, "Gymboree Group") under the Chapter 11 plan of reorganization (the "Plan") confirmed by order of this Court (the "Confirmation Order") on September 7, 2017.[2] The Plan and Confirmation Order provided for a cash distribution (the "GUC Distribution") to be made on the effective date to general unsecured creditors (the vast majority of whom were holders of the 2018 Notes (defined below)), but further required the restructured debtors to hold that GUC Distribution in trust in a segregated account pending resolution of the disputed claim objection process. Upon such resolution, the trust funds deliverable with respect to the 2018 Notes were required to be delivered to DBTCA under the terms of the Confirmation Order.

2. The GUC Distribution was deposited in an investment account of Gymboree Group on the Effective Date of the Plan on September 29, 2017, thereby funding the trust account required by the Plan and Confirmation Order (the "Trust Account").

3. In December 2018, Steven Coulombe ("Coulombe"), was engaged by GGI as the Chief Restructuring Officer ("CRO").

4. On January 9, 2019, on the eve of the filing of the present Chapter 11 cases, Michael Foster ("Foster"), at the direction of and under the supervision of Coulombe, instructed David Inouye ("Inouye"), Senior Manager, Treasury, of GGI, to withdraw the remaining GUC Distribution from the investment account where it had been held in trust for the prior 14 months and to deposit those remaining trust funds into the operating account of GGI, which had been pledged as collateral to certain secured creditors of Gymboree Group.

5. On January 11, 2019, the funds in the operating account, including trust funds, were applied to the debt owed to certain secured creditors of Gymboree Group.

---

[2] Capitalized terms not otherwise defined shall have the meaning set forth in the Amended Joint Chapter 11 Plan of Reorganization of the Gymboree Corporation and its Debtor Affiliates (the "Plan"), dated August 30, 2017 (Case No. 19-30258 (KLB) (Bankr. E.D. Va. 2019), Docket No. 583).

6. This action seeks to hold liable the persons involved in the above described conversion of the trust funds in violation of DBTCA's rights under the Plan and Confirmation Order.

## JURISDICTION AND VENUE

7. This is an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure related to the above-referenced bankruptcy cases pending before this Court.

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1334(b) and 157.

9. Venue of this adversary proceeding is properly with this Court pursuant to 28 U.S.C. § 1409.

## ALLEGATIONS COMMON TO ALL CLAIMS

**The Parties**

10. Plaintiff, DBTCA, is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York. Under paragraph 101 of the Confirmation Order, DBTCA was to receive distributions under the Plan made to the holders of the 2018 Notes and holds a valid perfected lien on the portion of the trust funds to be distributed on account of the 2018 Note Claims.

11. Defendant GGI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California. GGI is a debtor-in-possession in these Chapter 11 cases.

12. Defendant Giraffe Intermediate B, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in California.

3

13. Defendant Gym-Card, LLC is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in California. Gym-Card, LLC is a debtor-in-possession in these Chapter 11 cases.

14. Defendant Gym-Mark, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in California.

15. Defendant Gymboree Manufacturing, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in California. Gymboree Manufacturing, Inc. is a debtor-in-possession in these Chapter 11 cases.

16. Defendant Gymboree Retail Stores, LLC is a corporation organized and existing under the laws of the State of California, with its principal place of business in California. Gymboree Retail Stores, LLC is a debtor-in-possession in these Chapter 11 cases.

17. Defendant Gymboree Operations, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in California. Gymboree Operations, Inc. is a debtor-in-possession in these Chapter 11 cases.

18. Defendant Gymboree Wholesale, Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business in California. Gymboree Wholesale, Inc. is a debtor-in-possession in these Chapter 11 cases.

19. Defendant Coulombe is the CRO of GGI. He is also a managing director of Berkeley Research Group ("BRG"), a consulting firm headquartered in California.

20. Defendant Foster is a director of BRG and was provided by BRG to GGI to support Coulombe as CRO.

21. Defendant Inouye was an employee of GGI at the time of the events complained of in this complaint. He resides in San Francisco, California.

4

**Background**

22. On June 11, 2017, The Gymboree Corporation and seven (7) of its affiliated debtors (collectively, the "Prior Debtors") filed voluntary petitions under Title 11 of the United States Code (the "Bankruptcy Code"), initiating chapter 11 cases. *See* Case No. 19-30258 (KLB) (Bankr. E.D. Va. 2019).

23. DBTCA, in its capacity as indenture trustee under the indenture dated November 23, 2010 (the "2010 Indenture"), pursuant to which the Gymboree Corporation, as issuer, issued its 9.125% Senior Notes due 2018 (the "2018 Notes"), was a member of the Official Committee of Unsecured Creditors in those proceedings.

24. On August 30, 2017, the Prior Debtors filed the Plan, styled the Amended Joint Chapter 11 Plan of Reorganization of The Gymboree Corporation and its Debtor Affiliates, (Case No. 19-30258 (KLB) (Bankr. E.D. Va. 2019) (Docket No. 583).

25. On September 7, 2017, the Bankruptcy Court entered the Confirmation Order with respect to the Plan.

26. On September 29, 2017, the Plan became effective (the "Effective Date").

27. On September 29, 2017, the Effective Date of the Plan occurred. On the Effective Date, the Debtors emerged from Chapter 11 as reorganized entities (the "Reorganized Debtors"). The Reorganized Debtors, along with the last four digits of each Reorganized Debtor's federal tax identification number, include: The Gymboree Group, Inc. (6587); Giraffe Intermediate B, Inc. (0659); Gym-Card, LLC (5720); Gym-Mark, Inc. (6459); Gymboree Manufacturing, Inc. (6464); Gymboree Retail Stores, LLC. (6461); Gymboree Operations, Inc. (6463); and Gymboree Wholesale, Inc. (6588).

28. The Plan required the Reorganized Debtors to make the GUC Distribution of $4.5 million to a Class 5 claims reserve and to administer the reserve. It expressly obligated the

Reorganized Debtors to hold the reserve in a segregated account *in trust* for the benefit of Class 5 (general unsecured creditors) pending interim distributions and the final distribution to such creditors.[3]

29. Specifically, Article VII. D. of the Plan provides, in pertinent part,

> on the Effective Date, the Reorganized Debtors shall establish the Class 5 Claims Reserve, which Class 5 Claims Reserve shall be funded with the GUC Distribution and shall be administered by the Reorganized Debtors. As soon as practicable after the Effective Date, the Reorganized Debtors shall make a Pro Rata distribution to all Allowed Class 5 Claims from the Class 5 Claims Reserve using the GUC Amount as the denominator in calculating such Pro Rata Distribution. The Reorganized Debtors shall make one or more additional distributions to Class 5 Allowed Claims, in its discretion, until all Class 5 Claims have been resolved. *The Reorganized Debtors shall hold Cash in the Class 5 Claims Reserve in the same Pro Rata share **in trust** for the benefit of the Holders of Disputed Class 5 Claims*. Once all Class 5 Claims have been resolved, the Reorganized Debtors shall make a final distribution in order to distribute the remaining Cash in the Class 5 Claims Reserve Pro Rata to all Class 5 Allowed Claims using the total amount of Class 5 Allowed Claims as the denominator (*italics and **emphasis** added*).

30. Paragraph 140 of the Confirmation Order further provides, in pertinent part, that "the Debtors or the Reorganized Debtors, as applicable, shall establish, on the Effective Date, a ***segregated account*** by depositing the GUC Distribution into the Class 5 Claims Reserve for the benefit of Holders of Allowed Class 5 Claims to be paid as set forth in Article VII.D of the Plan" (emphasis added).

31. Paragraph 101 of the Confirmation Order provides that the 2010 Indenture shall continue solely for the purpose of: allowing the holder of the 2018 Notes to receive distributions under the Plan, allowing the indenture trustee, DBTCA, to facilitate distributions under the Plan

---

[3] DBTCA's claim relating to the 2018 Notes was classified in Class 5.

6

to the holders of the 2018 Notes, and allowing the indenture trustee, DBTCA, to assert any other right, privilege, benefit or protection granted to it under the 2010 Indenture.

       32.      Paragraph 101 of the Confirmation Order also granted DBTCA a continuing lien on further distributions to be made with respect to the 2018 Notes from the Trust Account. Confirmation Order, ¶ 101. Accordingly, DBTCA, pursuant to the Confirmation Order, held a valid perfected lien on the portion of the trust funds to be distributed on account of the 2018 Note Claims.

       33.      Paragraph 101 of the Confirmation Order provides, in pertinent part,

> *provided*, that notwithstanding the foregoing, the Unsecured Notes Indenture shall continue in effect solely for purposes of (a) allowing the applicable Unsecured Noteholders to receive distributions under the Plan as provided herein, (b) allowing the Unsecured Notes Indenture Trustee, if applicable, to facilitate the distributions under the Plan to the applicable Unsecured Noteholders as provided herein, (c) to the extent the Unsecured Notes Indenture Trustee has any unpaid fees and expenses (including those of its counsel), or reasonably expects to incur additional fees and expenses (including legal fees) in the future, to assert any right or lien it may have under the Unsecured Notes Indenture against such distributions and to deduct such unpaid fees and expenses from such distributions, and (d) allowing the Unsecured Notes Indenture Trustee to assert any other right, privilege, benefit or protection granted to it under the Unsecured Notes Indenture; provided, further, that the preceding proviso shall not affect the discharge of the Unsecured Note Claim as provided for herein, or result in any expenses or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan. In addition, the obligations of the Unsecured Notes Indenture Trustee under or in connection with the Unsecured Notes Indenture and the Unsecured Notes shall be discharged and deemed satisfied on the Effective Date except to the extent necessary to facilitate the distribution provided in the Plan to the applicable Unsecured Noteholders after the Reorganized Debtors have determined to make any such distribution. For the avoidance of doubt, nothing contained in the Plan or the Confirmation Order shall in any way limit or affect the standing of the Unsecured Notes Indenture Trustee to appear and be heard in the Chapter 11 Cases on and after the Effective Date.

**The Trust Account**

34. As required by the Plan and Confirmation Order, the Reorganized Debtors established the Trust Account for the Class 5 claimants. Inouye, GGI's Manager, Treasury, established an investment account with Bank of America/Merrill Lynch account with account number ending in 6DWJ.

35. On or about September 29, 2017, as required by the Plan and Confirmation Order, Inouye deposited the GUC Distribution, in the amount of $4,500,000, into the Trust Account. That same day, Mr. Inouye purchased a $4,500,000 investment portfolio, reflected on the statements of the Trust Account as the FIMM Government Portfolio Institutional Class (the "FIMM Portfolio"), in order to earn interest on the trust funds held for holders of Class 5 Claims.

36. The FIMM Portfolio contained only the GUC Distribution trust funds.

**The Initial Distribution From The Trust Account**

37. On or about May 7, 2018, the Reorganized Debtors, as administrator and trustee of the Trust Account established for the benefit of Class 5 claimholders, removed $2,532,283.94 from the FIMM Portfolio in order to make the first distribution (the "Initial Distribution") to creditors holding allowed Class 5 claims under the Plan. DBTCA, as the former indenture trustee, received $2,510,193.91 of the Initial Distribution for the benefit of itself and the holders of the 2018 Notes for which it had served as indenture trustee.

38. As of May 31, 2018, trust funds in the amount of $2,000,375.79 remained in the FIMM Portfolio in the Trust Account.

**Berkley Research Group and the Chief Restructuring Officer**

39. On October 1, 2018, the Debtors engaged BRG to provide certain financial advisory and consulting services to the Debtors.

8

40. On December 17, 2018, the Board of Directors of Gymboree Holding Corporation appointed Coulombe, a Managing Director at BRG and the person provided by BRG, to serve as the CRO of GGI.

41. Under the terms of the engagement letter dated December 15, 2018, between BRG and GGI, GGI requested that the CRO, with the assistance of other professional BRG staff, provide professional services to GGI, including overseeing the activities of GGI.

42. The CRO was responsible for overseeing the activities of the BRG staff, including Defendant Foster, who provided professional services to the Reorganized Debtors. The BRG staff, including Defendant Foster, who provided professional services to the Reorganized Debtors worked under the CRO's supervision.

43. Defendant Foster assisted the CRO in providing professional services to GGI. During the time period in which Defendant Foster was providing professional services to GGI, he reported directly to the CRO and worked under the CRO's supervision.

**The Conversion of the Trust Funds Held In The Trust Account**

44. On or about January 2, 2019, Foster, in his role as Director of BRG, was assigned to assist Gymboree in its cash management function, including by approving requested distributions of Gymboree's cash.

45. On or about January 9, 2019, Foster directed Inouye to transfer the trust funds, consisting of the remainder of the GUC Distribution segregated in the FIMM Portfolio, from the Trust Account into Gymboree's "concentration account" used for general operating purposes.

46. Foster directed that transfer, exercising the authority of the CRO, with the CRO's full knowledge and consent.

9

47. On or about January 9, 2019, Inouye executed a redemption of the FIMM Portfolio, and transferred the proceeds in the amount of $2,027,304.08, constituting the remainder of the GUC Distribution and interest earned thereon held in trust, to a Bank of America account ending in 1406 (the "Concentration Account"). Following that transfer, the Trust Account had a balance of $0.

48. On January 9, 2019, the Concentration Account had a closing ledger balance of $3,146,826.75. The Concentration Account was subject to a lien in favor of the certain secured lenders.

49. The Concentration Account had a closing ledger balance of $3,611,470.71 on January 10, 2019.

50. On January 11, 2019, the last transfer that day out of the Concentration Account was an outgoing wire transfer of $5,849,678.26 to Bank of America account number CT2-547-05-23-99. This transfer was applied to repay other creditors who had a lien on the Concentration Account, thereby preferring and unjustly enriching those creditors in the amount of at least $2,027,304.08.

51. On January 11, 2019, the Concentration Account had a closing ledger balance of $70,517.67, which thereafter increased to $245,830.19.

52. On January 16, 2019 (the "Petition Date"), GGI, Gymboree Intermediate Corporation, Gymboree Holding Corporation, Gymboree Wholesale, Inc., Gymboree Operations, Inc., Gymboree Distribution, Inc., Gymboree Manufacturing, Inc., Gymboree Retail Stores, LLC, Gym-Card, LLC and Gymboree Island, LLC each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

## FIRST CAUSE OF ACTION
## BREACH OF TRUST AGAINST THE REORGANIZED DEBTORS

53. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54. Article VII.D of the Plan obligated the Reorganized Debtors, including GGI, to fund and administer a claim reserve and to hold such funds in a segregated trust account for the benefit of Holders of Class 5 Claims.

55. Pursuant to Article VII.D of the Plan and the Confirmation Order, the Reorganized Debtors, including GGI, were required to hold the GUC Distribution in trust for the benefit of the holders of Class 5 Claims pending the resolution of all Class 5 Claims.

56. On or about September 29, 2017, the Reorganized Debtors funded the Trust Account with the GUC Distribution, as required by the Plan and Confirmation Order. Thereafter, in accordance with the Plan and Confirmation Order, the Reorganized Debtors dealt with and administered such Trust Funds for the benefit of holders of Class 5 claims for the next 14 months, including by making the Initial Distribution to holders of Class 5 claims on or about May 7, 2018.

57. The portion of the trust funds in the Trust Account payable to holders of 2018 Notes were also subject to a lien in favor of DBTCA, as former indenture trustee with respect to the 2018 Notes.

58. On or about January 9, 2019, the Reorganized Debtors abdicated and breached all of their legal and equitable obligations to the holders of Class 5 claims (including holders of the 2018 Notes) and, thereby, to DBTCA, by transferring all then remaining trust funds from the Trust Account into the Concentration Account of GGI, prior to resolution of the Class 5 Claims, in violation of Section VII.D of the Plan and the Confirmation Order.

59. The foregoing conduct of GGI constituted a breach of trust.

11

60. Plaintiff requests entry of judgment against each of the Reorganized Debtors, jointly and severally, granting an allowed claim in an amount to be determined by the Court, plus interest.

### SECOND CAUSE OF ACTION
### <u>CONVERSION AGAINST THE REORGANIZED DEBTORS</u>

61. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 60 of this Complaint as though fully set forth herein.

62. Article VII.D of the Plan and Confirmation Order created a valid and enforceable trust in favor of the holders of Class 5 Claims (including the 2018 Notes) and obligated the Reorganized Debtors to administer the funds in the reserve pending the resolution of all Class 5 Claims.

63. The funds in the Trust Account payable to holders of 2018 Notes were required to be delivered to DBTCA and were subject to a lien in favor of DBTCA, as former indenture trustee with respect to the 2018 Notes.

64. The January 9, 2019, transfer of all remaining trust funds set aside for the Holders of Disputed Class 5 Claims out of the Trust Account and into the Concentration Account of GGI constituted a conversion of the trust funds by the Reorganized Debtors to pay the other creditors who had a lien on the Concentration Account.

65. Plaintiff requests entry of judgment against each of the Reorganized Debtors, jointly and severally, granting an allowed claim in an amount to be determined by the Court, plus interest.

## THIRD CAUSE OF ACTION
### AIDING AND ABETTING BREACH OF TRUST AGAINST INOUYE, COULOMBE AND FOSTER

66.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 65 of this Complaint as though fully set forth herein.

67.     Foster, exercising authority granted to him by Coulombe, directed that the funds held in the Trust Account be transferred to the Concentration Account.

68.     Inouye knew that the transfer of the funds held in the Trust Account to the Concentration Account constituted a breach of trust under the Plan.

69.     Foster knew that the transfer of the funds held in the Trust Account to the Concentration Account constituted a breach of trust under the Plan.

70.     Coulombe knew that the transfer of the funds held in the Trust Account to the Concentration Account constituted a breach of trust under the Plan.

71.     For the foregoing reasons, the conduct of Inouye, Coulombe and Foster constitutes aiding and abetting a breach of trust by GGI thereby frustrating and defeating DBTCA's rights under the Confirmation Order.

72.     Plaintiff requests entry of judgment against Inouye, Coulombe and Foster, jointly and severally, in the amount to be determined by the Court, plus interest.

## FOURTH CAUSE OF ACTION
### AIDING AND ABETTING CONVERSION AGAINST INOUYE, COULOMBE AND FOSTER

73.     Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 71 of this Complaint as though fully set forth herein.

74.     Foster, exercising authority granted by Coulombe, directed that the funds held in the Trust Account be transferred to the Concentration Account.

13

75. Inouye knew that the transfer of the funds held in the Trust Account to the Concentration Account constituted conversion of funds that were held in trust under the Plan and were to be delivered to DBTCA and were subject to the lien of DBTCA.

76. Foster knew that the transfer of the funds held in the Trust Account to the Concentration Account constituted conversion of funds that were held in trust under the Plan and were to be delivered to DBTCA and were subject to the lien of DBTCA.

77. Coulombe knew that the transfer of the funds held in the Trust Account to the Concentration Account constituted conversion of funds that were held in trust under the Plan and were to be delivered to DBTCA and were subject to the lien of DBTCA.

78. For the foregoing reasons, the conduct of Inouye, Coulombe and Foster constitutes aiding and abetting GGI's conversion of funds that were held in trust under the Plan and were to be delivered to DBTCA and were subject to the lien of DBTCA.

79. Plaintiff requests entry of judgment against Inouye, Coulombe and Foster, jointly and severally, in an amount to be determined by the Court, plus interest.

**FIFTH CAUSE OF ACTION**
**TURNOVER OF PROPERTY AGAINST GGI**

80. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 77 of this Complaint as though fully set forth herein.

81. The funds held in the Concentration Account that are traceable to the Trust Account are not property of GGI's bankruptcy estate.

82. For the foregoing reasons, the GGI should be required to turn over to DBTCA the funds that are not property of GGI's bankruptcy estate that should have been delivered to DBTCA under the terms of the Confirmation Order.

83. Plaintiff requests entry of judgment against GGI in an amount to be determined by the Court, but not less than $245,830.19, plus interest.

## SIXTH CAUSE OF ACTION
## CIVIL CONTEMPT AGAINST ALL DEFENDANTS

84. Plaintiff repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 81 of this Complaint as though fully set forth herein.

85. The Reorganized Debtors and all persons on notice were bound by the Confirmation Order. The Reorganized Debtors, Inouye, Foster and Coulombe had notice of the Confirmation Order.

86. The Reorganized Debtors, Inouye, Foster and Coulombe willfully and intentionally violated the Confirmation Order when they caused the transfer of funds from the FIMM Portfolio to the Concentration Account on or about January 9, 2019, in violation of the terms of the Plan and Confirmation Order.

87. By reason of the foregoing, the Reorganized Debtors, Inouye, Foster and Coulombe knowingly and willfully violated the Confirmation Order.

88. Plaintiff requests the entry of judgment against each of the Reorganized Debtors, Inouye, Foster and Coulombe, jointly and severally, for civil contempt of the Confirmation Order in an amount to be determined at trial, but including Plaintiff's costs and expenses of prosecuting this adversary proceeding.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Plaintiff demands the entry of judgment in its favor as follows:

(i) On the First Cause of Action, against each of the Reorganized Debtors, jointly and severally, granting an allowed claim in an amount to be determined by the Court, plus interest;

(ii) On the Second Cause of Action, against each of the Reorganized Debtors, jointly and severally, granting an allowed claim in an amount to be determined by the Court, plus interest;

(iii) On the Third Cause of Action, against Inouye, Coulombe and Foster, jointly and severally, in an amount to be determined by the Court, plus interest;

(iv) On the Fourth Cause of Action, against Inouye, Coulombe and Foster, jointly and severally, in an amount to be determined by the Court, plus interest;

(v) On the Fifth Cause of Action, against GGI in an amount to be determined by the Court but not less than $245,830.19, plus interest;

(vi) On the Sixth Cause of Action, against each of the Reorganized Debtors, Inouye, Foster and Coulombe, jointly and severally, for civil contempt of the Confirmation Order in an amount to be determined by the Court;

(vii) Awarding Plaintiff judgment against Defendants for Plaintiff's attorneys' fees, costs and other expenses incurred in this proceeding; and

(viii) Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: August 6, 2019

By: /s/ *Robert S. Westermann*
Robert S. Westermann (VSB No. 43294)
Alexander R. Kalyniuk (VSB No. 92325)

**HIRSCHLER FLEISCHER, P.C.**
The Edgeworth Building
2100 East Cary Street
Richmond, VA 23218-0500
Telephone: (804) 771-5610
Facsimile: (804) 644-0957
Email: rwestermann@hirschlerlaw.com
Email: akalyniuk@hirschlerlaw.com

    -and-

By: /s/ *Mark N. Parry*
Mark N. Parry (admitted *pro hac vice*)
**MOSES & SINGER LLP**
Alan Kolod
Megan H. Daneshrad
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 554-7800
Facsimile: (212) 554-7700
Email: akolod@mosessinger.com
Email: mparry@mosessinger.com
Email: mdaneshrad@mosessinger.com

*Attorneys for Plaintiff Deutsche Bank Trust Company Americas*